UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

        vs.

EMOND DUREA LOGAN,

        Defendant.

No. 1:08-CR-274

Hon. Joseph G. Scoville
United States Magistrate Judge

[Request for Oral Argument and
Request for Special Hearing to be
Set on March 17, 2010]

## **MOTION FOR BAIL SETTING;**

## **REQUEST FOR ORAL ARGUMENT**

Defendant, Emond Durea Logan, by and through his attorney, Leo James Terrell and

Moniqua L. Banks request for bail setting for the following reasons:

1. Defendant Emond Durea Logan is was arrested on or about September 11, 2009, Edmond at

his home located at 12058 Springbrook Court, Riverside, CA. During his arrest, Defendant was

cooperative and voluntarily surrendered to authorities and waived his right to extradition.

Defendant did not use force or violence upon the officers who placed him into custody. Prior to

2. The First Indictment charged Defendant with Conspiracy to Distribute and to Possess with

Intent to Distribute Cocaine in violation of 21 U.S.C. §846, 21 U.S.C. §841(a)(1), and 21 U.S.C.

§841(b)(1)(A)(ii), and Money laundering in violation of 18 U.S.C. §1956(h), 18 U.S.C. § 1956

(a)(1)(A)(i), 18 U.S.C. §1956 (a)(1)(B)(i), 18 U.S.C. §1956(a)(1)(B)(ii) and 18 U.S.C. § 1957

(See Exhibit 1).

3. Since Defendant's arrest on or about September 11, 2009, Defendant remained in custody at

Newaygo County Jail for approximately six months. Throughout his time at Newaygo County Jail, Defendant has not engaged in any acts of violence and has been cooperative. Defendant has not had any problems with any fellow inmates or Newaygo County Jail staff members. Infact, Defendant has been a model inmate.

4. On or about February 19, 2010, a plea agreement was filed, however Defendant rescinded his acceptance of the plea agreement and is willing to potentially face a 10 year sentence in reliance on his innocence. Defendant is currently being held in custody at Grand Rapids Michigan County Jail pending trial.

5. On or about February 25, 2010, Assistant U.S. Attorney Lennon filed a Motion to Dismiss the First Indictment against the Defendant. Honorable Judge Robert J. Jonker granted Assistant U.S. Attorney Lennon's Motion to Dismiss the First Indictment against Defendant on or abuot February 25, 2010. However, Defendant was not released and remained in custody.

6. On or about February 24, 2010, a Second Superceding Indictment charged Defendant with Conspiracy to Distribute and to Possess with Intent to Distribute Cocaine in violation of 21 U.S.C. §846, 21 U.S.C. §841(a)(1), and 21 U.S.C. §841(b)(1)(A)(ii), and Money laundering in violation of 18 U.S.C. §1956(h), 18 U.S.C. § 1956 (a)(1)(A)(i), 18 U.S.C. §1956 (a)(1)(B)(i), 18 U.S.C. §1956(a)(1)(B)(ii) and 18 U.S.C. § 1957 (See Exhibit 2).

7. The Second Superceding Indictment Caroline Epps Logan, Martell D. Logan, and Sharon Logan are named as defendants along with a series of other Defendant's. The Second Superceding Indictment charged Defendant's wife Caroline Epps Logan with Conspiracy to Distribute and to Possess with Intent to Distribute Cocaine in violation of 21 U.S.C. §846, 21 U.S.C. §841(a)(1), and 21 U.S.C. §841(b)(1)(A)(ii), and Money laundering in violation of 18 U.S.C. §1956(h), 18 U.S.C. § 1956 (a)(1)(A)(i), 18 U.S.C. §1956 (a)(1)(B)(i), 18 U.S.C.

§1956(a)(1)(B)(ii) and 18 U.S.C. § 1957 (See Exhibit 2). These charges are identical to that of

the Defendant's. Additionally, the Second Superceding Indictment charged Defendant's brother

Martell D. Logan, and Defendant's sister-n-law Sharon Logan, with Money laundering in

violation of 18 U.S.C. §1956(h), 18 U.S.C. § 1956 (a)(1)(A)(i), 18 U.S.C. §1956 (a)(1)(B)(i), 18

U.S.C. §1956(a)(1)(B)(ii) and 18 U.S.C. § 1957 (See Exhibit 2). On or about April 2010,

Caroline Epps Logan, Martell D. Logan, and Sharon Logan are scheduled to appear in court.

8. On or about March 1, 2010, Caroline Epps Logan, Martell D. Logan, and Sharon Logan

surrendered themselves and were released on Personal Recognizance bonds, based on an

agreement made between these Defendants and U.S. Attorney Brian Lennon (See Exhibit 3).

However, Defendant remains in custody while his wife Caroline who was charged with the same

identical charges to Defendant, was released on her own personal recognizance.

9. The conditions of Caroline Epps Logan personal recognizance release require her to: submit to

pretrial supervision, surrender all pass ports, restrict travel to Central District of California and

Western District of Michigan, not enter premises of any airport, sea port, railroad, or bus terminal

which permits exit from the Continental U.S. or area of restricted travel without permission,

reside as approved by PSA and do not relocate without prior permission from PSA, and to

maintain or actively seek employment and provide proof to PSA. (See Exhibit 4). Defendant is

more than willing to abide by these conditions as well as any additional restrictions that this

Court may set forth.

10. Defendant is similarly situated to Caroline in all respects. Defendant has strong ties to his

community. For example, prior to his September 11, 2009 arrest, Defendant resided with his wife

Caroline in their in Riverside home for over seven years. Defendant and his wife attended Cross

Word Christian Fellowship Church for several years and have developed a strong relationship

with their pastor, Lacey Sykes.

11. Defendant will not be a danger to his community if released. Defendant does not have the reputation of a violent man. Defendant has never had any problems with his neighbors and is known in the neighborhood as a nice caring man. In fact, there is no evidence within either the First Indictment or Second Superceding Indictment that Defendant committed any acts of violence.

12. Defendant has played a significant role in the life of his 18-year old step son who is currently in highschool. He has significantly contributed to the financial stability of his wife Caroline and step son. Additionally, Defendant has always maintained a steady income. Prior to starting up his own trucking company which he has successfully maintained for the past six years, Defendant had worked for "Southern California Disposal" for approximately twenty two years. If Defendant remains in custody throughout the court proceedings, he would risk losing his business which will have a significantly detrimental affect on the financial stability of his family.

13. Defendant is not a flight risk and has had no history for failing to appear on any of his court proceedings and has made an effort to be cooperative with this Court. For example, on or about March 1, 2010 and March 8, 2010, Defendant appeared in court without counsel. On or about February 24, 2010, when the Second Superceding Indictment was filed, Defendant was in still in custody and without counsel.

14. Defendant and his wife Caroline Epps Logan were both indicted for the same charges and both are similarly situated. Prosecution has not provided any evidence that Defendant is more of a flight risk than his wife Caroline or that Defendant poses any threat to the community. Therefore, Defendant should be given the same opportunity to be released on a personal recognizance bond as his wife Caroline Epps Logan.

4

For the foregoing reasons, Defendant, Emond Durea Logan requests that this Court set bail and release Defendant on his own recognizance. Defendant respectfully asks this Court to set bail hearing on this matter on March 17, 2010.

                                        Respectfully submitted,


Date: March ____ , 2010                 /s/ Leo J. Terrell
                                        LEO J. TERRELL
                                        Attorney for Defendant Emond Durea Logan
                                        Law Offices of Leo James Terrell
                                        8383 Wilshire Boulevard, Suite 920
                                        Beverly Hills, CA 90211
                                        (323) 655-6909

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

EMOND DUREA LOGAN,

        Defendant.

No. 1:08-CR-274

Hon. Joseph G. Scoville
United States Magistrate Judge

[Request for Oral Argument and
Request for Hearing to be Specially
Set on March 17, 2010]

## BRIEF IN SUPPORT DEFENDANT'S MOTION FOR BAIL SETTING; REQUEST FOR ORAL ARGUMENT

### I. STATEMENT OF FACTS

On or about September 11, 2009, Edmond Durea Logan ("Defendant") was

arrested at his home located at 12058 Springbrook Court, Riverside, CA. During his arrest,

Defendant was cooperative and voluntarily surrendered to authorities and waived his right to

extradition. Defendant did not use force or violence upon the officers who placed him into

custody. Prior to Defendant's arrest, United States Attorneys Donald A. Davis and Brian P.

Lennon issued an Indictment against the Defendant. In the First Indictment, Defendant was

charged with Conspiracy to Distribute and to Possess with Intent to Distribute Cocaine in

violation of 21 U.S.C. §846, 21 U.S.C. §841(a)(1), and 21 U.S.C. §841(b)(1)(A)(ii), and Money

laundering in violation of 18 U.S.C. §1956(h), 18 U.S.C. § 1956 (a)(1)(A)(i), 18 U.S.C. §1956

(a)(1)(B)(i), 18 U.S.C. §1956(a)(1)(B)(ii) and 18 U.S.C. § 1957 (See Exhibit 1).

Since Defendant's arrest on or about September 11, 2009, Defendant remained in custody

1

at Newaygo County Jail for approximately six months. Throughout his time at Newaygo County Jail, Defendant has not engaged in any acts of violence and has been cooperative. Defendant has not had any problems with any fellow inmates or Newaygo County Jail staff members. Infact, Defendant has been a model inmate.

On or about February 19, 2010, a plea agreement was filed, however Defendant rescinded his acceptance of the plea agreement and is willing to potentially face a 10 year sentence in reliance on his innocence. Defendant is currently being held in custody at Grand Rapids Michigan County Jail pending trial.

On or about February 25, 2010, Assistant U.S. Attorney Lennon filed a Motion to Dismiss the First Indictment against the Defendant. Honorable Judge Robert J. Jonker granted Assistant U.S. Attorney Lennon's Motion to Dismiss the First Indictment against Defendant on or abuot February 25, 2010. However, Defendant was not released and remained in custody.

On or about February 24, 2010, a Second Superceding Indictment charged Defendant with Conspiracy to Distribute and to Possess with Intent to Distribute Cocaine in violation of 21 U.S.C. §846, 21 U.S.C. §841(a)(1), and 21 U.S.C. §841(b)(1)(A)(ii), and Money laundering in violation of 18 U.S.C. §1956(h), 18 U.S.C. § 1956 (a)(1)(A)(i), 18 U.S.C. §1956 (a)(1)(B)(i), 18 U.S.C. §1956(a)(1)(B)(ii) and 18 U.S.C. § 1957 (See Exhibit 2). In the Second Superceding Indictment Emond Durea Logan, Caroline Epps Logan, Martell D. Logan, and Sharon Logan are named as defendants along with a series of other Defendant's.

The Second Superceding Indictment charged Defendant's wife Caroline Epps Logan with Conspiracy to Distribute and to Possess with Intent to Distribute Cocaine in violation of 21 U.S.C. §846, 21 U.S.C. §841(a)(1), and 21 U.S.C. §841(b)(1)(A)(ii), and Money laundering in

violation of 18 U.S.C. §1956(h), 18 U.S.C. § 1956 (a)(1)(A)(i), 18 U.S.C. §1956 (a)(1)(B)(i), 18 U.S.C. §1956(a)(1)(B)(ii) and 18 U.S.C. § 1957 (See Exhibit 2). These charges are identical to that of the Defendant's. Additionally, the Second Superceding Indictment charged Defendant's brother Martell D. Logan, and Defendant's sister-n-law Sharon Logan, with Money laundering in violation of 18 U.S.C. §1956(h), 18 U.S.C. § 1956 (a)(1)(A)(i), 18 U.S.C. §1956 (a)(1)(B)(i), 18 U.S.C. §1956(a)(1)(B)(ii) and 18 U.S.C. § 1957 (See Exhibit 2). On or about April 2010, Caroline Epps Logan, Martell D. Logan, and Sharon Logan are scheduled to appear in court.

On or about March 1, 2010, Caroline Epps Logan, Martell D. Logan, and Sharon Logan surrendered themselves and were released on Personal Recognizance bonds, based on an agreement made between these Defendants and U.S. Attorney Brian Lennon (See Exhibit 3). As discussed above, the Second Superceding Indictment charges both Defendant and his wife Caroline Epps Logan for Conspiracy to Distribute and to Possess with Intent to Distribute Cocaine and Money Laundering. However, Defendant remains in custody while his wife Caroline was released on her own personal recognizance on or about March 1, 2010.

The conditions of Caroline Epps Logan personal recognizance release require her to: submit to pretrial supervision, surrender all pass ports, restrict travel to Central District of California and Western District of Michigan, not enter premises of any airport, sea port, railroad, or bus terminal which permits exit from the Continental U.S. or area of restricted travel without permission, reside as approved by PSA and do not relocate without prior permission from PSA, and to maintain or actively seek employment and provide proof to PSA. (See Exhibit 4).

Being that the indictment pending against Defendant and his wife Caroline allege identical violations, it would be illogical and unfair to deny Defendant's release at this time.

3

Defendant is willing and able to abide to the same terms and conditions of release. In fact, Defendant is more than willing to abide by any additional restrictions that this Court may set forth.

Defendant is similarly situated to Caroline in all respects. Prior to Defendants September 11, 2009 arrest, he resided with his wife Caroline, in their in Riverside home for over seven years. Defendant and his wife Caroline both have similar ties to the community. Defendant and his wife attended Cross Word Christian Fellowship Church for several years and have developed a strong relationship with their pastor, Lacey Sykes.

More importantly, Defendant does not have the reputation of a violent man. Defendant has never had any problems with his neighbors and is known in the neighborhood as a nice caring man. In fact, there is no evidence within either the First Indictment or Second Superceding Indictment that Defendant committed any acts of violence.

Defendant has also played a significant role in the life of his 18-year old step son who is currently in highschool. He has significantly contributed to the financial stability of his wife Caroline and step son. Additionally, Defendant has always maintained a steady income. Prior to starting up his own trucking company which he has successfully maintained for the past six years, Defendant had worked for "Southern California Disposal" for approximately twenty two years. If Defendant remains in custody throughout the court proceedings, he could risk losing his business. This will have a significantly detrimental affect on the financial stability of his family.

Additionally, Defendant has no history for failing to appear on any of his court proceedings and has made an effort to be cooperative with this Court. For example, on or about March 1, 2010 and March 8, 2010, Defendant appeared in court without counsel. On or about

February 24, 2010, when the Second Superceding Indictment was filed, Defendant was in still in custody and without counsel.

As discussed above, Defendant and his wife Caroline Epps Logan were both indicted for the same charges and both are similarly situated. Additionally, prosecution has not provided any evidence that Defendant is more of a flight risk than his wife Caroline or that Defendant poses any threat to the community. Therefore, Defendant should be given the same opportunity to be released on a personal recognizance bond as his wife Caroline Epps Logan.

## II. LEGAL AUTHORITY SUPPORTING THE SETTING OF BAIL

A.     Legal Standard: Non-Presumption Cases

The overall mandate of the Bail Reform Act, 18 U.S.C. §3142 et seq., is to release a person facing trial on his or her personal recognizance, under an unsecured bond, or with the least restrictive condition or set of conditions needed to reasonably assure the appearance of the person as required. See 18 U.S.C. §3142(c)(1)(B); and United States v. Mantalvo-Murillo, 495 U.S. 711, 713 (1990); A court deciding this critical question must be mindful of the presumption of innocence and its corollary that bail should be denied only for the strongest of reasons. Sellers v. United States, 89 S.Ct. 36, 38 (1968).

The doctrine that the federal courts are obligated to release those accused of non-capital offenses under the least restrictive alternative conditions which will provide reasonable assurance that the accused will appear in court is founded on the Eighth Amendment and presumption of innocence. The nexus between pre-trial release and the presumption of innocence was explained by the United States Supreme Court in Stack v. Boyle, 342 U.S. 1 (1951). "From the passage of the Judiciary Act of 1789, 1 Stat. 73, 91, to the present Federal Rules of Criminal Procedure,

5

Rule 46(a)(1), 18 U.S.C.A., federal law has unequivocally provided that a person arrested for a non-capital offense shall be admitted to bail. ...Unless this right to bail before trial is preserved, the presumption of innocence, secured only after centuries of struggle, would lose its meaning." 342 U.S. 1 at 4.

B.      Standard for Consideration of Flight Risk

The government must establish by a preponderance of the evidence that no condition or conditions will mitigate the risk of flight. That a defendant has the opportunity to flee is not enough to justify detention. United States v. Himler, 797 F.2d 156, 162 (3d Cir 1986). Section 3142 does not seek ironclad guarantees, and the requirement that the conditions of release "reasonably assure" a defendant's appearance cannot be read to require guarantees against flight. Id. Flight risk is mitigated by the existence of a defendant's ties to his or her community and history of appearing in response to court orders outweigh any flight concerns engendered by the length of the sentence defendant is potentially facing. Puertas v. Michigan Dept. of Corrections, 88 F.Supp.2d 775, 786 (E.D. Mich. 2000).

Here, the prosecution has not provided any evidence that the Defendant is a flight risk. On or about September 11, 2009, Defendant voluntarily turned himself in and did not show any signs of resistance upon his arrest. More importantly, Defendant has a history of appearing and cooperating with this Court. For example, on or about March 1, 2010 and March 8, 2010, Defendant showed his willing to cooperate by appearing in court without counsel.

As mentioned above, Defendant's wife Caroline Epps Logan who was indicted for the same charges as Defendant was released on bond with set conditions. (See Exhibit 4). Due to the fact that Defendant and his wife are similarly situated, it would be illogical and unfair to deny

6

Defendant bail at this time.

1. Defendant's Ties to the Community

Prior to his arrest on or about September 11, 2009, Defendant lived with his wife Caroline at their home in Riverside, California for over seven years. Defendant and his wife Caroline have attended church services in their community for approximately seven years and have developed a strong relationship with their church pastor, Lacey Sykes. In fact, Defendant has a reputation in his neighborhood as being a kind gentle man.

Additionally, Defendant plays a significant role in his step son's life and his sole provider for his family. The financial stability of Defendant's wife Caroline and her son are dependant on Defendant's release. Defendant is owner of a successful trucking company and is the sole provider for his family.

Defendant has a history of maintaining stable employment. Prior to starting up his own trucking company several years ago, Defendant worked for "Southern California Disposal" for approximately twenty two years. If Defendant is not released throughout his court proceedings, he could lose the business that he has worked so hard to establish. His wife Caroline is not capable of maintaining the family business on her own and is relying solely on Defendant to provide for their family.

Additionally, prosecution has not provided any evidence that Defendant is more of a flight risk than his wife Caroline or that Defendant poses any threat to the community. Therefore, Defendant should be given the same opportunity to be released on a personal recognizance bond as his wife Caroline Epps Logan.

\\

C.    Standard for Consideration of Danger to the Community

A defendant shall be detained pending trial if, after a hearing, the judicial officer finds that no condition or set of conditions will reasonably assure the defendant's appearance and the safety of the community. See 18 U.S.C. § 3142(e). The factors for consideration include the circumstances and nature of the offense; the weight of the evidence; the person's community ties, employment, substance abuse history, criminal record, and history of appearance at other criminal proceedings; evidence that he or she is under some form of judicial supervision already; or the type of community danger that would be posed by release. See 18 U.S.C. §3142(g).

Here, Defendant has substantial personal and financial ties to the community. Defendant has no history of substance abuse and known has a peaceful man within his community. Based on the allegations of the Second Superseding Indictment, Defendant is not accused of committing any dangerous or violent acts. In fact, Defendant participation in the alleged conspiracy is minimal and his role in the alleged was that of "a mule," according to prosecution. It is not alleged that Defendant ever purchased or sold any drugs/cocaine. It is alleged that Defendant merely transported the cocaine from one destination to another.

Defendant's ties to the community and reputation as a peaceful man within his community negate any potential risk of danger to the community if Defendant is released. The United States Court of Appeals for the Sixth Circuit has implicitly ruled that preventive detention may be allowed in an appropriate case. United States v. Wind, 527 F.2d 672 (6th Cir. 1975). Because of the lack of evidence of Defendant's dangerousness and lack of evidence that he might commit progressively more dangerous acts if released, this Court should find that preventive detention is inappropriate and release Defendant on bond.

\\

\\

8

## LIMITATIONS ON THE COURT'S AUTHORITY TO IMPOSE DETENTION

A.    Standard for Detention Where Enumerated Offenses are Charged

One of the more significant changes brought by the Bail Reform Act, 18 U.S.C. §3142 et seq., was that it requires judicial officers making pretrial detention decisions to apply a rebuttable presumption that an individual charged with a serious drug offense will likely flee before trial. United States v. Hazime, 762 F.2d 34, 35 (6th Cir. 1985). For the presumption to apply, the Court must find that the defendant has previously been convicted of certain violent or narcotics offenses within certain periods or while on release pending trial; or that there is probable cause to believe that the defendant has committed a narcotics offense with a maximum penalty of 10 years or more, a firearms offense under 18 U.S.C. § 924(c), or certain terrorist offenses under 18 U.S.C. §§ 956 or 2332b.

The presumptions generally have been interpreted as shifting only the burden of production to the defendant, with the government continuing to have the ultimate burden of persuasion. United States v. Rueben, 974 F.2d 580, 586 (5th Cir. 1992), cert. den. 504 U.S. 940 (1993). The Court may take into consideration the legislative finding by Congress that persons who commit drug-trafficking offenses pose a special risk of flight and a special danger to the safety of the community. The defendant need only produce some evidence that he is not a flight risk or a danger to the community to rebut the presumption. Id. Doubts about the sufficiency of the evidence are to be resolved in the defendant's favor. Id. at 261; Motamedi, 767 F.2d at 140.  Presumption-rebutting evidence may come from any of the sources enumerated in §3142(g), consistent with the danger and flight analyses discussed above.

Based on the aforementioned arguments, Defendant has met his burden of production and has provided this Court with evidence that he is not a flight risk or a danger to the community. On the other

hand, the prosecution has failed to meet their burden by not providing this Court with any evidence as to Defendant's dangerousness or that Defendant is a flight risk. Therefore, the presumption that Defendant is likely to flee has been rebutted by evidence of his strong community ties and cooperation with this Court.

III.

## REQUEST FOR HEARING TO BE SET

Defendant respectfully asks this Court to set bail hearing on this matter on March 17, 2010.

IV.

## CONCLUSION

Being that Defendant does not constitute a flight risk or a threat of danger to the community, Defendant should be released on his own recognizance. Defendant is able and willing to adhere any conditions set forth by this Court upon his release. Therefore, this Court should afford Defendant the same agreement and conditions that were afforded to his wife and co-Defendant Caroline Epps Logan.

For the foregoing reasons, Defendant, Emond Durea Logan requests that this Court set bail and release Defendant on his own recognizance.

Respectfully submitted,

Date: March ___ , 2010          /s/ Leo J. Terrell

LEO J. TERRELL
Attorney for Defendant Emond Durea Logan
Law Offices of Leo James Terrell
8383 Wilshire Boulevard, Suite 920
Beverly Hills, CA 90211
(323) 655-6909

10

**EXHIBIT 1**

**FILED - GR**

September 2, 2009 12:53 PM

TRACEY CORDES, CLERK
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY: FC /

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

        vs.

EMOND DUREA LOGAN,

        Defendant.

No.

Hon.

**1:09-cr-245**
**Robert J. Jonker**
**U.S. District Judge**

**INDICTMENT**

The Grand Jury charges:

## COUNT ONE
**(Conspiracy to Distribute and to Possess with Intent to Distribute Cocaine)**

Beginning in or about the end of 2003 and continuing through in or about January 2007, in the Southern Division of the Western District of Michigan, and elsewhere, the defendant,

## EMOND DUREA LOGAN,

did combine, conspire, confederate, and agree with Alvin Keith Jackson, Lindell Brown, Felicia Sabrina Blake, and other persons both known and unknown to the Grand Jury, to knowingly, intentionally and unlawfully distribute and possess with intent to distribute five kilograms or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance.

21 U.S.C. § 846
21 U.S.C. § 841(a)(1)
21 U.S.C. § 841(b)(1)(A)(ii)

## COUNT TWO
### (Money Laundering Conspiracy)

Beginning on or about an unknown date in 2004 and continuing through in or about the date

of this Indictment, in the Southern Division of the Western District of Michigan, and elsewhere, the

defendant,

### EMOND DUREA LOGAN,

knowing that the property involved represented the proceeds of some form of unlawful activity,

as defined in Title 18, United States Code, Section 1956(c)(1), that is, the distribution of cocaine

and conspiracy to do the same, both felony offenses under Title 21, United States Code, Sections

841(a)(1) and 846, did knowingly, intentionally and unlawfully combine, conspire, confederate

and agree with Alvin Keith Jackson and others, both known and unknown to the Grand Jury, to

conduct and cause to be conducted financial transactions which involved the proceeds of said

unlawful activity, with intent to promote the carrying on of said unlawful activity, to conceal and

disguise the nature, location, source, ownership and control of the proceeds of the unlawful

activity, and to avoid transaction reporting requirements under federal law.

### Means and Methods

It was part of the unlawful conspiracy that Lindell Brown, Alvin Keith Jackson, Felicia

Sabrina Blake, and others operated a large-scale drug distribution organization which involved

the procurement of thousands of kilograms of cocaine from the State of California, and the

delivery of said cocaine to the Detroit, Michigan area, for distribution in both the Eastern and

Western Districts of Michigan, and elsewhere.

It was a further part of the unlawful conspiracy that, once or twice a month from in or

about April 2004 through in or about January 2007, EMOND DUREA LOGAN used a tractor-

trailer to transport multiple-kilogram quantities of cocaine from the State of California to the

2

Detroit, Michigan area and elsewhere, using interstate highways, including Interstate 94 in the Western and Eastern Districts of Michigan. After EMOND DUREA LOGAN arrived in the Detroit, Michigan area with the cocaine, Alvin Keith Jackson would meet with EMOND · DUREA LOGAN at various locations, including a truck-related business located at 3000 Williams Road in Ypsilanti, Michigan, for the purpose of retrieving the cocaine from EMOND DUREA LOGAN. After retrieving the cocaine from EMOND DUREA LOGAN, Alvin Keith Jackson would transport the cocaine to various locations in the Detroit, Michigan area, including a residence owned by Felicia Sabrina Blake located at 22521 Carleton Avenue, Southfield, Michigan 48033, where the cocaine was unloaded by Alvin Keith Jackson, Lindell Brown, and others, for distribution to and by various drug trafficking organizations including AHH DEE AHH, which operated in the Lansing, Michigan area from 2001 through 2006.

It was further part of the unlawful conspiracy that Alvin Keith Jackson, Lindell Brown, and others at their direction, collected or arranged for the collection, counting and packaging of large amounts of United States currency derived from the sale of the cocaine in the Lansing and metropolitan Detroit areas, and elsewhere. After the United States currency was counted, vacuum-sealed, and packaged, Alvin Keith Jackson delivered the United States currency to EMOND DUREA LOGAN at various locations in the Detroit, Michigan area, including a truck-related business located at 3000 Williams Road in Ypsilanti, Michigan. EMOND DUREA LOGAN then transported the United States currency in his tractor-trailer back to the State of California via the interstate highway system, including Interstate 94 in both the Eastern and Western Districts of Michigan. The United States currency that EMOND DUREA LOGAN transported to the State of California was used to pay for cocaine previously obtained by the drug trafficking organization and for purchasing additional cocaine in California, thus promoting the continued illicit distribution of cocaine in the State of Michigan and elsewhere. Typically, these loads of United States currency transported by EMOND DUREA LOGAN ranged from several

3

hundred thousand dollars to over $1,000,000. EMOND DUREA LOGAN was paid in cash for transporting the kilograms of cocaine to the State of Michigan and elsewhere, and transporting the United States currency derived from the sale of the cocaine, back to the State of California.

It was further part of the unlawful conspiracy that EMOND DUREA LOGAN used his portion of the drug proceeds to pay for various motor vehicles, including a tractor-trailer, the mortgage for his residence located at 19058 Springbrook Court, Riverside, California 92508, credit card bills, and other expenses. Beginning in or about April 2004, EMOND DUREA LOGAN began making large cash deposits, typically ranging from $9,000 to $9,800, into various financial institutions in an attempt to avoid the filing of currency transaction reports by financial institutions as required by law, and to conceal the true source, nature and ownership of the United States currency involved in these transactions, which was derived from the sale of cocaine in the State of Michigan and elsewhere.

It was further part of the unlawful conspiracy that on or about Memorial Day weekend (late May) in 2006, EMOND DUREA LOGAN informed at least one co-conspirator that a load of United States currency from the State of Michigan was confiscated from him by law enforcement in another state on his way back to the State of California. Shortly thereafter, EMOND DUREA LOGAN began making large cash deposits into accounts he controlled in two or more financial institutions. On twenty-one (21) days between May 30, 2006, and November 15, 2006, EMOND DUREA LOGAN made 62 large cash deposits ranging from $1,500 to $9,800 and totaling $527,200 into accounts he controlled in two financial institutions. These large cash deposits typically ranged from $9,000 to $9,800. EMOND DUREA LOGAN, and others on his behalf, structured these large cash deposits in an attempt to avoid the filing of currency transaction reports by financial institutions as required by law, and to conceal the true source, nature and ownership of this United States currency, which was derived from the sale of cocaine in the State of Michigan and elsewhere.

4

It was a further part of the unlawful conspiracy that EMOND DUREA LOGAN would utilize funds he and others at his direction deposited into these financial institutions to purchase and lease motor vehicles and to conduct other financial transactions, while concealing the true source, nature and ownership of the funds involved in these transactions, which were derived from the sale of cocaine in the State of Michigan and elsewhere.

It was further part of the unlawful conspiracy that EMOND DUREA LOGAN would utilize funds in these financial institutions to pay his mortgage held by World Savings Bank on his residence located at 19058 Springbrook Court, Riverside, California 92508, and that in or about August 2006 he used $177,000 of these funds derived from the sale of cocaine in the State of Michigan and elsewhere to pay off this mortgage.

It was a further part of the unlawful conspiracy that various conspirators including EMOND DUREA LOGAN would take large amounts of cash derived from the organization's sale of cocaine and: (1) deposit the cash into various bank accounts or direct others to make the deposits; and (2) purchase cashier's checks and money orders or direct others to make such purchases. These funds would then be used to purchase assets and pay personal expenses with the goal of concealing the true source, nature and ownership of the funds.

It was a further part of the unlawful conspiracy that during the course of the conspiracy EMOND DUREA LOGAN purchased the following vehicles, in whole or in part, with proceeds from the sale of cocaine in the State of Michigan and elsewhere:

A 2008 Ford Mustang with Vehicle Identification Number
1ZVHT82H285157391;

A 2007 Maserati Quattroporte with Vehicle Identification Number
ZAMCE39A670027835;

A 2004 Porsche Cayenne with Vehicle Identification Number
WP1AB29P04LA66271;

A 2010 Ford Mustang with Vehicle Identification Number
1ZVBP8CH9A5116707;

A 2007 Volvo semi tractor-trailer with Vehicle Identification Number 4V4NC9TJ17N457049;

A 2007 Lexus RX350 with Vehicle Identification Number 2T2GK31U77C005333; and

A 2006 Chrysler 300 with Vehicle Identification Number 2C3KA53G66H192383.

18 U.S.C. § 1956(h)
18 U.S.C. § 1956(a)(1)(A)(i)
18 U.S.C. § 1956(a)(1)(B)(i)
18 U.S.C. § 1956(a)(1)(B)(ii)
18 U.S.C. § 1957

(Forfeiture Allegation)

The Grand Jury realleges the conspiracy charges in this Indictment as though fully set forth herein. Upon conviction of the controlled substance and/or money laundering offense charged in this Indictment, the defendant,

### EMOND DUREA LOGAN,

shall forfeit to the United States, pursuant to 21 U.S.C. § 853(a), 18 U.S.C. § 982, and 28 U.S.C. § 2461(c), (1) any and all property constituting or derived from proceeds obtained, directly or indirectly, as a result of the violation of the Controlled Substances Act in Count One of this Indictment, and any and all property used or intended to be used, in any manner or part, to commit or to facilitate the commission of the violation set forth in Count One; and (2) any property, real or personal, involved in the violation of the money laundering offense set forth in Count Two of this Indictment, and any property traceable to such property, including but not limited to the following:

1. ACCOUNTS

   a. Any and all funds in Wells Fargo Bank Checking Account ending in the numbers XXXXX2635, in the name of EMOND D. LOGAN dba Executive Transporting;

   b. Any and all funds in Wells Fargo Checking Account ending in the numbers XXXXXX5039, in the names of EMOND D. LOGAN and Caroline Epps;

   c. Any and all funds in Wells Fargo Savings Account ending in the numbers XXXXXX9432, in the name of Caroline Epps; and

   d. Any and all funds in Wells Fargo Savings Account ending in the numbers XXX-XXX3464, in the name of EMOND D. LOGAN dba Executive Transporting;

7

  e. Any and all funds in Wescom Credit Union, combined checking and money market Account ending in the number XX5664, in the name of EMOND LOGAN.

2. VEHICLES

  a. A 2007 Maserati Quattroporte with Vehicle Identification Number ZAMCE39A670027835;

  b. A 2010 Ford Mustang with Vehicle Identification Number 1ZVBP8CH9A5116707;

  c. A 2007 Volvo semi tractor trailer with Vehicle Identification Number 4V4NC9TJ17N457049;

  d. A 2007 Lexus RX350 with Vehicle Identification Number 2T2GK31U77C005333; and

  e. A 2006 Chrysler 300 with Vehicle Identification Number 2C3KA53G66H192383.

3. REAL PROPERTY

19058 Springbrook Court, Riverside California, 92508-6283, more fully described as: The land situated in the State of CA, County of Riverside, City of Riverside, and described as follows: Lot 45 of Tract No. 28628, as shown by map on file in Book 285 Pages 34 through 38 inclusive of Maps, records of Riverside County, California.

4. SUBSTITUTE ASSETS

If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

  a. cannot be located upon the exercise of due diligence;

  b. has been transferred or sold to, or deposited with, a third party;

  c. has been placed beyond the jurisdiction of the Court;

  d. has been substantially diminished in value; or

  e. has been commingled with other property which cannot be divided without difficulty;

It is the intent of the United States, pursuant to 21 U.S.C. § 853(p), to seek forfeiture of any other property of said defendant up to the value of the forfeitable property described above.

5.    MONEY JUDGMENT

By virtue of the commission of the controlled substance offense contained in Count One of this Indictment, the defendant, EMOND DUREA LOGAN, shall forfeit to the United States the sum of $36,000,000, which sum represents the aggregate of monies received in exchange for his involvement in the sale and distribution of cocaine, and constitutes proceeds derived from the sale and distribution of cocaine or which are traceable thereto.

21 U.S.C. §§ 853(a)(1), (a)(2) and (p)
21 U.S.C. § 846
. 21 U.S.C. § 841(a)(1)
18 U.S.C. § 982(a)(1) and (b)(1)
18 U.S.C. § 1956(h)
18 U.S.C. §1957
28 U.S.C. § 2461(c)

A TRUE BILL

_____
GRAND JURY FOREPERSON

DONALD A. DAVIS
United States Attorney

_____
BRIAN P. LENNON
Assistant United States Attorney
P.O. Box 208
Grand Rapids, Michigan 49501-0208
(616) 456-2404

**EXHIBIT 2**

**FILED - GR**

February 24, 2010 3:27 PM

TRACEY CORDES, CLERK
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY: EC /

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

        vs.

KELLY BURNETT GARMON,
CHARLES JACKSON, SR.,
CHARLES JACKSON, JR.,
WILLIE CORNELIUS JACKSON,
SAMUEL AARON COLLINS,
   Also Known As "Duran Anthony Lloyd,"
   Also Known As "DuJuan Winston,"
   Also Known As "DuJuan Bell,"
   Also Known As "Steven Parker,"
   Also Known As "Lucio Garcia,"
ROBERT EDWARD WILSON,
OWUSU ANANEH FIREMPONG,
REGINA Y. CAWTHORNE-SHARIFF,
JAMES DYLAN HAYES,
   Also Known As "Shawn Anthony Davis,"
MARLAN MICAH McRAE,
ALVIN MAURICE ANDERSON,
   Also Known As "Reece,"
EMOND DUREA LOGAN,
CAROLINE EPPS LOGAN,
MARTELL D. LOGAN, and
SHARON LOGAN,

        Defendants.

_____/

No. 1:08-CR-274

Hon. Paul L. Maloney
Chief United States District Judge

**SECOND SUPERSEDING INDICTMENT**

The Grand Jury charges:

## COUNT ONE
**(Conspiracy to Distribute and to Possess with Intent to Distribute Cocaine)**

Beginning on or about an unknown date in the mid-1990s and continuing through on or about

an unknown date in 2009, in the Southern Division of the Western District of Michigan, and

elsewhere, the defendants,

KELLY BURNETT GARMON,
CHARLES JACKSON, SR.,
CHARLES JACKSON, JR.,
WILLIE CORNELIUS JACKSON,
SAMUEL AARON COLLINS,
Also Known As "Duran Anthony Lloyd,"
Also Known As "DuJuan Winston,"
Also Known As "DuJuan Bell,"
Also Known As "Steven Parker,"
Also Known As "Lucio Garcia,"
ROBERT EDWARD WILSON,
OWUSU ANANEH FIREMPONG,
REGINA Y. CAWTHORNE-SHARIFF,
JAMES DYLAN HAYES,
Also Known As "Shawn Anthony Davis,"
MARLAN MICAH McRAE,
ALVIN MAURICE ANDERSON,
Also Known As "Reece,"
EMOND DUREA LOGAN, and
CAROLINE EPPS LOGAN,

did combine, conspire, confederate, and agree together, and with Alvin Keith Jackson, Donnie

Charles, Lindell Brown, Felicia Blake, Tamara Hughes, Kevin Emerson (a/k/a "Kenneth

Coleman"), and other persons both known and unknown to the Grand Jury, to knowingly,

intentionally and unlawfully distribute and possess with intent to distribute five kilograms or

more of a mixture or substance containing a detectable amount of cocaine, a Schedule II

controlled substance.

21 U.S.C. § 846
21 U.S.C. § 841(a)(1)
21 U.S.C. § 841(b)(1)(A)(ii)

2

## COUNT TWO
### (Money Laundering Conspiracy)

Beginning on or about an unknown date in the mid-1990s and continuing through on or about

December 2, 2009, in the Southern Division of the Western District of Michigan, and elsewhere, the

defendants,

**CHARLES JACKSON SR.,**
**CHARLES JACKSON JR.,**
**WILLIE CORNELIUS JACKSON,**
**SAMUEL AARON COLLINS,**
**Also Known As "Duran Anthony Lloyd,"**
**Also Known As "DuJuan Winston,"**
**Also Known As "DuJuan Bell,"**
**Also Known As "Steven Parker,"**
**Also Known As "Lucio Garcia,"**
**ROBERT EDWARD WILSON,**
**OWUSU ANANEH FIREMPONG,**
**REGINA Y. CAWTHORNE-SHARIFF,**
**JAMES DYLAN HAYES,**
**Also Known As "Shawn Anthony Davis,"**
**MARLAN MICAH McRAE, and**
**ALVIN MAURICE ANDERSON,**
**Also Known As "Reece,"**

knowing that the property involved represented the proceeds of some form of unlawful activity,

as defined in Title 18, United States Code, Section 1956(c)(1), that is, the distribution of cocaine

and conspiracy to do the same, both felony offenses under Title 21, United States Code, Sections

841(a)(1) and 846, did knowingly, intentionally and unlawfully combine, conspire, confederate

and agree together, and with Lindell Brown, Donnie Charles, Felicia Blake, Tamara Hughes,

Kevin Emerson (a/k/a "Kenneth Coleman"), and other persons both known and unknown to the

Grand Jury, to conduct and cause to be conducted financial transactions which involved the

proceeds of said unlawful activity, with intent to promote the carrying on of said unlawful

activity, to conceal and disguise the nature, location, source, ownership and control of the

3

proceeds of the unlawful activity, and to avoid transaction reporting requirements under federal law.

## Means and Methods

During the course of this unlawful conspiracy, CHARLES JACKSON, SR., CHARLES JACKSON, JR., SAMUEL AARON COLLINS, Donnie Charles, Lindell Brown, and others procured thousands of kilograms of cocaine from the State of California that was delivered to and distributed in the Detroit, Michigan area, and elsewhere, for further redistribution in both the Eastern and Western Districts of Michigan, and elsewhere.

It was a further part of the unlawful conspiracy that at regular intervals, at least once or twice a month, CHARLES JACKSON, SR., SAMUEL AARON COLLINS, and Donnie Charles directed Kevin Emerson (a/k/a "Kenneth Coleman") to transport multiple-kilogram loads of cocaine from the State of California to the Detroit, Michigan area and elsewhere, using the United States interstate highways, including Interstate 94 in the Western and Eastern Districts of Michigan. After Kevin Emerson (a/k/a "Kenneth Coleman") arrived in the Detroit, Michigan area with the cocaine from California, he would meet with JAMES DYLAN HAYES, Lindell Brown, Felicia Blake, Tamara Hughes and others at various locations in the Detroit, Michigan area. At times during the course of the conspiracy, Kevin Emerson (a/k/a "Kenneth Coleman") delivered loads of cocaine to JAMES DYLAN HAYES at 37530 Jefferson Ave., Apt. #104, Harrison Township, Michigan ("the Harrison Township Condo"), the title for which was placed in the name of "Kenneth Coleman" (Kevin Emerson's alias) but the true owners of which were CHARLES JACKSON, SR. and JAMES DYLAN HAYES.

4

It was further part of the unlawful conspiracy that JAMES DYLAN HAYES redistributed the cocaine he received from Kevin Emerson (a/k/a "Kenneth Coleman") to MARLAN MICAH McRAE, ALVIN MAURICE ANDERSON and others. After JAMES DYLAN HAYES, Lindell Brown, Felicia Blake, Tamara Hughes and others further distributed the cocaine, they collected the drug proceeds in the form of United States currency.

It was further part of the unlawful conspiracy that JAMES DYLAN HAYES, Lindell Brown, Felicia Blake, Tamara Hughes and others retained their profits from the sale of cocaine, but returned the bulk of the drug proceeds to Kevin Emerson (a/k/a "Kenneth Coleman"), who transported the drug proceeds, in the form of United States currency, back to CHARLES JACKSON, SR., SAMUEL AARON COLLINS, Donnie Charles and others in the State of California. This United States currency that Kevin Emerson (a/k/a "Kenneth Coleman") transported to the State of California was used to pay for the cocaine previously obtained by the drug trafficking organization and for purchasing additional cocaine in the State of California, thus promoting the continued illicit distribution of cocaine in the State of Michigan and elsewhere. Typically the value of these loads of United States currency transported by Kevin Emerson (a/k/a "Kenneth Coleman") ranged from several hundred thousand dollars to over $1,000,000. Kevin Emerson (a/k/a "Kenneth Coleman") was paid in cash for transporting the kilograms of cocaine and United States currency derived from the sale of the cocaine between the States of California and Michigan.

It was further part of the conspiracy that CHARLES JACKSON, SR., SAMUEL AARON COLLINS, JAMES DYLAN HAYES, OWUSU ANANEH FIREMPONG, Donnie Charles and others purchased and provided Kevin Emerson (a/k/a "Kenneth Coleman") with various motor

5

vehicles, including minivans and motor homes, so that Kevin Emerson (a/k/a "Kenneth Coleman") could transport the multiple-kilogram loads of cocaine to the State of Michigan and elsewhere, and transport the drug proceeds back to the State of California. Some of these vehicles that Kevin Emerson (a/k/a "Kenneth Coleman") used to transport the cocaine and U.S. currency included:

- a 1995 Toyota Previa Minivan with VIN JT3AC14R0S1171553;
- a 1997 Toyota Previa Minivan with VIN JT3GK13M7V1247468;
- a 1998 Toyota Camry sedan with VIN JT2SV22W6J0209275;
- a 2000 Windstar Minivan with VIN 2FMZA5041YBC47571;
- a 1997 American Dream Motor Home with VIN 4V2BN1098VC023724;
- a 2000 Pace Arrow Motor Home with VIN 1FCNF53S5Y0A0224; and
- a 2003 Revolution Motor Home built on a Freightliner Chassis with VIN 4UZAAHBS83CM0384.

At times while Kevin Emerson (a/k/a "Kenneth Coleman") remained in the Detroit, Michigan area waiting for the cocaine to be sold and the drug proceeds collected, JAMES DYLAN HAYES provided him access to 37530 Jefferson Ave., Apt. #104, Harrison Township, Michigan ("the Harrison Township Condo") and with a 1991 Oldsmobile Calais with VIN 1G3NL54UXMM059322, so that Kevin Emerson (a/k/a "Kenneth Coleman") had lodging and transportation in the Detroit area while the cocaine was sold and the transport vehicle loaded with drug proceeds for the return trip to the State of California.

It was further part of the unlawful conspiracy that REGINA Y. CAWTHORNE-SHARIFF paid the storage bill for at least one of the motor homes used to transport the cocaine and drug proceeds between the States of Michigan and California. At various times during the

6

course of the unlawful conspiracy, REGINA Y. CAWTHORNE-SHARIFF stocked the motor

home with provisions for the trips to the State of Michigan and elsewhere with the cocaine, and

she helped unload the duffle bags containing drug proceeds from the motor homes upon their

return to the State of California. Moreover, on or about February 17, 2008, REGINA Y.

CAWTHORNE-SHARIFF drove Donnie Charles to a location in Carson, California, where

Donnie Charles delivered approximately $80,000.00 in United States currency to his cocaine

supplier.

It was further part of the unlawful conspiracy that CHARLES JACKSON, SR.,

CHARLES JACKSON, JR., SAMUEL AARON COLLINS and others used the United States

Postal Service to send kilograms of cocaine from the State of California to various addresses in

the Detroit, Michigan area, including a residence located at 12711 Wade Street, Detroit,

Michigan, a residence owned by JAMES DYLAN HAYES. It was further part of the conspiracy

that CHARLES JACKSON, SR. and SAMUEL COLLINS instructed others to use the United

States Postal Service to send the drug proceeds back to them in the State of California, where the

packages containing United States currency were sent to homes and businesses of others, in order

to avoid detection by law enforcement.

It was further part of the unlawful conspiracy that CHARLES JACKSON, SR.,

CHARLES JACKSON, JR., WILLIE CORNELIUS JACKSON, OWUSU ANANEH

FIREMPONG, JAMES DYLAN HAYES, MARLAN MICAH McRAE,

ALVIN MAURICE ANDERSON, Donnie Charles and others used a portion of their drug

proceeds to purchase real estate, businesses, motor vehicles, and other items of personal property.

For example, during the course of the conspiracy, CHARLES JACKSON, SR., CHARLES

7

JACKSON, JR., WILLIE CORNELIUS JACKSON, and Donnie Charles purchased, constructed, maintained, remodeled, refinanced, and made mortgage payments on the following properties, in whole or in part, with drug proceeds obtained from the unlawful sale of cocaine in the State of Michigan and elsewhere:

- 4588 Don Milagro, Los Angeles, California;

- 4230 Don Jose, Los Angeles, California;

- 1943 West 74th Street, Los Angeles, California;

- 3745 Lorado Way, Los Angeles, California;

- 4607 3rd Avenue, Los Angeles, California;

- 2800 6th Avenue (also referred to as 2800 54th Street), Los Angeles, California;

- 1061 West 111th Street, Los Angeles, California;

- 1063 West 111th Street, Los Angeles, California;

- 1603 West 209th Street, Torrance, California, to include 20821-20823 Harvard, Torrance, California, which are buildings now located on the property;

- 715 West Rosecrans, Compton, California;

- 4900 South Van Ness Avenue, Los Angeles, California;

- 5411 6th Avenue, Los Angeles, California;

- 5419 6th Avenue, Los Angeles, California;

- 5912 West Blvd., Los Angeles, California;

- 7620 S. Western, Los Angeles, California;

- 10232 Victoria, Riverside, California;

- 11915 Willowbrook, Los Angeles, California;

- 12201 South Vermont, Los Angeles, California, to include 1002-1004 West 112nd Street, which are buildings now located on the property;

- 19441 Radlett, Carson, California;

- 11846-50 S. Normandie, Los Angeles, California;

- 8936 Haas Avenue, Los Angeles, California;

- 19506 Fariman, Carson, California; and

- 10318 St. Andrews Place, Los Angeles, California.

CHARLES JACKSON, SR., CHARLES JACKSON, JR., WILLIE CORNELIUS JACKSON, and Donnie Charles purchased these properties, and later transferred ownership of several of these properties between themselves, to other co-conspirators, to nominees, and to corporations they control, in order to conceal the true source, nature, and ownership of the funds involved in the real estate transactions, as these funds were derived, in whole or in part, from the sale of cocaine in the State of Michigan and elsewhere.

Similarly, it was further part of the conspiracy that JAMES DYLAN HAYES and MARLAN MICAH McRAE purchased, refinanced, and made mortgage payments on the following properties, in whole or in part, with drug proceeds obtained from the unlawful sale of cocaine in the State of Michigan:

- 37530 Jefferson Ave., Apt. #104, Harrison Township, Michigan ("the Harrison Township Condo");

- 48714 Tanglewood Dr., Macomb, Michigan;

- 21973 International Lane, Macomb, Michigan; and

- 5480 Seneca Street, Detroit Michigan.

9

JAMES DYLAN HAYES and MARLAN MICAH McRAE purchased these properties using documents provided to financial institutions which falsely portrayed the source of the funds used to purchase the properties in order to conceal the true source, nature, and ownership of the funds involved in the real estate transactions, as these funds were derived, in whole or in part, from the sale of cocaine in the State of Michigan and elsewhere.

It was further part of the conspiracy that ROBERT EDWARD WILSON and others provided fraudulent documents, including fake W-2 tax forms and employment documents, to other co-conspirators and to financial institutions for the purchase and transfer of some of these properties in both the States of California and Michigan, including fraudulent documents used for the purchase of 37530 Jefferson Ave., Apt. #104, Harrison Township, Michigan ("the Harrison Township Condo") by "Kenneth Coleman" (alias for Kevin Emerson) in May of 2001.

It was further part of the conspiracy that JAMES DYLAN HAYES used proceeds from the sale of cocaine to purchase commercial real estate and operate business entities including Executive Auto Sales, Inc., a used car business located at 10333 and 10351 Gratiot Avenue, Detroit, MI. JAMES DYLAN HAYES used these businesses and others to conceal the true source, nature, and ownership of the funds involved in the purchase and operation of these businesses, as these funds were derived, in whole or in part, from the sale of cocaine in the State of Michigan and elsewhere.

It was further part of the unlawful conspiracy that the defendants used accounts at banks and other financial institutions to conceal the true source, nature and ownership of the United States currency they acquired from the sale of cocaine in the State of Michigan and elsewhere. For example, between January 14, 2003 and March 16, 2009, JAMES DYLAN HAYES made

144 large cash deposits totaling more than $961,000 into a JP Morgan Chase Bank account

ending in number "4693," which he controlled. Similarly, between January 1, 2003 and January

27, 2009, JAMES DYLAN HAYES made 73 individual cash deposits totaling $226,391 into a

JP Morgan Chase Bank account ending in number "8235," which he controlled. All of these

cash deposits into both accounts were under $10,000 with the maximum cash deposit being

$9,900. Several transactions involving the JP Morgan Chase Bank account ending in number

"4693" show cash deposits of just under $10,000 with money orders being purchased and

deposited on the same day, all in an attempt to avoid the filing of currency transaction reports by

financial institutions as required by law, and to conceal the true source, nature and ownership of

the United States currency involved in these transactions, which was derived from the sale of

cocaine in the State of Michigan and elsewhere.

It was further part of the unlawful conspiracy that JAMES DYLAN HAYES, ALVIN

MAURICE ANDERSON and others submitted false and fraudulent loan applications for the

purchase of automobiles and other items of personal property, in order to conceal the true source,

nature and ownership of the United States currency involved in these transactions, which was

derived from the sale of cocaine in the State of Michigan and elsewhere.

It was further part of the unlawful conspiracy that the defendants either failed to file

federal tax returns and/or filed fraudulent or misleading federal tax returns for the tax years 2002

through 2008, in order to hide and conceal their illegal proceeds from the sale of cocaine in the

State of Michigan and elsewhere.

18 U.S.C. § 1956(h)
18 U.S.C. § 1956(a)(1)(A)(i)
18 U.S.C. § 1956(a)(1)(B)(i)
18 U.S.C. § 1956(a)(1)(B)(ii)
18 U.S.C. § 1957

## COUNT THREE
### (Money Laundering Conspiracy)

Beginning on or about an unknown date in 2004 and continuing through in or about September 2009, in the Southern Division of the Western District of Michigan, and elsewhere, the defendants,

**EMOND DUREA LOGAN,
CAROLINE EPPS LOGAN,
MARTELL D. LOGAN and
SHARON LOGAN**

knowing that the property involved represented the proceeds of some form of unlawful activity, as defined in Title 18, United States Code, Section 1956(c)(1), that is, the distribution of cocaine and conspiracy to do the same, both felony offenses under Title 21, United States Code, Sections 841(a)(1) and 846, did knowingly, intentionally and unlawfully combine, conspire, confederate and agree together, and with Alvin Keith Jackson, Lindell Brown, Felicia Blake, Tamara Hughes and others, both known and unknown to the Grand Jury, to conduct and cause to be conducted financial transactions which involved the proceeds of said unlawful activity, with intent to promote the carrying on of said unlawful activity, to conceal and disguise the nature, location, source, ownership and control of the proceeds of the unlawful activity, and to avoid transaction reporting requirements under federal law.

### Means and Methods

It was part of the unlawful conspiracy that Lindell Brown, Alvin Keith Jackson, Felicia Blake, Tamara Hughes and others operated a large-scale drug distribution organization which involved the procurement of thousands of kilograms of cocaine from the State of California, and the delivery of said cocaine to the Detroit, Michigan area, for distribution in both the Eastern and Western Districts of Michigan, and elsewhere.

It was a further part of the unlawful conspiracy that, once or twice a month from in or about April 2004 through in or about January 2007, EMOND DUREA LOGAN used a tractor-trailer to transport multiple-kilogram quantities of cocaine from the State of California to the Detroit, Michigan area and elsewhere, using interstate highways, including Interstate 94 in the Western and Eastern Districts of Michigan. After EMOND DUREA LOGAN arrived in the Detroit, Michigan area with the cocaine, Alvin Keith Jackson would meet with EMOND DUREA LOGAN at various locations, including a truck-related business located at 3000 Williams Road in Ypsilanti, Michigan, for the purpose of retrieving the cocaine from EMOND DUREA LOGAN. After retrieving the cocaine from EMOND DUREA LOGAN, Alvin Keith Jackson would transport the cocaine to various locations in the Detroit, Michigan area, including a residence owned by Felicia Sabrina Blake located at 22521 Carleton Avenue, Southfield, Michigan 48033, where the cocaine was unloaded by Alvin Keith Jackson, Lindell Brown, and others, for distribution to and by various drug trafficking organizations, including AHH DEE AHH, which operated in the Lansing, Michigan area from 2001 through 2006.

It was further part of the unlawful conspiracy that Alvin Keith Jackson, Lindell Brown, and others at their direction, collected or arranged for the collection, counting and packaging of large amounts of United States currency derived from the sale of the cocaine in the Lansing and metropolitan Detroit areas, and elsewhere. After the United States currency was counted, vacuum-sealed, and packaged, Alvin Keith Jackson delivered the United States currency to EMOND DUREA LOGAN at various locations in the Detroit, Michigan area, including a truck-related business located at 3000 Williams Road in Ypsilanti, Michigan. EMOND DUREA LOGAN then transported the United States currency in his tractor-trailer back to the State of California via the interstate highway system, including Interstate 94 in both the Eastern and Western Districts of Michigan. The United States currency that EMOND DUREA LOGAN transported to the State of California was used to pay for cocaine previously obtained by the drug

trafficking organization and for purchasing additional cocaine in California, thus promoting the continued illicit distribution of cocaine in the State of Michigan and elsewhere. Typically, these loads of United States currency transported by EMOND DUREA LOGAN ranged from several hundred thousand dollars to over $1,000,000. EMOND DUREA LOGAN was paid in cash derived from the sale of the cocaine.

It was further part of the unlawful conspiracy that EMOND DUREA LOGAN and his wife, CAROLINE EPPS LOGAN, used EMOND DUREA LOGAN's portion of the drug proceeds to pay for and maintain various motor vehicles, including a tractor-trailer, pay the mortgage for their residence located at 19058 Springbrook Court, Riverside, California 92508, credit card bills, and other expenses. Beginning in or about April 2004, EMOND DUREA LOGAN began making large cash deposits, typically ranging from $9,000 to $9,800, into various financial institutions in an attempt to avoid the filing of currency transaction reports by financial institutions as required by law, and to conceal the true source, nature and ownership of the United States currency involved in these transactions, which was derived from the sale of cocaine in the State of Michigan and elsewhere.

It was further part of the unlawful conspiracy that on or about Memorial Day weekend (late May) in 2006, EMOND DUREA LOGAN informed at least one co-conspirator that a load of United States currency from the State of Michigan was confiscated from him by law enforcement in another state on his way back to the State of California. Shortly thereafter, EMOND DUREA LOGAN began making large cash deposits into accounts he and CAROLINE EPPS LOGAN controlled in two or more financial institutions. On twenty-one (21) days between May 30, 2006, and November 15, 2006, EMOND DUREA LOGAN made 62 large cash deposits ranging from $1,500 to $9,800 and totaling $527,200 into accounts he controlled in two financial institutions. These large cash deposits typically ranged from $9,000 to $9,800. EMOND DUREA LOGAN, and others on his behalf, structured these large cash deposits in an

14

attempt to avoid the filing of currency transaction reports by financial institutions as required by law, and to conceal the true source, nature and ownership of this United States currency, which was derived from the sale of cocaine in the State of Michigan and elsewhere.

It was a further part of the unlawful conspiracy that EMOND DUREA LOGAN, and others at his direction, including CAROLINE EPPS LOGAN, MARTELL D. LOGAN, and SHARON LOGAN, deposited funds into various financial institutions to purchase and lease motor vehicles and to conduct other financial transactions, while concealing the true source, nature and ownership of the funds involved in these transactions, which were derived from the sale of cocaine in the State of Michigan and elsewhere.

It was further part of the unlawful conspiracy that EMOND DUREA LOGAN and CAROLINE EPPS LOGAN would utilize funds in these financial institutions to pay their mortgage held by World Savings Bank on their residence located at 19058 Springbrook Court, Riverside, California 92508, and that in or about August 2006 EMOND DUREA LOGAN and CAROLINE EPPS LOGAN used $177,000 of these funds derived from the sale of cocaine in the State of Michigan and elsewhere to pay off this mortgage.

It was a further part of the unlawful conspiracy that EMOND DUREA LOGAN, CAROLINE EPPS LOGAN, MARTELL LOGAN, and SHARON LOGAN would take large amounts of cash derived from the organization's sale of cocaine and: (1) deposit the cash into various bank accounts or direct others to make the deposits; and (2) purchase cashier's checks and money orders or direct others to make such purchases. These funds would then be used to purchase assets and pay personal expenses with the goal of concealing the true source, nature and ownership of the funds.

It was a further part of the unlawful conspiracy that during the course of the conspiracy EMOND DUREA LOGAN and/or CAROLINE EPPS LOGAN purchased the following

15

vehicles, in whole or in part, with proceeds from the sale of cocaine in the State of Michigan and
elsewhere:

A 2008 Ford Mustang with Vehicle Identification Number
1ZVHT82H285157391;

A 2007 Maserati Quattroporte with Vehicle Identification Number
ZAMCE39A670027835;

A 2004 Porsche Cayenne with Vehicle Identification Number
WP1AB29P04LA66271;

A 2010 Ford Mustang with Vehicle Identification Number
1ZVBP8CH9A5116707;

A 2007 Volvo semi tractor-trailer with Vehicle Identification
Number 4V4NC9TJ17N457049;

A 2007 Lexus RX350 with Vehicle Identification Number
2T2GK31U77C005333;

A 2006 Chrysler 300 with Vehicle Identification Number
2C3KA53G66H192383;

A 2007 Mercedes Benz SL 500R with Vehicle Identification Number
WDBSK71FO7F128632;

A Ziema Trailer with Vehicle Identification Number 1ZCS14011W304061; and

A 2009 Great Dane Trailer with Vehicle Identification Number
1GRAA06209T548382.

18 U.S.C. § 1956(h)
18 U.S.C. § 1956(a)(1)(A)(i)
18 U.S.C. § 1956(a)(1)(B)(i)
18 U.S.C. § 1956(a)(1)(B)(ii)
18 U.S.C. § 1957

16

**(Forfeiture Allegation)**

The Grand Jury realleges the conspiracy charges in this Second Superseding Indictment

as though fully set forth herein.  Upon conviction of the controlled substance and/or money

laundering offense charged in this Second Superseding Indictment, the defendants,

**KELLY BURNETT GARMON,**
**CHARLES JACKSON, SR.,**
**CHARLES JACKSON, JR.,**
**WILLIE CORNELIUS JACKSON,**
**SAMUEL AARON COLLINS,**
**Also Known As "Duran Anthony Lloyd,"**
**Also Known As "DuJuan Winston,"**
**Also Known As "DuJuan Bell,"**
**Also Known As "Steven Parker,"**
**Also Known As "Lucio Garcia,"**
**ROBERT EDWARD WILSON,**
**OWUSU ANANEH FIREMPONG,**
**REGINA Y. CAWTHORNE-SHARIFF,**
**JAMES DYLAN HAYES**
**Also Known As "Shawn Anthony Davis,"**
**MARLAN MICAH McRAE,**
**ALVIN MAURICE ANDERSON,**
**Also Known As "Reece,"**
**EMOND DUREA LOGAN,**
**CAROLINE EPPS LOGAN,**
**MARTELL D. LOGAN, and**
**SHARON LOGAN,**

shall forfeit to the United States, pursuant to 21 U.S.C. § 853(a), any and all property constituting

or derived from proceeds obtained, directly or indirectly, as a result of the violation of the

Controlled Substances Act in Count One of this Second Superseding Indictment, and any and all

property used or intended to be used, in any manner or part, to commit or to facilitate the

commission of the violation set forth in Count One; and shall forfeit, pursuant to 18 U.S.C. §

982(a)(1), any property, real or personal, involved in the violation of the money laundering

offenses set forth in Counts Two and Three of this Second Superseding Indictment, and any

property traceable to such property, including but not limited to the following:

1.    ACCOUNTS

    a.    Any and all funds in JP Morgan Chase Bank account ending in the numbers XXXX4693, in the name of Executive Auto Sales, Inc./"JAMES HAYES" (**"Account #1"**);

    b.    Any and all funds in JP Morgan Chase Bank account ending in the numbers XXXX8235, in the name of "JAMES HAYES" (**"Account #2"**)

    c.    Any and all funds in JP Morgan Chase Bank account ending in the numbers XXXX5591, in the names of WILLIE CORNELIUS JACKSON, Lois Jackson or Charles Jackson (**"Account #3"**);

    d.    Any and all funds in JP Morgan Chase Bank account ending in the numbers XXXX6780, in the name of WILLIE CORNELIUS JACKSON (**"Account #4"**);

    e.    Any and all funds in JP Morgan Chase Bank account ending in the numbers XXXX8540 in the name of WILLIE CORNELIUS JACKSON (**"Account #5"**);

    f.    Any and all funds in JP Morgan Chase Bank account ending in the numbers XXXX9811, in the name of Casa Don Jose, Inc. (**"Account #6"**);

    g.    Any and all funds in JP Morgan Chase Bank account ending in the numbers XXXX8706, in the name of Casa Don Milagro, Inc. (**"Account #7"**);

    h.    Any and all funds in JP Morgan Chase Bank account ending in the numbers XXXX6150, in the name of WILLIE CORNELIUS JACKSON (**"Account #8"**);

    i.    Any and all funds in JP Morgan Chase Bank account ending in the numbers XXXX9803, in the name of Rosetta 111th and Rosecrans Corp. (**"Account #9"**);

    j.    Any and all funds in JP Morgan Chase Bank account ending in the numbers XXXX9837, in the name of Rosetta 3rd and Van Ness Corp. (**"Account #10"**);

    k.    Any and all funds in JP Morgan Chase Bank account ending in the numbers XXXX9613, in the name of Rosetta 209th and Western Corp. (**"Account #11"**);

    l.    Any and all funds in JP Morgan Chase Bank account ending in the numbers XXXX9639, in the name of Rosetta 54th and 6th Avenue Corp. (**"Account #12"**);

m.  Any and all funds in JP Morgan Chase Bank account ending in the numbers XXXX9829, in the name of Rosetta West Blvd. and Vermont Corp. (**"Account #13"**);

n.  Any and all funds in JP Morgan Chase Bank account ending in the numbers XXXX9621, in the name of Rosetta Willowbrook Plus Corp. (**"Account #14"**);

o.  Any and all funds in JP Morgan Chase Bank account ending in the numbers XXXX9605, in the name of Rosetta 69th and St. Andrew Corp. (**"Account #15"**);

p.  Any and all funds in JP Morgan Chase Bank account ending in the numbers XXXX3508, in the name of CCW Assets Management Ltd. (**"Account #16"**);

q.  Any and all funds in JP Morgan Chase Bank account ending in the numbers XXXX3483, in the name of CCW Assets Management Ltd. (**"Account #17"**);

r.  Any and all funds in JP Morgan Chase Bank account ending in the numbers XXXX3516, in the name of CCW Assets Management Ltd. (**"Account #18"**);

s.  Any and all funds in JP Morgan Chase Bank account ending in the numbers XXXX2551, in the name of CCW Assets Management Ltd. (**"Account #19"**);

t.  Any and all funds in JP Morgan Chase Bank account ending in the numbers XXXXXX7758 in the name CCW Asset Management Ltd. (**"Account #20"**);

u.  Any and all funds in JP Morgan Chase Bank account ending in the numbers XXXXXX3532 in the name CCW Asset Management Ltd. (**"Account #21"**);

v.  Any and all funds in JP Morgan Chase Bank account ending in the numbers XXXXXX3524 in the name CCW Asset Management Ltd. (**"Account #22"**);

w.  Any and all funds in JP Morgan Chase Bank account ending in the numbers XXXXXX3475 in the name CCW Asset Management Ltd. (**"Account #23"**);

x.  Any and all funds in JP Morgan Chase Bank account ending in the numbers XXXXXX5102 in the name CCW Asset Management Ltd. (**"Account #24"**);

y.  Any and all funds in JP Morgan Chase Bank account number N17-501727 in the name of Willie C. Jackson, Willie and L. Jackson Trust (**"Account #25"**);

z.  Any and all funds in JP Morgan Chase Bank account number 000004953421628, in the name of CHARLES JACKSON, JR. (**"Account #26"**);

aa.    Any and all funds in One United Bank account number 1002638592 in the name of CHARLES JACKSON, JR. (**"Account #27"**);

bb.    Any and all funds in One United Bank account number 1002265303 in the name of Worldwide Auto Sales (**"Account #28"**);

cc.    Any and all funds in NuVision Federal Credit Union account number 449401749, in the name of WILLIE C. JACKSON (**"Account #29"**);

dd.    Any and all funds in NuVision Federal Credit Union account number 451625915, in the name of Lois Jackson (**"Account #30"**);

ee.    Any and all funds in Bank of America account number 23621-01361, in the names of Lois Jackson and WILLIE C. JACKSON (**"Account #31"**);

ff.    Any and all funds in Bank of America account number 21743-40484, in the name Marvin C. Shelton (**"Account #32"**);

gg.    Any and all funds in Bank of America account number 21740-76671, in the name of Marvin C. Shelton (**"Account #33"**);

hh.    Any and all funds in Broadway Federal Bank account number 730073124, in the name of Lois Jackson (**"Account #34"**);

ii.    Any and all funds in Broadway Federal Bank account number 7300737728 in the name Willie Jackson (**"Account #35"**);

jj.    Any and all funds in Broadway Federal Bank account number 710297311, in the name of WILLIE C. JACKSON (**"Account #36"**);

kk.    Any and all funds in Western Federal Credit Union account number 2009660, in the name of WILLIE C. JACKSON (**"Account #37"**);

ll.    Any and all funds in AIG Annuity Ins. Co account number VV270737, in the name of WILLIE C. JACKSON (**"Account #38"**);

mm.    Any and all funds in AIG Annuity Ins. Co account number NN088610, in the name of WILLIE C. JACKSON (**"Account #39"**);

nn.    Any and all funds in Western National Life Insurance Company account number VV270737, in the name of WILLIE C. JACKSON (**"Account #40"**);

oo.   Any and all funds in ING, ReliaStar Life Insurance Company account number B1992050, in the name of Lois Jackson, Insured Rory Jackson (**"Account #41"**);

pp.   Any and all funds in ING, ReliaStar Life Insurance Company account number B1992051, in the name of Lois Jackson, insured Willie C. Jackson, Jr. (**"Account #42"**);

qq.   Any and all funds in SAFECO Life and Investments annuity account number LP1076145, in the name of WILLIE C. JACKSON (**"Account #43"**);

rr.   Any and all funds in JP Morgan Chase account number 000000716102025 in the name of Executive Properties Enterprise LLC (**"Account #44"**);

ss.   Any and all funds in Comerica Bank account number1852519014 in the name of Executive Auto Sales Inc. (**"Account #45"**);

tt.   Any and all funds in FAA First Federal Credit Union account number 56362 in the name of Stacy Jackson (**"Account #46"**);

uu.   Any and all funds in Wells Fargo Bank Checking Account ending in the numbers XXXXX2635, in the name of EMOND D. LOGAN dba Executive Transporting (**"Account #47"**);

vv.   Any and all funds in Wells Fargo Checking Account ending in the numbers XXXXXX5039, in the names of EMOND D. LOGAN and Caroline Epps (**"Account #48"**);

ww   Any and all funds in Wells Fargo Savings Account ending in the numbers XXXXXX9432, in the name of Caroline Epps (**"Account #49"**);

xx.   Any and all funds in Wells Fargo Savings Account ending in the numbers XXX-XXX3464, in the name of EMOND D. LOGAN dba Executive Transporting (**"Account #50"**);

yy.   Any and all funds in Wescom Credit Union, combined checking and money market Account ending in the number XX5664, in the name of EMOND LOGAN (**"Account #51"**);

zz.   Any and all funds in JP Morgan Chase money market account number 411-878400001-1 in the name of Caroline Logan (**"Account #52"**);

aaa.  Any and all funds in Wescom Credit Union account ending in the number XX9216, in the names of MARTELL LOGAN and SHARON LOGAN (**"Account #53"**);

2.    <u>VEHICLES</u>

    a.    One 1995 Toyota Previa Minivan, VIN JT3AC14R0S1171553 (**"Vehicle #1"**);

    b.    One 1997 Toyota Previa Minivan, VIN JT3GK13M7V1247468 (**"Vehicle #2"**);

    c.    One 2000 Windstar Minivan, VIN 2FMZA5041YBC47571 (**"Vehicle #3"**);

    d.    One 1997 American Dream Motor Home, VIN 4VZBN1098VC023724 (**"Vehicle #4"**);

    e.    One 2003 Revolution Motor Home built on a Freightliner Chassis, VIN 4UZAAHBS83CM03804 (**"Vehicle #5"**);

    f.    One 2003 Lexus SC430, VIN JTHFN48Y330036099 (**"Vehicle #6"**);

    g.    One 2006 BMW, VIN WBAEK13436CN78697 (**"Vehicle #7"**);

    h.    One 2002 Mercedes Benz, VIN WDBRH64J62F150831 (**"Vehicle #8"**);

    i.    One 1996 Eliminator (boat), VIN ELBU0321C696 (**"Vehicle #9"**);

    j.    One 1994 Chevrolet pickup truck, VIN 1GCHC33N5RJ327018 (**"Vehicle #10"**);

    k.    One 2003 GMC Yukon SUV, VIN 1GKFK66U53J183318 (**"Vehicle #11"**);

    l.    One 2009 GMC Yukon SUV, VIN 1GKFK06269J120426 (**"Vehicle #12"**);

    m.    One 2008 Chevrolet Malibu, VIN 1G1ZH57B984267252 (**"Vehicle #13"**);

    n.    One 1949 Chevrolet pickup, VIN SGPC7445 (**"Vehicle #14"**);

    o.    One 2004 Rance Trailer, VIN 4PVCH20234E020390 (**Vehicle #15"**);

    p.    One 2004 Honda Motorcycle, VIN 1HFSC53J14A000208 (**"Vehicle #16"**);

    q.    One 2006 Harley Davidson, VIN 1HD1FCW186Y638493 (**"Vehicle #17"**);

    r.    One 1996 Chevrolet Caprice, VIN 1G1BL52P5TR156051 (**"Vehicle #18"**);

    s.    One 2000 Freightliner wrecker, VIN 1FV3EFAC5YHB77710 (**"Vehicle #19"**);

t.      One 2006 International wrecker, VIN 1HTMMAAL96H223946
        ("Vehicle #20");

u.      One 2002 Toyota Sequoia, VIN 5TDBT48A52S105542 ("Vehicle #21");

v.      One 2003 Mercury Marauder, VIN 2MEHM75V43X677805 ("Vehicle #22");

w.      One 1999 Honda Accord, VIN 1HGCG164XXA054775 ("Vehicle #23");

x.      One 1998 Toyota Camry, VIN JT2BF22K0W0145137 ("Vehicle #24");

y.      A 1998 Buick Park Avenue with VIN 1G4CW52K8W4620356 ("Vehicle #25");

z.      A 2000 Ford Taurus with VIN 1FAFP5528YA202142 ("Vehicle #26");

aa.     A 2001 Chrysler Sebring with VIN 1C3EL46X21N617451
        ("Vehicle #27");

bb.     A 2004 Honda Odyssey with VIN 2HKRL1859YH575538
        ("Vehicle #28");

cc.     A 2000 Cadillac DeVille with VIN 1G6KD54YXYU168195
        ("Vehicle #29");

dd.     A 1990 Mercury Grand Marquis with VIN 2MECM74F9LX668568
        ("Vehicle #30");

ee.     A 2001 Ford Taurus with VIN 1FAHP53U01G232400 ("Vehicle #31");

ff.     A 2005 Pontiac Grand Prix with VIN 2G2WP522551287644
        ("Vehicle #32");

gg.     A 2000 Chevrolet Impala with VIN 2G1WF52E9Y9338716
        ("Vehicle #33");

hh.     A 2002 Ford Explorer with VIN 1FMZU73E02UA93489
        ("Vehicle #34");

ii.     A 1996 Doge Caravan with VIN 2B6HB21Y9VK500729
        ("Vehicle #35");

jj.     A 1998 Lexus E8300 with VIN JT8BF28G0W5028489 ("Vehicle #36");

23

kk.   A 2001 Dodge Neon with VIN 1B3ES46C71D135853
      ("**Vehicle #37**");

ll.   A 2000 Ford Windstar with VIN 2FMZA5244YBC92100
      ("**Vehicle #38**");

mm.   A 1998 Chevrolet Venture with VIN 1GNDU06E5WD334896 ("**Vehicle #39**");

nn.   A 2000 Ford Taurus with VIN 1FAFP52U7YA253704
      ("**Vehicle #40**");

oo.   A 1999 Mazda Protege with VIN JM1BJ2217X0157848
      ("**Vehicle #41**");

pp.   A 2002 Kia Sedona with VIN KND0P131226116341 ("**Vehicle #42**");

qq.   A 2000 Chevrolet Venture with VIN 1GNDU06E5W0334896 ("**Vehicle #43**");

rr.   A 1999 Chevrolet Express Van with VIN 1GCHG35R7Y1160051
      ("**Vehicle #44**");

ss.   A 2007 Kaufman trailer with serial number 15XFE47357L003674
      ("**Vehicle #45**");

tt.   A 1997 Chevrolet van with VIN 1GCHG35R6V1062818
      ("**Vehicle #46**");

uu.   A 1998 Yamaha Wave Runner with VIN YAMA1329L798
      ("**Vehicle #47**");

vv.   A 2000 Seadoo (boat) with VIN ZZN58381D999 ("**Vehicle #48**");

ww.   A 2000 GMC pickup truck with VIN 1GTG034F9W2539X1
      ("**Vehicle #49**");

xx.   A 2000 Bobcat front loader with VIN 512264612 ("**Vehicle #50**");

yy.   A 2001 Honda Accord with VIN 1HGCG8658XA033719
      ("**Vehicle #51**");

zz.   A trailer (for watercraft) with serial number 6408201 ("**Vehicle #52**");

aaa.  A 2003 Freightliner with VIN 1FVJAPCK03DL81549 ("**Vehicle #53**");

24

bbb.    A 1999 Harley Davidson motorcycle with VIN 1HD1FCW37XY623907
        (**"Vehicle #54"**);

ccc.    A 2003 Harley Davidson motorcycle with VIN 1HD1FRW503Y702074
        (**"Vehicle #55**);

ddd.    A 2005 Harley Davidson motorcycle with VIN 1HD1JAB345Y087116
        (**"Vehicle #56"**);

eee.    A 2000 Ultraloc 28-foot boat with VIN: UTCSX607G900 and hull number MC
        8369PZ, and trailer (**"Vehicle #57"**);

fff.    A 2005 Harley Davidson motorcycle with VIN 1HD1BYB115Y07723
        (**"Vehicle #58"**);

ggg.    A 2004 Harley Davidson motorcycle with VIN 1HD1FCW394Y604366
        (**"Vehicle #59"**);

hhh.    A 2007 Maserati Quattroporte with Vehicle Identification Number
        ZAMCE39A670027835 (**"Vehicle #60"**);

iii.    A 2010 Ford Mustang with Vehicle Identification Number
        1ZVBP8CH9A5116707 (**"Vehicle #61"**);

jjj.    A 2007 Volvo semi tractor trailer with Vehicle Identification Number
        4V4NC9TJ17N457049 (**"Vehicle #62"**);

kkk.    A 2007 Lexus RX350 with Vehicle Identification Number
        2T2GK31U77C005333 (**"Vehicle #63"**);

lll.    A 2006 Chrysler 300 with Vehicle Identification Number  2C3KA53G66H192383
        (**"Vehicle #64"**);

mmm.   A 2007 Mercedes Benz SL 500R with Vehicle Identification Number
        WDBSK71FO7F128632 (**"Vehicle #65"**);

nnn.    A Ziema Trailer with Vehicle Identification Number 1ZCS14011W304061
        (**"Vehicle #66"**); and

ooo.    A 2009 Great Dane Trailer with Vehicle Identification Number
        1GRAA06209T548382 (**"Vehicle #67"**).

25

3.    REAL PROPERTY

a.    All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 19441 Radlett Avenue, Carson, California, County of Los Angeles, more particularly described as:

Lot 127 of tract 29681, as per map recorded in book 739, pages 30 to 32 inclusive, of maps in the office of the County Recorder of Los Angeles County.

APN: 7322-017-037.
Owner: The Ralph and Mae Charles Living Trust. **("Property #1")**;

b.    All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 12201 South Vermont Avenue, Los Angeles, California, County of Los Angeles, more particularly described as:

The north 45 feet of lots 10, 11 and 12, in block "J" in the townsite of Howard Tract, in the County of Los Angeles, State of California, as per map recorded in book 22, page 59 of seq. of miscellaneous records in the office of the County Recorder of said county.

APN: 6089-012-007
Owner: Rosetta West Blvd. and Vermont Corp., a California corporation. **("Property #2")**;

c.    All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 11915 Willowbrook Avenue, Los Angeles, California, County of Los Angeles, more particularly described as:

Lot 132 of Springdale Tract in the County of Los Angeles, State of California, as per map recorded in book 6, page 194 of maps in the office of the County Recorder of said county.

APN: 6150-007-027.
Owner: Rosetta Willowbrook Plus Corp., a California corporation. **("Property #3")**;

d.    All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 7620 South

Western Avenue, Los Angeles, California, County of Los Angeles, more particularly described as:

> Lots 8, 9, and 10, block 17 of tract no. 6757, in the City of Los Angeles, County of Los Angeles, State of California, as per map recorded in book 76, pages 35 and through 38 inclusive of maps, in the office of the County Recorder of said county.

APN: 6018-017-031.
Owner: Rosetta 209th and Western Corp. (**"Property #4"**);

e.     All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 5912 West Boulevard, Los Angeles, California, County of Los Angeles, more particularly described as:

> Lot 88 of tract 2095, in the City of Los Angeles, County of Los Angeles, State of California as per map recorded in book 23, page 22 of maps in the office of the County Recorder of said county.

> Except the easterly 20 feet thereof conveyed to the City of Los Angeles, for alley purposes, by deed recorded in book 933 page 172, official records.

APN: 4004-015-004.
Owner: Rosetta West Blvd. and Vermont Corp. (**"Property #5"**);

f.     All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 5159 South St. Andrews Place, Los Angeles, California, County of Los Angeles, more particularly described as:

> Lot 115 of Chesterfield Square as per map recorded in book 21 pages 90 and 91 of maps, in the office of the County Recorder of said county.

APN: 5015-009-007.
Owner: Rosetta 69th and St. Andrews Corp. (**"Property #6"**);

g.     All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 4900 S. Van Ness Avenue, Los Angeles, California, County of Los Angeles, more particularly described as:

Lot 82 of St. Vincents College Tract, in the City of Los Angeles, County of Los Angeles, State of California, as per map recorded in book 12, pages 118 and 119 of maps, in the office of the County Recorder of said county.

APN: 5015-023-010.
Owner: Rosetta 3rd and Van Ness Corp. **("Property #7")**;

h.    All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 715 West Rosecrans, Compton, California, County of Los Angeles, more particularly described as:

TRACT # 6468 E 39.07 FT EX OF ST OF LOT 4 AND EX OF ST LOT 5 BLK 2

Parcel No.: 6178-003-002.
Owner: Rosetta 111th and Rosecrans Corp. **("Property #8")**;

i.    All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 1603 West 209th Street, Torrance, California, County of Los Angeles, more particularly described as:

Lot 13, block 43 of tract 4983, in the City of Los Angeles (Torrance Area), County of Los Angeles, State of California as per map recorded in book 58, page(s) 80 to 85, inclusive of maps in the office of the County Recorder of said county.

APN: 7351-010-013.
Owner: Rosetta 209th and Western Corp. **("Property #9")**;

j.    All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 1061 West 111th Street, Los Angeles, California, County of Los Angeles, more particularly described as:

The southerly 150 feet of lot 14, Woodcrest Tract, in the County of Los Angeles, State of California, as per map recorded in book 9, page 40 of maps, in the office of the County Recorder of said county.

APN: 6076-013-020.
Owner: Rosetta 111th and Rosecrans Corp. **("Property #10")**;

47

k.    All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 2800 6th Avenue, Los Angeles, California, County of Los Angeles, more particularly described as:

> Lots 32, 33 and 34 of the east 18 feet of lot 35 of tract no. 1610, as per map recorded in book 20, page 85 of maps in the office of the County Recorder of said county.

APN: 5006-023-033.
Owner: Rosetta 54th and 6th Avenue Corp. (**"Property #11"**);

l.    All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 4607 3rd Avenue, Los Angeles, California, County of Los Angeles, more particularly described as:

> Lot 95 of tract 1700 in the City of Los Angeles, County of Los Angeles, as per map recorded in book 22, page 29 of maps, in the office of the County Recorder of said county.
> Except all oil, naptha, maltha gas, or other kindred substances deposited in, lying under or flowing through said property as reserved in deed from Los Angeles Investment Company, a corporation recorded April 11, 1918 in book 6644 page 158 of deeds.

APN: 5014-027-011.
Owner: Rosetta 3rd and Van Ness Corp. (**"Property #12"**);

m.    All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 3745 Lorado Way, Los Angeles, California, County of Los Angeles, more particularly described as:

> Lot 51 of tract 6177, in the City of Los Angeles, County of Los Angeles, California as per map recorded in book 144, page(s) 77 through 81, inclusive of maps in the office of the County Recorder of said county.

APN: 5012-027-004.
Owner: Owusu Firempong, a single man. (**"Property #13"**);

n.    All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 1943 West 74th Street, Los Angeles, California, County of Los Angeles, more particularly described as:

Lot 16, in block 7, of tract no. 5107, in the City of Los Angeles, County of
Los Angeles, State of California, as per map recorded in book 54 pages 67
to 70 inclusive of maps, in the office of the County Recorder of said
county.

APN: 6017-007-016.

Owner: Peggy Dalcour, a single woman. **("Property #14);**

o.      All that lot or parcel of land, together with its buildings, appurtenances,
improvements, fixtures, attachments and easements, located at 4230 Don Jose
Drive, Los Angeles, California, County of Los Angeles, more particularly
described as:

Lot 100 of tract no. 20871, in the City of Los Angeles, County of Los
Angeles, State of California, as per map recorded in book 619, pages 93
through 96, inclusive of maps, in the office of the County Recorder of said
county.

APN: 5028-012-013.

Owner: Casa Don Jose, Inc. **("Property #15");**

p.      All that lot or parcel of land, together with its buildings, appurtenances,
improvements, fixtures, attachments and easements, located at 4588 Don Milagro
Drive, Los Angeles, California, County of Los Angeles, more particularly
described as:

Lot 100 of tract no. 17455, in the City of Los Angeles, in the County of
Los Angeles, State of California, as per map recorded in book 542, pages
33 through 36 inclusive of maps, in the office of the County Recorder of
said county.

Except therefrom all petroleum, oil, gas, naptha, asphaltum, brea and other
hydrocarbons and all minerals within or underlying said land, without,
however, any right to re-enter or use the surface of said land or any portion
of the subsurface thereof to a depth of 200 feet from the present surface of
said land, as reserved by Dextra Baldwin Derx, Baldwin M. Baldwin and
Raymond L. Knisley, as trustees under the trust created by the last will and
testament of Anita M. Baldwin, deceased, in the deed recorded April 22,
1947 in book 24497 page 230, official records.

APN: 5028-017-015.

Owner: Casa Don Milagro, Inc. **("Property #16");**

q.  All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 21973 International Lane, Macomb, Michigan, County of Macomb, more particularly described as:

> Lot(s) 30, Towngate Subdivision, according to the plat thereof as recorded in Liber 137, Page(s) 34, 35, 36, 37, 38, 39 and 40 of Plats, Macomb County Records.

APN: 08-35-151-016.
Owner: Marlan M. McRae, a single man. **("Property #17")**;

r.  All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 37530 Jefferson, #104, Harrison Township, Michigan, County of Macomb, more particularly described as:

> Unit 63, Harbor Club North Condominium, according to the Master Deed recorded in Liber 9472, Page(s) 518 through 580, inclusive, and any amendments thereto, Macomb County Records, and designated as Macomb County Condominium Subdivision Plan No. 657, together with rights in general common elements and limited common elements, as set forth in the above Master Deed and as described in Act 59 of the Public Acts of 1978, as amended.

APN: 12-29-204-063.
Owner: James Hayes, a single man. **("Property #18")**;

s.  All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 48714 Tanglewood Drive, Macomb, Michigan, County of Macomb, more particularly described as:

> Lot(s) 26, Sycamore Estates No. 1, according to the plat thereof as recorded in Liber 155 of Plats, Page(s) 64, Macomb County Records.

APN: 08-26-126-007.
Owner: James Dylan Hayes, as Trustee of the Revocable Living Trust of James Dylan Hayes dated July 30, 2007. **("Property #19")**;

t.  All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 5480 Seneca, Detroit, Michigan, County of Wayne, more particularly described as:

31

Lot(s) 6, Stephenson-Trebein Company's Subdivision, according to the plat thereof as recorded in Liber 27, Page(s) 48 of Plats, Wayne County Records.

APN: 17-006743.
Owner: Executive Properties Enterprises LLC. **("Property #20")**;

u.    All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 4893 Chatsworth, Detroit, Michigan, County of Wayne, more particularly described as:

Lot(s) 1, Arthur J. Scully's Rifle Range Subdivision, according to the plat thereof as recorded in Liber 45, Page(s) 34 of Plats, Wayne County Records.

APN: 21-69028.
Owner: Executive Properties Enterprises LLC. **("Property #21")**;

v.    All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 10300 and 10351 Gratiot Avenue, Detroit, Michigan, County of Wayne, more particularly described as:

Parcel 1:  Lots 1 through 10, both inclusive, Edgewood Subdivision, according to the plat thereof as recorded in Liber 15, page(s) 83 of Plats, Wayne County Records.
Parcel 2:  Lot 14, except the east 100 feet and that part taken for Gratiot Avenue, as widened, Bessenger & Moore's Gratiot Avenue Subdivision No. 2, according to the plat thereof as recorded in Liber 28, page(s) 30 of Plats, Wayne County Records.

APN: 19-1773 through 19-1779 and 19-1598.
Owner: Executive Properties Enterprises LLC. **("Property #22")**;

w.    All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 10333 Gratiot Avenue (as to Lots 12 and 13) and 10341 Gratiot Avenue (as to Lot 14), Detroit, Michigan, County of Wayne, more particularly described as:

Lot(s) 12, 13 and 14, except Gratiot as widened, Alfred M. Lows Gratiot Avenue Subdivision, according to the plat thereof as recorded in Liber 17, Page(s) 69 of Plats, Wayne County Records.

APN: 19-001771 and 19-001772.
Owner: Executive Properties Enterprises LLC. **("Property #23")**;

x.    All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 12711 Wade, Detroit, Michigan, County of Wayne, more particularly described as:

Lot(s) 612, Ravendale Subdivision No. 1, according to the plat thereof as recorded in Liber 46, Page(s) 72 of Plats, Wayne County Records.

APN: 21-6287
Owners: James Hayes, a single man, and Sandra Chatman, a single woman.
**("Property #24")**;

y.    All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 16130 Whitcomb, Detroit, Michigan, County of Wayne, more particularly described as:

Lot(s) 50, Puritan Greenfield Subdivision of the South 1/2 of the Southwest 1/4 of the Northwest 1/4 of Section 18, Town 1 South, Range 11 East, City of Detroit, Wayne County, Michigan, as recorded in Liber 51, Page(s) 8 of Plats, Wayne County Records.

APN: 22-047548.003L.
Owner: Executive Properties Enterprises LLC **("Property #25")**;

z.    All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 16161 Roselawn, Detroit, Michigan, County of Wayne, more particularly described as:

Lot(s) 166, McIntyre Park Subdivision, according to the plat thereof as recorded in Liber 44, Page(s) 12 of Plats, Wayne County Records.

APN: 16-30787.
Owner: James Hayes, a married man, and Twyla Cabil Hayes, his wife.
**("Property #26")**;

aa.    All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 8936 Haas Avenue, Los Angeles, California, Los Angeles County, more particularly described as:

Lot 32 of Tract 11772 in the City of Los Angeles, County of Los Angeles, State of California, as per map recorded in Book 219, Page 3 and 4 of Maps in the Office of the County Recorder of said County.

APN: 6036-023-008.
Owner: Stacey Jackson, A Single Woman. **("Property #27")**;

bb.  All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 11846-50 S. Normandie, Los Angeles, California, Los Angeles County, more particularly described as:

The portion of Lot(s) 17 of Tract No. 15735, in the County of Los Angeles, State of California, as per map recorded in Book 378, Page(s) 7 and 8 of Maps, in the Office of the County Recorder of Said County, Lying Westerly of a Line Parallel with and Distant Easterly 53.00 Feet, Measured at right angles form the Tangent Portion of the Prologation of the Westerly Line of said Lot 17.

APN: 6079-011-020.
Owner: Rosetta 69th and St. Andrews Corp. **("Property #28")**; and

cc.  19058 Springbrook Court, Riverside California 92508-6283, more fully described as: The land situated in the State of CA, County of Riverside, City of Riverside, and described as follows:

Lot 45 of Tract No. 28628, as shown by map on file in Book 285 Pages 34 through 38 inclusive of Maps, records of Riverside County, California.

APN: 266-491-012-1
Owner: Caroline Epps-Logan and Emond D. Logan, wife and husband as joint tenants **("Property #29")**.

4.  <u>PERSONAL PROPERTY</u>

a.  The following items of personal property seized and removed from 19058 Springbrook Court, Riverside California 92508-6283, a residence owned by EMOND DUREA LOGAN and CAROLINE EPPS-LOGAN, on or about September 11 and 14, 2009, including but not limited to:

1.  Three Rolex Watches and assorted items of jewelry;

2.  Three fur coats and a fur wrap;

34

        3.      Sixty-three designer handbags and pieces of designer luggage; and

        4.      United States currency in the amount of $7,535.00, now in the form of a Bank of America Cashier's Check.

b.     The following items of personal property seized and removed from MARLAN McRAE's residence, located at 21973 International, Macomb, MI, on or about December 2, 2009, including but not limited to:

        1.      One Rolex watch and assorted items of jewelry;

        2.      Eight (8) fur coats;

        3.      U.S. currency in the amount of $14,372, now in the form of a Comerica Bank Cashier's Check #00553166;

        4.      U.S. Savings Bonds in various denominations; and

        5.      Foreign currency.

c.     United States currency in the amount of $56,314 seized from the residence of JAMES DYLAN HAYES located at 48714 Tanglewood, Macomb, MI and from his safe deposit box located at Comerica Bank on or about December 2 and 3, 2009, and now the form of a Comerica Bank Cashier's Check #00553165.

d.     United States currency in the amount of $440 seized from the residence of ALVIN ANDERSON after his arrest on or about December 2, 2009, and now in the form of a Comerica Bank Cashier's Check #00553167.

e.     United States currency in the amount of $30,011 seized from the residence of Sandy Yamamoto and Marvin Shelton during the search of their home on or about December 2, 2009, and now in the form of a Bank of America cashier's check.

f.     United States currency in the amount of $19,200, now in the form of two Bank of America cashier's checks, and U.S. Savings Bonds in various denominations, seized from the residence of WILLIE CORNELIUS JACKSON during the search of his home located at 4230 Don Jose, Los Angeles, California, on or about December 2, 2009.

g.     U.S. Savings Bonds in various denominations and assorted rare coins seized from MARLAN McRAE's safe deposit box at 5th/3rd Bank on or about December 3, 2009.

5.     SUBSTITUTE ASSETS

If any of the above-described forfeitable property, as a result of any act or omission of the

defendant:

        a.     cannot be located upon the exercise of due diligence;

        b.     has been transferred or sold to, or deposited with, a third party;

        c.     has been placed beyond the jurisdiction of the Court;

        d.     has been substantially diminished in value; or

        e.     has been commingled with other property which cannot be divided without
            difficulty;

It is the intent of the United States, pursuant to 21 U.S.C. § 853(p), to seek forfeiture of

any other property of said defendants up to the value of the forfeitable property described above.

6.     MONEY JUDGMENT

By virtue of the commission of the controlled substance offense contained in Count One

of this Second Superseding Indictment, the defendants shall forfeit to the United States the sum

of $136,000,000.00, which sum represents the aggregate of monies received in exchange for their

involvement in the sale and distribution of cocaine, and constitutes proceeds derived from the sale and distribution of cocaine or which are traceable thereto.

21 U.S.C. §§ 853(a) and (p)
21 U.S.C. § 846
21 U.S.C. § 841(a)(1)
18 U.S.C. § 982(a)(1) and (b)(1)
18 U.S.C. § 1956(a) and (h)
18 U.S.C. § 1957
28 U.S.C. § 2461(c)

A TRUE BILL

_____
GRAND JURY FOREPERSON

DONALD A. DAVIS
United States Attorney

_____
BRIAN P. LENNON
Assistant United States Attorney
P.O. Box 208
Grand Rapids, Michigan 49501-0208
(616) 456-2404

56

**EXHIBIT 3**

Subj:     **Surrender Details - Monday, March 1, 2010 before 9:30 AM**
Date:     2/26/2010 10:26:41 A.M. Pacific Standard Time
From:     Brian.Lennon@usdoj.gov
To:       CIVIL1975@aol.com
CC:       Jay.Robinson@usdoj.gov, Lynn_Holck@fd.org

Mr. Terrell & Ms. Banks:

Please confirm receipt of this message.

Yesterday you received the recently returned 2nd Superseding Indictment in *U.S. v. Garmon et al*, WDMI Case No. 1:08-CR-274 [PLM]. I also e-mailed you the arrest warrants for Caroline Logan, Martell Logan, and Sharon Logan.

Pursuant to our agreement, on Monday, March 1, 2010, all three defendants are to appear at the Federal Courthouse in Los Angeles (The Roy Ball Building – Courtroom 341) before 9:30 AM in lieu of being arrested by ATF. The address is 255 E. Temple Street, Los Angeles, CA 90012. They need to appear before 9:30 AM so they can be processed and interviewed by the US Marshals Service and US Pretrial Services.

I have informed the duty AUSA, Jay Robinson, of our agreement. Therefore, he knows that as long as the Logans surrender themselves on Monday, March 1st as promised, my office has agreed to their release on PR bonds (w/ standard conditions from the USPO) and the special condition that they report to the Gerald R. Ford United States Courthouse in Grand Rapids, MI on April 5, 2010 for their Rule 5 and/or Arraignment in our district. All three defendants must appear before the Hon. Joseph P. Scoville, U.S. Magistrate Judge at 2:00 PM (EST). The courthouse is located at 110 Michigan N.W., Grand Rapids, MI 49503. Judge Scoville's courtroom is on the 7th Floor.

I have attached a Financial Affidavit that is used in our district. If the Logans will be seeking court-appointed counsel in our district, it would be prudent for them to complete the affidavits and forward them to the Office of the Federal Public Defender, Attn: Ms. Lynn Holck, well before they are scheduled to appear in the Western District of Michigan on April 5th. The address for the Federal Public Defender is: 50 Louis NW, 5th Floor, Grand Rapids, MI 49503. (phone) 616-742-7420; (fax) 616-742-7430.

Please let me know if you need any additional information.

AUSA Brian P. Lennon
USAO WDMI
(main) 616-456-2404, ext. 2095
(cell) 616-901-7693

Cc: AUSA Jay Robinson, CDCA and Lynn Holck

---

**From:** CIVIL1975@aol.com [mailto:CIVIL1975@aol.com]
**Sent:** Thursday, February 25, 2010 8:13 PM
**To:** Lennon, Brian P. (USAMIW)
**Subject:** Re: FW: Arrest Warrants - Caroline Epps Logan, Martell D. Logan, Sharon Logan

**EXHIBIT 4**

## UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, Plaintiff, | CASE NUMBER: 10-415-M | |
|---|---|---|
| v. Caroline Epps Logan | COMPLAINT: | INDICTMENT / INFORMATION: |
| ☐ Defendant/Material Witness. | VIOLATION OF TITLE: 21 | SECTION: 841 |

☑ PERSONAL RECOGNIZANCE (Signature only - no dollar amount)
☐ UNSECURED APPEARANCE BOND IN THE AMOUNT OF $_____        RELEASE No. 32551
☐ APPEARANCE BOND IN THE AMOUNT OF $_____
  ☐ WITH CASH DEPOSIT (AMOUNT OR %) _____        ☐ RELEASE TO PRETRIAL ONLY
  ☐ WITH AFFIDAVIT OF SURETY NO JUSTIFICATION (Form CR-4)    ☐ FORTHWITH RELEASE
              ☐ ALL CONDITIONS OF BOND
☐ WITH AFFIDAVIT WITH JUSTIFICATION OF SURETY (Form CR-3)    SHALL BE MET AND BOND
              POSTED BY: _____
                                    *Date*

☐ WITH DEEDING OF PROPERTY
☐ COLLATERAL BOND IN AMOUNT OF (Cash or Negotiable Securities) $_____
☐ CORPORATE SURETY BOND IN AMOUNT OF (Separate Form Required) $_____
☐ ADDITIONAL REQUIREMENTS:
☑ BAIL FIXED BY COURT    *1 as*        ☐ ALL REQUIREMENTS HAVE BEEN MET: _____
        *Deputy Clerk*                                   *Deputy Clerk*

### PRE-CONDITIONS TO RELEASE
☐ Bail is subject to Nebbia hearing which is a hearing to inquire about the source of the collateral.
  ☐ The Nebbia hearing can be waived by the government.

### ADDITIONAL CONDITIONS OF RELEASE
In addition to the GENERAL CONDITIONS of RELEASE, as specified on other side, the following conditions of release are imposed upon you:
☑ Defendant shall submit to: [☑] Pretrial Supervision. [ ] Intensive Pretrial Supervision. *[ / / as Started in open*
☑ Surrender all passports to the Clerk of Court, or sign a declaration no later than *passport sayed by govt* and not apply *Court]*
  for the issuance of a passport during the pendency of this case.
☑ Travel is restricted to: CD/CA   *Western District of Michigan*
☑ Do not enter premises of any airport, seaport, railroad, or bus terminal which permits exit from the Continental U.S. or area
  of restricted travel without Court permission.
☑ Reside as approved by PSA and do not relocate without prior permission from PSA.
☑ Maintain or actively seek employment and provide proof to PSA.
☐ Maintain or commence an educational program and provide proof to PSA.
☐ Avoid all contact, directly or indirectly, with any person who is or who may become a victim or potential witness in the
  subject investigation or prosecution, including but not limited to: _____
☐ Not possess any firearms, ammunition, destructive devices, or other dangerous weapons. [ ] In order to determine
  compliance, you will agree to submit to a search of your person and/or property by Pretrial Services in conjunction with the
  US Marshal.
☐ Not use/possess any identification other than in your own legal name or true name. [ ] In order to determine compliance, you
  will agree to submit to a search of your person and/or property by Pretrial Services in conjunction with the U.S. Marshal.
☐ Not use alcohol.
☐ Not use or possess illegal drugs. [ ] In order to determine compliance, you will agree to submit to a search of your person
  and/or property by Pretrial Services in conjunction with the US Marshal.
☐ Submit to drug [and/or] alcohol testing and outpatient treatment as directed by PSA. You shall pay all or part of the cost for
  testing and treatment based upon your ability to pay as determined by PSA.
☐ Participate in residential drug [and/or] alcohol treatment as deemed necessary by PSA. You shall pay all or part of the cost
  for treatment based upon your ability to pay as determined by PSA. [ ] Release to PSA only.
☐ Participate in mental health evaluation, and/or counseling and/or treatment as directed by PSA. You shall pay all or part of
  the costs based upon your ability to pay as determined by PSA.

                                                **Defendant Initials** _____    **Date** 3/1/10

ORIGINAL - YELLOW COPY        PINK- PRETRIAL SERVICES        WHITE - DEFENDANT COPY

## UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA

CAROLINE EPPS LOGAN

Defendant/Material Witness.

CASE NUMBER:

10-415-M

☐ Participate in one of the following home confinement program components and abide by all requirements of the program which [ ] **will** or [ ] **will not** include electronic monitoring or other location verification system. You shall pay all or part of the cost of the program based upon your ability to pay as determined by PSA.

   [ ] **Curfew.** You are restricted to your residence every day: [ ] from _____ to _____ . [ ] as directed by PSA.
   [ ] **Release to PSA only.**

   [ ] **Home Detention.** You are restricted to your residence at all times except for employment; education; religious services; medical, substance abuse, or mental health treatment; attorney visits; court-ordered obligations; or other activities as pre-approved by PSA. [ ] **Release to PSA only.**

   [ ] **Home Incarceration.** You are restricted to your residence at all times except for medical needs or treatment; religious services; and court appearances as pre-approved by PSA. [ ] **Release to PSA only.**

☐ Not possess or have access to, either in the home, the workplace, or any other location, any device which offers Internet access, except as approved by PSA. [ ] In order to determine compliance, you will agree to submit to a search of your person and/or property by Pretrial Services in conjunction with the US Marshal.

☐ Not associate or have verbal, written, telephonic, or electronic communication with any person who is less than the age of 18 except in the presence of another adult who is the parent or legal guardian of the minor.

☐ Not loiter/be found within 100 feet of any school yard, park, playground, arcade, or other place primarily used by children under the age of 18.

☐ Not be employed by, affiliate with, own, control, or otherwise participate directly or indirectly in conducting the affairs of any daycare facility, school, or other organization dealing with the care, custody, or control of children under the age of 18.

☐ Not view or possess child pornography or child erotica. [ ] In order to determine compliance, you will agree to submit to a search of your person and/or property, including computer hardware and software, by Pretrial Services in conjunction with the US Marshal.

☐ Other conditions: _____

_____

3-1-10
*Date*

*Defendant/Material Witness' Signature*

951-789-8785
*Telephone Number*

Riverside, CA 92508
*City, State And Zip Code* ONLY

☐ **Check if interpreter is used:** I have interpreted into the _____ language all of the above conditions of release and have been told by the defendant that he or she understands all of the conditions of release.

*Interpreter's signature*

*Date*

Approved _____
*United States District Judge / Magistrate Judge*

3/1/10
*Date*

If Cash Deposited: Receipt # _____ For $ _____

(This bond may require surety agreements and affidavits pursuant to Local Criminal Rules 46-3.2 and 46-6)

ORIGINAL - YELLOW COPY     PINK- PRETRIAL SERVICES     WHITE - DEFENDANT COPY

GPO  U.S.GOVERNMENT PRINTING OFFICE: 2005-785-040

FILED
CLERK, U.S. DISTRICT COURT

MAR ‑ 1 2010

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| UNITED STATES OF AMERICA, | CASE NUMBER: |
|---|---|
| PLAINTIFF | 1-08 CR 774 |
| v. | |
| Cardnie Coz, DEFENDANT. | **DECLARATION RE PASSPORT** |

I, _Cardnie Coza_ , declare that
     (Defendant)

☐   I do not currently possess any passport(s).  I will not apply for the issuance of a passport during the pendency of this case.

☐   I am unable to locate my passport(s). If I locate any passport issued to me, I will immediately surrender it to the U.S. Pretrial Services Agency. I will not apply for the issuance of a passport during the pendency of this case.

☒   My passport is in the possession of federal agents. If my passport is returned to me during the pendency of this case, I will immediately surrender it to the U.S. Pretrial Services Agency. I will not apply for the issuance of a passport during the pendency of this case.

I declare under penalty of perjury that the foregoing is true and correct.

Executed  this _1_ day of _March_ , 20 _10_
at _Los Angeles, CA_
          (City and state)

_____
Signature of Defendant

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

UNITED STATES OF AMERICA,

Plaintiff,

vs.

Caroline Epps Logan

Defendant.

Western Division

Case Number: 2:10-MJ-00415    Out of District Affidavit
Initial App. Date: 03/01/2010    Initial App. Time: 3:00 PM

Date Filed: 03/01/2010
Violation: 21:841  3/1/10
CourtSmart: _____

---

**PROCEEDINGS HELD BEFORE UNITED STATES**
**MAGISTRATE JUDGE: Carla Woehrle**

**CALENDAR/PROCEEDINGS SHEET**
**LOCAL/OUT-OF-DISTRICT CASE**

PRESENT:        Synagogue, Evelyn A.          JM Robinson                    None
              _____    _____    _____
                     *Deputy Clerk*          *Assistant U.S. Attorney*      *Interpreter/Language*

☑ INITIAL APPEARANCE NOT HELD - CONTINUED
☑ Defendant informed of charge and right to: remain silent; appointment of counsel, if indigent; right to bail; bail review and
  ☑ preliminary hearing OR ☑ removal hearing / Rule 20.
☑ Defendant states true name ☑ is as charged ☑ is _____
☐ Defendant advised of consequences of false statement in financial affidavit. ☐ Financial Affidavit ordered SEALED.
☑ Attorney: Leo Terrell, Retained ☐ Appointed ☐ Prev. Appointed ☐ Poss. Contribution (see separate order)
  ☐ Special appearance by: _____
☐ Government's request for detention is: ☐ GRANTED ☐ DENIED ☐ WITHDRAWN ☐ CONTINUED
☐ Defendant is ordered: ☐ Permanently Detained ☐ Temporarily Detained (see separate order)
☐ BAIL FIXED AT $    PR              (SEE ATTACHED COPY OF CR-1 BOND FORM FOR CONDITIONS)
☐ Government moves to UNSEAL Complaint/Indictment/Information/Entire Case: ☐ GRANTED ☐ DENIED
☐ Preliminary Hearing waived.
☐ Class B Misdemeanor ☐ Defendant is advised of maximum penalties
☐ This case is assigned to Magistrate Judge _____. Counsel are directed to contact the clerk for the setting
  of all further proceedings.
☐ PO/PSA WARRANT ☐ Counsel are directed to contact the clerk for
  District Judge _____ for the setting of further proceedings.
☐ Preliminary Hearing set for _____ at 4:30 PM _____
☐ PIA set for: _____ at 8:30 AM in LA; at 9:30 AM in Riverside; at 10:00 AM in Santa Ana
☐ Government's motion to dismiss case/defendant _____ only: ☐ GRANTED ☐ DENIED
☐ Defendant's motion to dismiss for lack of probable cause: ☐ GRANTED ☐ DENIED
☑ Defendant executed Waiver of Rights. ☐ Process received.
☑ Court ORDERS defendant Held to Answer to   Western   District of   Michigan
  ☑ Bond to transfer, if bail is posted. Defendant to report on or before   4/5/10 @ 2:00 pm
  ☐ Warrant of removal and final commitment to issue. Date issued: _____ By CRD: _____
  ☐ Warrant of removal and final commitment are ordered stayed until _____
☐ Case continued to (Date) _____ (Time) _____ AM / PM
  Type of Hearing: _____ Before Judge _____ /Duty Magistrate Judge.
  Proceedings will be held in the ☐ Duty Courtroom _____ ☐ Judge's Courtroom _____
☐ Defendant committed to the custody of the U.S. Marshal ☐ Summons: Defendant ordered to report to USM for processing.
☐ Abstract of Court Proceeding (CR-53) issued. Copy forwarded to USM.
☐ Abstract of Order to Return Defendant to Court on Next Court Day (M-20) issued. Original forwarded to USM.
☐ RELEASE ORDER NO: _____
☐ Other: _____

☑ PSA            ☑ FINANCIAL            ☐ READY
                    Rc'd                   Deputy Clerk Initials _____
                                           _____ : _____

M-5 (12/09)            CALENDAR/PROCEEDING SHEET - LOCAL/OUT-OF-DISTRICT CASE            Page 1 of 1

# UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, Plaintiff, | CASE NUMBER: 10-415-M | |
|---|---|---|
| v. Caroline Epps Logan | COMPLAINT: | INDICTMENT / INFORMATION: |
| Defendant/Material Witness. | VIOLATION OF TITLE: 21 | SECTION: 841 |

☑ PERSONAL RECOGNIZANCE (Signature only - no dollar amount)
☐ UNSECURED APPEARANCE BOND IN THE AMOUNT OF $_____
☐ APPEARANCE BOND IN THE AMOUNT OF $_____
   ☐ WITH CASH DEPOSIT (AMOUNT OR %) _____
   ☐ WITH AFFIDAVIT OF SURETY NO JUSTIFICATION (Form CR-4)
   _____
   _____
☐ WITH AFFIDAVIT WITH JUSTIFICATION OF SURETY (Form CR-3)
   _____

RELEASE No. 32551

☐ RELEASE TO PRETRIAL ONLY
☐ FORTHWITH RELEASE
☐ ALL CONDITIONS OF BOND
SHALL BE MET AND BOND
POSTED BY: _____
    *Date*

☐ WITH DEEDING OF PROPERTY
☐ COLLATERAL BOND IN AMOUNT OF (Cash or Negotiable Securities) $_____
☐ CORPORATE SURETY BOND IN AMOUNT OF (Separate Form Required) $_____
☐ ADDITIONAL REQUIREMENTS: _____
☑ BAIL FIXED BY COURT ___ as ___    ☐ ALL REQUIREMENTS HAVE BEEN MET: _____
   *Deputy Clerk*                                                 *Deputy Clerk*

## PRE-CONDITIONS TO RELEASE

☐ Bail is subject to Nebbia hearing which is a hearing to inquire about the source of the collateral.
   ☐ The Nebbia hearing can be waived by the government.

## ADDITIONAL CONDITIONS OF RELEASE

In addition to the GENERAL CONDITIONS of RELEASE, as specified on other side, the following conditions of release are imposed upon you:

☑ Defendant shall submit to: [✓] Pretrial Supervision. [ ] Intensive Pretrial Supervision. *signed by govt as stated in open*
☑ Surrender all passports to the Clerk of Court, or sign a declaration no later than *passport signed by govt* and not apply *Court*
   for the issuance of a passport during the pendency of this case.
☑ Travel is restricted to: CD/CA ___ Western District of Michigan
☑ Do not enter premises of any airport, seaport, railroad, or bus terminal which permits exit from the Continental U.S. or area
   of restricted travel without Court permission.
☑ Reside as approved by PSA and do not relocate without prior permission from PSA. _____
☑ Maintain or actively seek employment and provide proof to PSA.
☐ Maintain or commence an educational program and provide proof to PSA.
☐ Avoid all contact, directly or indirectly, with any person who is or who may become a victim or potential witness in the
   subject investigation or prosecution, including but not limited to: _____
☐ Not possess any firearms, ammunition, destructive devices, or other dangerous weapons. [ ] In order to determine
   compliance, you will agree to submit to a search of your person and/or property by Pretrial Services in conjunction with the
   US Marshal.
☐ Not use/possess any identification other than in your own legal name or true name. [ ] In order to determine compliance, you
   will agree to submit to a search of your person and/or property by Pretrial Services in conjunction with the U.S. Marshal.
☐ Not use alcohol.
☐ Not use or possess illegal drugs. [ ] In order to determine compliance, you will agree to submit to a search of your person
   and/or property by Pretrial Services in conjunction with the US Marshal.
☐ Submit to drug [and/or] alcohol testing and outpatient treatment as directed by PSA. You shall pay all or part of the cost for
   testing and treatment based upon your ability to pay as determined by PSA.
☐ Participate in residential drug [and/or] alcohol treatment as deemed necessary by PSA. You shall pay all or part of the cost
   for treatment based upon your ability to pay as determined by PSA. [ ] Release to PSA only.
☐ Participate in mental health evaluation, and/or counseling and/or treatment as directed by PSA. You shall pay all or part of
   the costs based upon your ability to pay as determined by PSA.

                                                 **Defendant Initials** ___    **Date** 3/1/10

| ORIGINAL - YELLOW COPY | PINK- PRETRIAL SERVICES | WHITE - DEFENDANT COPY |
|---|---|---|

CAROLINE EPPS LOGAN

Defendant/Material Witness.

CASE NUMBER: 10-415-M

☐ Participate in one of the following home confinement program components and abide by all requirements of the program which [ ] will or [ ] will not include electronic monitoring or other location verification system. You shall pay all or part of the cost of the program based upon your ability to pay as determined by PSA.

    [ ] **Curfew.** You are restricted to your residence every day: [ ] from _____ to _____. [ ] as directed by PSA.
        [ ] **Release to PSA only.**

    [ ]  **Home Detention.** You are restricted to your residence at all times except for employment; education; religious services; medical, substance abuse, or mental health treatment; attorney visits; court-ordered obligations; or other activities as pre-approved by PSA. [ ] **Release to PSA only.**

    [ ]  **Home Incarceration.** You are restricted to your residence at all times except for medical needs or treatment; religious services; and court appearances as pre-approved by PSA. [ ] **Release to PSA only.**

☐ Not possess or have access to, either in the home, the workplace, or any other location, any device which offers Internet access, except as approved by PSA. [ ] In order to determine compliance, you will agree to submit to a search of your person and/or property by Pretrial Services in conjunction with the US Marshal.

☐ Not associate or have verbal, written, telephonic, or electronic communication with any person who is less than the age of 18 except in the presence of another adult who is the parent or legal guardian of the minor.

☐ Not loiter/be found within 100 feet of any school yard, park, playground, arcade, or other place primarily used by children under the age of 18.

☐ Not be employed by, affiliate with, own, control, or otherwise participate directly or indirectly in conducting the affairs of any daycare facility, school, or other organization dealing under the care, custody, or control of children under the age of 18.

☐ Not view or possess child pornography or child erotica. [ ] In order to determine compliance, you will agree to submit to a search of your person and/or property, including computer hardware and software, by Pretrial Services in conjunction with the US Marshal.

☐ Other conditions: _____

3-1-10
Date

Caroline R
Defendant/Material Witness' Signature

951-789-8985
Telephone Number

Riverside, CA 92508 ONLY)
City, State And Zip Code

☐ **Check if interpreter is used:** I have interpreted into the_____ language all of the above conditions of release and have been told by the defendant that he or she understands all of the conditions of release.

_____
Interpreter's signature

_____
Date

Approved: Orlam L. Wele
United States District Judge / Magistrate Judge

3/1/10
Date

If Cash Deposited: Receipt # _____ For $_____

(This bond may require surety agreements and affidavits pursuant to Local Criminal Rules 46-3.2 and 46-6)

ORIGINAL - YELLOW COPY        PINK- PRETRIAL SERVICES        WHITE - DEFENDANT COPY

GPO U.S. GOVERNMENT PRINTING OFFICE: 2005-785-040

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CASE NUMBER: |
|---|---|
| **PLAINTIFF** | 10- 00415M |
| v. | 1:08-CR 274 |
| Cardive Loga | |
| **DEFENDANT.** | **WAIVER OF RIGHTS**<br>**(OUT OF DISTRICT CASES)** |

I understand that charges are pending in the _Western_ District of _Michigan_ alleging violation of _18 USC 1962 (Moneylaun)_ and that I have been arrested in this district and
(Title and Section / Probation / Supervised Release)
taken before a United States Magistrate Judge, who has informed me of the charge(s) and my rights to:

   (1)    have an identity hearing to determine whether I am the person named in the charges;

   (2)    arrival of process;

## -Check one only-

☐   **EXCLUDING PROBATION OR SUPERVISED RELEASE CASES:**

   (3)    have a preliminary hearing (unless an indictment has been returned or an information filed) to determine whether there is probable cause to believe an offense has been committed by me, the hearing to be held in this district or the district of prosecution; and

   (4)    request transfer of the proceedings to this district under Rule 20, Fed.R.Crim.P., in order to plead guilty.

☐   **PROBATION OR SUPERVISED RELEASE CASES:**

   (3).    have a preliminary hearing (if the violation charged allegedly occurred in this district, and I am held in custody solely on that charge) under Rule 32.1(b), Fed.R.Crim.P., to determine whether there is probable cause to believe I have violated the terms of my probation/supervised release.

## I HEREBY WAIVE (GIVE UP) MY RIGHT(S) TO:

☑   have an identity hearing

☑   arrival of process

☐   have a preliminary hearing

☑   have an identity hearing, and I have been informed that I have no right to a preliminary hearing

☐   have an identity hearing, but I request that a preliminary hearing be held in the prosecuting district.

_____<br>Defendant

_____<br>Defense Counsel

Date: 3-4-10

_____<br>United States Magistrate Judge

I have translated this Waiver to the defendant in the _____ language.

Date: _____

Interpreter(if required)