UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

No. 1:08-CR-274

vs.

KELLY BURNET GARMON,
CHARLES JACKSON, SR.,
CHARLES JACKSON, JR.,
WILLIE CORNELIUS JACKSON,
SAMUEL AARON COLLINS,
  Also Known As "Duran Anthony Lloyd,"
  Also Known As "DuJuan Winston,"
  Also Known As "Steven Parker,"
  Also Known as "Lucio Garcia,"
ROBERT EDWARD WILSON,
OWASU ANANEH FIREMPONG,
REGINA Y. CAWTHORNE-SHARIFF,
JAMES DYLAN HAYES,
  Also Known As "Shawn Anthony Davis,"
MARLAN MICAH McRAE,
  Also Known As "Reece,"
EMOND DUREA LOGAN, [1]
CAROLINE EPPS LOGAN,
MARTELL D. LOGAN, and
SHARON LOGAN,

Defendants.

Hon. Joseph G. Scoville
Magistrate Judge

[Request for Oral Argument]
Request for Hearing on March 17, 2010
10:00 a.m.

## MOTION TO DISMISS INDICTMENT FOR IMPROPER VENUE; REQUEST FOR ORAL ARGUMENT

Defendants Emond Durea Logan, Caroline Epps Logan, Martell D. Logan and Sharon

Logan, by and through their attorney Leo James Terrell, move pursuant to Rule 12(b)(2) of the

Federal Rules of Criminal Procedure to dismiss with prejudice Count 3 of the indictment pending

---

[1] I made a request for a specific hearing date based on my schedule conflict of being a California attorney. I am making the same request for a hearing on the issue of bail for Emond Durea Logan on March 17, 2010 as well.

against them alleging violation of 18 U.S.C § 1956(h), 18 U.S.C. § 1956(a)(1)(A)(i), 18 U.SC. § 1956(a)(1)(B)(i), 18 U.SC. § 1956(a)(1)(B)(ii) and 18 U.SC. § 1957.

## GROUNDS FOR RELIEF

The grounds for this motion, as more fully set forth in the accompanying brief are that venue is proper in California where the alleged criminal conduct occurred and where all four defendants reside. Defendants bring this motion pursuant to their rights under Article III of the United States Constitution § 2 cl. 3, 6th Amendment of the United States Constitution and Rule Number 18 of the Federal Rules of Criminal Procedure.

Respectfully Submitted,

Date: March 9, 2010

/s/     Leo James Terrell
LEO J. TERRELL
Attorney for Defendants Emond Durea Logan, Caroline Epps Logan, Martell D. Logan and Sharon Logan
Law Offices of Leo James Terrell
8383 Wilshire Boulevard, Suite 920
Beverly Hills, CA 90211 (323) 655-6909

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

               Plaintiff,

vs.

KELLY BURNET GARMON,
CHARLES JACKSON, SR.,
CHARLES JACKSON, JR.,
WILLIE CORNELIUS JACKSON,
SAMUEL AARON COLLINS,
  Also Known As "Duran Anthony Lloyd,"
  Also Known As "DuJuan Winston,"
  Also Known As "Steven Parker,"
  Also Known as "Lucio Garcia,"
ROBERT EDWARD WILSON,
OWASU ANANEH FIREMPONG,
REGINA Y. CAWTHORNE-SHARIFF,
JAMES DYLAN HAYES,
  Also Known As "Shawn Anthony Davis,"
MARLAN MICAH McRAE,
  Also Known As "Reece,"
EMOND DUREA LOGAN,
CAROLINE EPPS LOGAN,
MARTELL D. LOGAN, and
SHARON LOGAN,

               Defendants.

No. 1:08-CR-274

Hon. Joseph G. Scoville
Magistrate Judge

[Request for Oral Argument]

## BRIEF IN SUPPORT OF MOTION TO DISMISS INDICTMENT FOR IMPROPER VENUE; REQUEST FOR ORAL ARGUMENT

Defendants, Emond Durea Logan, Caroline Epps Logan, Martell D. Logan and

Sharon Logan, by and through their attorney, Leo James Terrell Law Offices of Leo

James Terrell 8383 Wilshire Boulevard, Suite 920 Beverly Hills, CA 90211, (323) 655-

6909, hereby present the following brief in support of their motion to dismiss the money

laundering counts of this indictment on the basis of improper venue pursuant to the Sixth Amendment to the United States Constitution.

"The right to be tried in the state and district where the offense was committed is found in Article III, Section 2, and in the Sixth Amendment to the United States Constitution. These constitutional provisions are implemented by Rule 18 of the Federal Rules of Criminal Procedure." United States of America v. Estel Williams 788 F.2d 1213, 1214 (6th Cir. 1986). In addition to being vague as to the time period that the allegations in the occurred, the Second Superseding Indictment fails to specify what criminal conduct Caroline Epps Logan, Martell D. Logan and Sharon Logan engaged in within the state of Michigan. Moreover, the little facts that are offered that pertain to Caroline Epps Logan, Martell D. Logan and Sharon Logan evasively elude to conduct that could have only taken place in the State of California, the state of their residence.

Defendant Emond Durea Logan was arrested at his residence 19058 Springbrook Court, Riverside, California 92508 on or about September 11, 2009. At the time of his arrest, Defendant Emond Durea Logan surrendered to the authorities and waived his right to extradition. Defendant Emond Durea Logan did not use force or violence upon the officers who placed him into custody. Prior to his arrest on or about September 11, 2009 United States Attorneys Donald A. Davis and Brian P. Lennon issued an Indictment against Defendant Emond Durea Logan. (Attached as Exhibit 1, please find a true and correct copy of the initial indictment.) This indictment charged Emond Durea Logan with Conspiracy to Distribute and to Possess with Intent to Distribute Cocaine in violation of 21 U.S.C. §846, 21 U.S.C. §841(a)(1) and 21 U.S.C. §841 (b)(1)(A)(ii) and Money

Laundering Conspiracy in violation of 18 U.S.C § 1956(h), 18 U.S.C. § 1956(a)(1)(A)(i), 18 U.SC. § 1956(a)(1)(B)(i), 18 U.SC. § 1956(a)(1)(B)(ii) and 18 U.SC. § 1957.

The allegations in this initial Indictment involved acts that occurred in both Michigan and Riverside, California. However, all of the allegations that involve conduct that occurred in Michigan are vague as to time and location. For example, page 3 of the indictment states that Emond Durea Logan met with Alvin Keith Jackson at various locations including a truck-related business located at 3000 Williams Road in Ypsilanti, Michigan for the purpose of retrieving cocaine from Emond Durea Logan. However, no specification is given as to what day of the week these meetings took place. Furthermore there is no indication as to what month, date or year that Alvin Keith Jackson and Emond Durea Logan met to retrieve the cocaine from Emond Durea Logan. Not so much as the time of day is provided to substantiate these alleged meetings between Alvin Keith Jackson and Emond Durea Logan had for the purpose of Alvin Keith Jackson retrieving the multiple kilograms that were transported to Michigan from California by Emond Durea Logan. The one location that is provided is a truck related business located at 3000 Williams Road in Ypsilanti, Michigan. However, this location is vague as well. What type of business is this? A trucker's rest stop? Moreover no indication is provided as to how many times Emond Durea Logan and Alvin Keith Jackson met at 3000 Williams Road. Moreover no specific dates or times of the day are provided to substantiate when Emond Durea Logan and Alvin Keith Jackson met at this truck related business.

The Indictment also alleges that after Alvin Keith Jackson, Lindell Brown and others collected, arranged for the collection, counted and packaged large amounts of

United States currency derived from the sale of cocaine in Lansing and Detroit, Alvin Keith Jackson delivered the currency to Emond Durea Logan. Once again no specificity is given as to when this currency was given to Emond Durea Logan for the purposes of him couriering it back to California. The Indictment is vague as to whether Emond Durea Logan delivered cocaine and received the currency on the same trips. If that was the case there is no indication as to where Emond Durea Logan stayed while the drugs were distributed and the currency was collected, counted and packaged.

Furthermore there is no indication as to when or where Alvin Keith Jackson and Emond Durea Logan met for the purposes of delivering currency to be transported to California. No dates, times of the day, months or years are specified. No locations are identified with the exception of 3000 Williams Road, Ypsilanti, Michigan, as to where Alvin Keith Jackson and Emond Durea Logan met for the purpose of exchanging currency. Again, there is no indication as to the dates and times that Alvin Keith Jackson and Emond Durea Logan met at 3000 Ypsilanti, Michigan.

The Indictment is also vague as to how much money Emond Durea Logan derived from the sale of cocaine based on the allegation of money laundering. According to pages 3 and 4 of the initial Indictment Emond Durea Logan transported between several hundred thousand dollars to over $1,000,000. However, no specific dates are given as to when these loads were transported between Michigan and California. Not one date is provided. An allegation is also made that Emond Durea was paid in cash derived from the sale of cocaine. However, no specification is given as to how much money he was paid. This is an important fact since the indictment charges Emond Durea Logan with depositing and paying for items with money derived from the sale of cocaine. If the

4

amount of money that Emond Durea Logan was paid for transporting cocaine and currency derived from the sale of cocaine is not specified, then it can not be refuted that the funds in his accounts can be traced to a lawful source.

The Indictment makes reference to a conversation that Emond Durea Logan had with a co-conspirator about a sum of currency that was allegedly confiscated by law enforcement. However, the name of the co-conspirator is not provided. The name of the co-conspirator is vital information that is needed to test the veracity of the story that this conversation ever took place. Otherwise the sum of deposits could have been from a lawful source.

Page 5 of the indictment alleges that a further part of the money laundering conspiracy included Emond Durea Logan depositing and directing others to deposit cocaine sale derived funds into various financial institutions. However, no indication is given as to how often these deposits are made. Moreover, the indictment alleges that the money laundering conspiracy lasted from an unknown date in 2004 to September 2009. However, an unknown date in 2004 is vague as to the time that the conspiracy allegedly began. Moreover, any deposits that would have been made would have been made in Riverside, California where Defendant Emond Durea Logan resides. Furthermore the indictment states that Emond Durea Logan used the unlawfully derived funds to pay off the mortgage of his residence located at 19058 Springbrook Court, Riverside, California 92508. The indictment simply states that "unlawfully derived funds" were used to pay off the mortgage. However, the indictment is very vague as to the time, manner, and amount of alleged drug activity that occurred, which allegedly gave rise to these unlawfully derived funds. Because the funds in Emond Durea Logan's accounts could have come

from lawful source, there is no definitive connection between the funds used to pay his mortgage in California and the alleged drug activity in Michigan. Therefore, the mortgage payment would have taken place in California and affects only the state of California, the location of his residence.

The government bears the burden of proving by a preponderance of the evidence that venue was proper as to each count. United States v. Barsanti, 943 F.3d 428, 434 (4th Cir. 1991). The United States Court of Appeals for the Sixth Circuit applies a substantial contacts rule to determine proper venue. "This court determines the proper venue by a substantial contacts rule that takes into account a number of factors-the site of the defendant's acts, the elements and nature of the crime, the locus of the effect of the criminal conduct, and the suitability of each district for accurate fact finding." United States v. Beddow, 957 F.2d 1330 ( 6th Cir. 1992).

The indictment alleges that Emond Durea Logan and others at his direction made a series of large cash deposits. However, no specific dates are given for each year between 2004 and 2009 the alleged time frame of the conspiracy. Therefore, the government bears the burden of proving that venue is proper for count three of the Second Superseding Indictment, money laundering conspiracy. (Attached as Exhibit 2 please find a true and correct copy of the Second Superseding Indictment.) By applying the substantial contacts test that is applied in the sixth circuit, the government must prove that the site of the Logans' acts are connected to the Western District of Michigan, the elements and nature of the crime of the money laundering conspiracy are proper in the Western District of Michigan, the locus of the effect of Caroline Epps Logan, Sharon Logan, Martell D. Logan and Emond Logan's alleged criminal conduct would be felt the

most in the Western District of Michigan and that the Western District of Michigan is suitable for accurate fact finding.

Applying the substantial contacts test California is the more appropriate venue rather than the Western District of Michigan. Emond Durea Logan conducted all of his bank deposits and account activity in California, where he resides. Furthermore, the "others" indentified in the indictment that Emond Durea Logan allegedly directed to make deposits, reside in California. These individuals, named as defendants in the Second Superseding Indictment, are Caroline Epps Logan, Sharon Logan and Martell Logan. Any banking activity that Caroline Epps Logan, Sharon Logan and Martell Logan conducted occurred in California where these three defendants reside. Furthermore, it has not been clearly established in the indictment that the source of the funds used in the alleged banking activity came from alleged drug activity that occurred in Michigan. Therefore, it cannot be refuted that the source of the funds was lawful nor can it be refuted that the source of the funds was in California and unrelated to the State of Michigan.

On or about February 25, 2010 Assistant United States Attorney Brian Lennon filed a Motion to Dismiss the First Indictment against Emond Durea Logan. Honorable Judge Robert J. Jonker granted Assistant United States Attorney Brian Lennon's Motion to Dismiss the Indictment against Emond Durea Logan on or about February 25, 2010. On or about February 24, 2010, Assistant United States Attorney Brian Lennon filed a Second Superseding Indictment. In the Second Superseding Indictment Emond Durea Logan, Caroline Epps Logan, Martell D. Logan and Sharon Logan are named as defendants along with a series of other defendants.

Caroline Epps Logan, Sharon Logan and Martell Logan are not identified anywhere in the original Indictment issued against Emond Durea Logan. However, when United States Attorney Brian Lennon issued the Second Superseding Indictment the identical facts that were listed in the original indictment against Emond Durea Logan are re-alleged in the Second Superseding Indictment which names Caroline Epps Logan, Sharon Logan and Martell Logan. Caroline Epps Logan, Sharon Logan and Martell Logans names are merely tacked onto the same allegations that were originally made solely against Emond Durea Logan. The inclusion of Caroline Epps Logan, Sharon Logan and Martell Logan into the Second Superseding Indictment was a result of Emond Durea Logan's refusal to accept a plea agreement from the United States Attorney. (Attached as Exhibit 3, please find a true and correct copy of the plea agreement.)

Count Three of the Second Superseding Indictment names Emond Durea Logan, Caroline Epps Logan, Martell Logan and Sharon Logan exclusively as defendants. Despite the fact that there is no evidence that Caroline Epps Logan, Martell Logan and Sharon Logan have ever been to Michigan, Assistant United States Attorney alleges the identical facts of Count Two of the original Indictment against Emond Durea Logan in Count Three of the Second Superseding Indictment. No specificity is given as to what individual acts Martell Logan, Sharon Logan or Caroline Epps Logan did as a part of the money laundering conspiracy. Furthermore, there is no indication anywhere in the indictment, that Martell Logan, Sharon Logan, or Caroline Epps Logan ever interacted or even met Alvin Keith Jackson, Lindell Brown, Felicia Blake, Tamara Hughes, or any of the other Defendants included in the Second Superceding Indictment. The only connections that Martell Logan, Sharon Logan, and Caroline Epps Logan have to any

activity involving alleged unlawfully obtained funds is through Emond Durea Logan, as described in pages 14 and 15 of the indictment.

Within the same indictment specific conduct is alleged of co-defendants in Count Two of the Indictment. For example on pages 6 and 7 specific conduct is alleged of co-defendant Regina Y. Cawthorne-Shariff. According to the Second Superseding Indictment, Shariff paid for the storage bill of the motor homes that transported cocaine, she stocked provisions for the trips to Michigan and she also unloaded duffle bags. On page 7 of the Second Superseding Indictment it is alleged that she drove a co-defendant to California to deliver $80,000 to a cocaine supplier on February 17, 2008.

Here, there is no similar specificity for Martell Logan, Caroline Logan or Sharon Logan. A general allegation is stated on page 15 of the superseding indictment that Martell Logan, Caroline Epps Logan and Sharon Logan deposited funds into various financial institutions to purchase and lease motor vehicles and conduct other financial transactions. However, no dates, months or years are provided as to when such conduct occurred. Moreover, these three defendants along with Emond Durea Logan reside in the state of California thus any and all bank transactions that they made were done in the state of California. Furthermore, there is no evidence that Martell Logan or Sharon Logan purchased any motor vehicles or paid any bills with money derived from unlawful activity. There is also no specificity as to who made what bank deposit or the amount of the cashier's checks or money orders. The Indictment also fails to provide the specific dates that the deposits were made or cashier's checks or money orders were purchased between the ambiguous time frame of the conspiracy of an unknown date in 2004 and September 2009.

"Except as otherwise permitted by statute or by these rules, the prosecution shall be had in a district in which the offense was committed. The court shall fix the place of trial within the district with due regard to the convenience of the defendant and the witnesses and the prompt administration of justice." United States of America v. Estel Williams, 788 F. 2d 1213 (6th Cir. 1986). In deference to the convenience of the defendant and the witness and the prompt administration of justice, count three of the Second Superseding Indictment should be dismissed and the case brought to California. Caroline Epps Logan, Sharon Logan, Martell D. Logan and Emond Durea Logan are all California residents. In the same way that it was more convenient for Caroline Epps Logan, Sharon Logan and Martell D. Logan to appear before a judge in the Central District of California on March 1, 2010, it would be more convenient for the Logans to have their trial in California. Moreover, any witnesses of the alleged conduct in count three of the Second Superseding Indictment reside in the state of California. Finally, hearing this case in California would afford prompt administration of justice. California is the location where the alleged conduct occurred, where the defendants and witnesses reside.

In determining whether a district has substantial contacts with the criminal conduct, the court will look at the locus of the effect of the criminal conduct in that district. United States v. Beddow, 957 F.2d 1330 (6th Cir. 1992). "The locus delicti must be determined from the nature of the crime alleged and the location of the act or acts constituting it." United States v. Cabrales, 524 U.S. 1, 118 (1998). Here, as stated before, the location of any alleged acts done by Sharon Logan were done solely in California. The location of any alleged acts done by Martell D. Logan occurred solely in California.

Moreover, the location of any alleged acts done by Caroline Epps Logan were done solely in California, where she resides. Finally, the allegations that were made against Emond Durea Logan of making payments of his mortgage, purchasing vehicles or other goods were done solely in California.

Caroline Epps Logan currently resides at 19058 Springbrook Court, Riverside, California 92508. Caroline Epps Logan has a son who currently lives with her and he is a high school student. In addition to her minor son whom lives with her, Caroline Epps Logan has other ties to the state of California. The car that she drives was purchased in California and she uses it in California. Moreover Mrs. Caroline Epps Logan conducts all of her bank transactions in Riverside, California where she resides. Her purchases of clothing, jewelry and house wares were made in the state of California. Mrs. Caroline Epps Logan assisted her husband with his truck-related business that was based at their home in Riverside, California. Caroline Epps Logan's ties are with the state of California where she resides with her husband Emond Durea Logan and her son. The Second Superseding Indictment fails to allege any facts that display any connection between Caroline Epps Logan and the state of Michigan. Furthermore the Second Superseding Indictment fails to illustrate any facts that show that Caroline Epps Logan was ever in the state of Michigan.

Martell D. Logan currently resides in Los Angeles, California. Prior to being included in the Second Superseding Indictment, Martell D. Logan had no prior criminal record. Martell D. Logan lives and works in Los Angeles, California and his ties are to the state of California. The Second Superseding Indictment articulates no facts that

Martell D. Logan has ever been to the state of Michigan. Moreover, the Second Superseding Indictment does not elude to any facts that Martell D. Logan knew of any of Emond Durea Logan's activities in the state of Michigan or the state of California. Furthermore there is no evidence that Martell D. Logan knew any of the co-defendants listed in the Second Superseding Indictment other than his brother, Emond Durea Logan, wife, Sharon Logan and sister-in-law, Caroline Epps Logan.

Sharon Logan currently resides in Los Angeles, California. Prior to being included in the Second Superseding Indictment, Sharon Logan had no prior criminal record. There is no evidence that Sharon Logan was aware of any of Emond Durea Logan's activities in the state of California or state of Michigan. Sharon Logan is the wife of Martell D. Logan and is no more than an in-law relative to Caroline Epps Logan and Emond Durea Logan. The Second Superseding Indictment does not point to any facts that Sharon Logan was ever in Michigan nor that she ever engaged in any criminal conduct in the state of Michigan. Sharon Logan has no knowledge as to who Lindell Brown or Felicia Blake are. Moreover, she is and was at all times unaware of any drug trafficking conspiracy or money laundering scheme. The Second Superseding Indictment has failed to show any connection between Sharon Logan and the state of Michigan.

Defendants, Emond Durea Logan, Caroline Epps Logan, Marttell D. Logan and Sharon Logan, by and through their attorney, Leo James Terrell, would like to respectfully request that this motion be heard before this Court on March 17, 2010.

Date: March 9, 2010

Respectfully Submitted,
/s/    Leo James Terrell
LEO J. TERRELL
Attorney for Defendants  Emond Durea
Logan, Caroline Epps Logan, Sharon Logan
and Martell D. Logan

**EXHIBIT 1**

092492403 03
FILED - GR
September 2, 2009 12:53 PM
TRACEY CORDES, CLERK
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY: EG /

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

EMOND DUREA LOGAN,

        Defendant.

No. **1:09-cr-245**

**Robert J. Jonker**
**U.S. District Judge**

Hon.

**INDICTMENT**

The Grand Jury charges:

## COUNT ONE
### (Conspiracy to Distribute and to Possess with Intent to Distribute Cocaine)

Beginning in or about the end of 2003 and continuing through in or about January 2007, in the Southern Division of the Western District of Michigan, and elsewhere, the defendant,

## EMOND DUREA LOGAN,

did combine, conspire, confederate, and agree with Alvin Keith Jackson, Lindell Brown, Felicia Sabrina Blake, and other persons both known and unknown to the Grand Jury, to knowingly, intentionally and unlawfully distribute and possess with intent to distribute five kilograms or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance.

21 U.S.C. § 846
21 U.S.C. § 841(a)(1)
21 U.S.C. § 841(b)(1)(A)(ii)

13

## COUNT TWO
(Money Laundering Conspiracy)

Beginning on or about an unknown date in 2004 and continuing through in or about the date

of this Indictment, in the Southern Division of the Western District of Michigan, and elsewhere, the

defendant,

## EMOND DUREA LOGAN,

knowing that the property involved represented the proceeds of some form of unlawful activity,

as defined in Title 18, United States Code, Section 1956(c)(1), that is, the distribution of cocaine

and conspiracy to do the same, both felony offenses under Title 21, United States Code, Sections

841(a)(1) and 846, did knowingly, intentionally and unlawfully combine, conspire, confederate

and agree with Alvin Keith Jackson and others, both known and unknown to the Grand Jury, to

conduct and cause to be conducted financial transactions which involved the proceeds of said

unlawful activity, with intent to promote the carrying on of said unlawful activity, to conceal and

disguise the nature, location, source, ownership and control of the proceeds of the unlawful

activity, and to avoid transaction reporting requirements under federal law.

### Means and Methods

It was part of the unlawful conspiracy that Lindell Brown, Alvin Keith Jackson, Felicia

Sabrina Blake, and others operated a large-scale drug distribution organization which involved

the procurement of thousands of kilograms of cocaine from the State of California, and the

delivery of said cocaine to the Detroit, Michigan area, for distribution in both the Eastern and

Western Districts of Michigan, and elsewhere.

It was a further part of the unlawful conspiracy that, once or twice a month from in or

about April 2004 through in or about January 2007, EMOND DUREA LOGAN used a tractor-

trailer to transport multiple-kilogram quantities of cocaine from the State of California to the

2

Detroit, Michigan area and elsewhere, using interstate highways, including Interstate 94 in the Western and Eastern Districts of Michigan. After EMOND DUREA LOGAN arrived in the Detroit, Michigan area with the cocaine, Alvin Keith Jackson would meet with EMOND · DUREA LOGAN at various locations, including a truck-related business located at 3000 Williams Road in Ypsilanti, Michigan, for the purpose of retrieving the cocaine from EMOND DUREA LOGAN. After retrieving the cocaine from EMOND DUREA LOGAN, Alvin Keith Jackson would transport the cocaine to various locations in the Detroit, Michigan area, including a residence owned by Felicia Sabrina Blake located at 22521 Carleton Avenue, Southfield, Michigan 48033, where the cocaine was unloaded by Alvin Keith Jackson, Lindell Brown, and others, for distribution to and by various drug trafficking organizations including AHH DEE AHH, which operated in the Lansing, Michigan area from 2001 through 2006.

It was further part of the unlawful conspiracy that Alvin Keith Jackson, Lindell Brown, and others at their direction, collected or arranged for the collection, counting and packaging of large amounts of United States currency derived from the sale of the cocaine in the Lansing and metropolitan Detroit areas, and elsewhere. After the United States currency was counted, vacuum-sealed, and packaged, Alvin Keith Jackson delivered the United States currency to EMOND DUREA LOGAN at various locations in the Detroit, Michigan area, including a truck-related business located at 3000 Williams Road in Ypsilanti, Michigan. EMOND DUREA LOGAN then transported the United States currency in his tractor-trailer back to the State of California via the interstate highway system, including Interstate 94 in both the Eastern and Western Districts of Michigan. The United States currency that EMOND DUREA LOGAN transported to the State of California was used to pay for cocaine previously obtained by the drug trafficking organization and for purchasing additional cocaine in California, thus promoting the continued illicit distribution of cocaine in the State of Michigan and elsewhere. Typically, these loads of United States currency transported by EMOND DUREA LOGAN ranged from several

3

hundred thousand dollars to over $1,000,000. EMOND DUREA LOGAN was paid in cash for transporting the kilograms of cocaine to the State of Michigan and elsewhere, and transporting the United States currency derived from the sale of the cocaine, back to the State of California.

It was further part of the unlawful conspiracy that EMOND DUREA LOGAN used his portion of the drug proceeds to pay for various motor vehicles, including a tractor-trailer, the mortgage for his residence located at 19058 Springbrook Court, Riverside, California 92508, credit card bills, and other expenses. Beginning in or about April 2004, EMOND DUREA LOGAN began making large cash deposits, typically ranging from $9,000 to $9,800, into various financial institutions in an attempt to avoid the filing of currency transaction reports by financial institutions as required by law, and to conceal the true source, nature and ownership of the United States currency involved in these transactions, which was derived from the sale of cocaine in the State of Michigan and elsewhere.

It was further part of the unlawful conspiracy that on or about Memorial Day weekend (late May) in 2006, EMOND DUREA LOGAN informed at least one co-conspirator that a load of United States currency from the State of Michigan was confiscated from him by law enforcement in another state on his way back to the State of California. Shortly thereafter, EMOND DUREA LOGAN began making large cash deposits into accounts he controlled in two or more financial institutions. On twenty-one (21) days between May 30, 2006, and November 15, 2006, EMOND DUREA LOGAN made 62 large cash deposits ranging from $1,500 to $9,800 and totaling $527,200 into accounts he controlled in two financial institutions. These large cash deposits typically ranged from $9,000 to $9,800. EMOND DUREA LOGAN, and others on his behalf, structured these large cash deposits in an attempt to avoid the filing of currency transaction reports by financial institutions as required by law, and to conceal the true source, nature and ownership of this United States currency, which was derived from the sale of cocaine in the State of Michigan and elsewhere.

4

It was a further part of the unlawful conspiracy that EMOND DUREA LOGAN would utilize funds he and others at his direction deposited into these financial institutions to purchase and lease motor vehicles and to conduct other financial transactions, while concealing the true source, nature and ownership of the funds involved in these transactions, which were derived from the sale of cocaine in the State of Michigan and elsewhere.

It was further part of the unlawful conspiracy that EMOND DUREA LOGAN would utilize funds in these financial institutions to pay his mortgage held by World Savings Bank on his residence located at 19058 Springbrook Court, Riverside, California 92508, and that in or about August 2006 he used $177,000 of these funds derived from the sale of cocaine in the State of Michigan and elsewhere to pay off this mortgage.

It was a further part of the unlawful conspiracy that various conspirators including EMOND DUREA LOGAN would take large amounts of cash derived from the organization's sale of cocaine and: (1) deposit the cash into various bank accounts or direct others to make the deposits; and (2) purchase cashier's checks and money orders or direct others to make such purchases. These funds would then be used to purchase assets and pay personal expenses with the goal of concealing the true source, nature and ownership of the funds.

It was a further part of the unlawful conspiracy that during the course of the conspiracy EMOND DUREA LOGAN purchased the following vehicles, in whole or in part, with proceeds from the sale of cocaine in the State of Michigan and elsewhere:

> A 2008 Ford Mustang with Vehicle Identification Number
> 1ZVHT82H285157391;
>
> A 2007 Maserati Quattroporte with Vehicle Identification Number
> ZAMCE39A670027835;
>
> A 2004 Porsche Cayenne with Vehicle Identification Number
> WP1AB29P04LA66271;
>
> A 2010 Ford Mustang with Vehicle Identification Number
> 1ZVBP8CH9A5116707;

A 2007 Volvo semi tractor-trailer with Vehicle Identification
Number 4V4NC9TJ17N457049;

A 2007 Lexus RX350 with Vehicle Identification Number
2T2GK31U77C005333; and

A 2006 Chrysler 300 with Vehicle Identification Number
2C3KA53G66H192383.


18 U.S.C. § 1956(h)
18 U.S.C. § 1956(a)(1)(A)(i).
18 U.S.C. § 1956(a)(1)(B)(i)
18 U.S.C. § 1956(a)(1)(B)(ii)
18 U.S.C. § 1957

(Forfeiture Allegation)

The Grand Jury realleges the conspiracy charges in this Indictment as though fully set forth herein. Upon conviction of the controlled substance and/or money laundering offense charged in this Indictment, the defendant,

## EMOND DUREA LOGAN,

shall forfeit to the United States, pursuant to 21 U.S.C. § 853(a), 18 U.S.C. § 982, and 28 U.S.C. § 2461(c), (1) any and all property constituting or derived from proceeds obtained, directly or indirectly, as a result of the violation of the Controlled Substances Act in Count One of this Indictment, and any and all property used or intended to be used, in any manner or part, to commit or to facilitate the commission of the violation set forth in Count One; and (2) any property, real or personal, involved in the violation of the money laundering offense set forth in Count Two of this Indictment, and any property traceable to such property, including but not limited to the following:

1. ACCOUNTS

   a. Any and all funds in Wells Fargo Bank Checking Account ending in the numbers XXXXX2635, in the name of EMOND D. LOGAN dba Executive Transporting;

   b. Any and all funds in Wells Fargo Checking Account ending in the numbers XXXXXX5039, in the names of EMOND D. LOGAN and Caroline Epps;

   c. Any and all funds in Wells Fargo Savings Account ending in the numbers XXXXXX9432, in the name of Caroline Epps; and

   d. Any and all funds in Wells Fargo Savings Account ending in the numbers XXX-XXX3464, in the name of EMOND D. LOGAN dba Executive Transporting;

e. Any and all funds in Wescom Credit Union, combined checking and money market Account ending in the number XX5664, in the name of EMOND LOGAN.

2. VEHICLES

a. A 2007 Maserati Quattroporte with Vehicle Identification Number ZAMCE39A670027835;

b. A 2010 Ford Mustang with Vehicle Identification Number 1ZVBP8CH9A5116707;

c. A 2007 Volvo semi tractor trailer with Vehicle Identification Number 4V4NC9TJ17N457049;

d. A 2007 Lexus RX350 with Vehicle Identification Number 2T2GK31U77C005333; and

e. A 2006 Chrysler 300 with Vehicle Identification Number 2C3KA53G66H192383.

3. REAL PROPERTY

19058 Springbrook Court, Riverside California, 92508-6283, more fully described as: The land situated in the State of CA, County of Riverside, City of Riverside, and described as follows: Lot 45 of Tract No. 28628, as shown by map on file in Book 285 Pages 34 through 38 inclusive of Maps, records of Riverside County, California.

4. SUBSTITUTE ASSETS

If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the Court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty;

It is the intent of the United States, pursuant to 21 U.S.C. § 853(p), to seek forfeiture of any other property of said defendant up to the value of the forfeitable property described above.

5.     MONEY JUDGMENT

By virtue of the commission of the controlled substance offense contained in Count One of this Indictment, the defendant, EMOND DUREA LOGAN, shall forfeit to the United States the sum of $36,000,000, which sum represents the aggregate of monies received in exchange for his involvement in the sale and distribution of cocaine, and constitutes proceeds derived from the sale and distribution of cocaine or which are traceable thereto.

21 U.S.C. §§ 853(a)(1), (a)(2) and (p)
21 U.S.C. § 846
21 U.S.C. § 841(a)(1)
18 U.S.C. § 982(a)(1) and (b)(1)
18 U.S.C. § 1956(h)
18 U.S.C. § 1957
28 U.S.C. § 2461(c)

A TRUE BILL

GRAND JURY FOREPERSON

DONALD A. DAVIS
United States Attorney

BRIAN P. LENNON
Assistant United States Attorney
P.O. Box 208
Grand Rapids, Michigan 49501-0208
(616) 456-2404

9

**EXHIBIT 2**

**FILED - GR**

February 24, 2010 3:27 PM

TRACEY CORDES, CLERK
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY: EC /

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

vs.

No. 1:08-CR-274

Hon. Paul L. Maloney
Chief United States District Judge

KELLY BURNETT GARMON,
CHARLES JACKSON, SR.,
CHARLES JACKSON, JR.,
WILLIE CORNELIUS JACKSON,
SAMUEL AARON COLLINS,
  Also Known As "Duran Anthony Lloyd,"
  Also Known As "DuJuan Winston,"
  Also Known As "DuJuan Bell,"
  Also Known As "Steven Parker,"
  Also Known As "Lucio Garcia,"
ROBERT EDWARD WILSON,
OWUSU ANANEH FIREMPONG,
REGINA Y. CAWTHORNE-SHARIFF,
JAMES DYLAN HAYES,
  Also Known As "Shawn Anthony Davis,"
MARLAN MICAH McRAE,
ALVIN MAURICE ANDERSON,
  Also Known As "Reece,"
EMOND DUREA LOGAN,
CAROLINE EPPS LOGAN,
MARTELL D. LOGAN, and
SHARON LOGAN,

**SECOND SUPERSEDING INDICTMENT**

Defendants.

_____/

The Grand Jury charges:

## COUNT ONE
**(Conspiracy to Distribute and to Possess with Intent to Distribute Cocaine)**

Beginning on or about an unknown date in the mid-1990s and continuing through on or about

an unknown date in 2009, in the Southern Division of the Western District of Michigan, and

elsewhere, the defendants,

**KELLY BURNETT GARMON,**
**CHARLES JACKSON, SR.,**
**CHARLES JACKSON, JR.,**
**WILLIE CORNELIUS JACKSON,**
**SAMUEL AARON COLLINS,**
**Also Known As "Duran Anthony Lloyd,"**
**Also Known As "DuJuan Winston,"**
**Also Known As "DuJuan Bell,"**
**Also Known As "Steven Parker,"**
**Also Known As "Lucio Garcia,"**
**ROBERT EDWARD WILSON,**
**OWUSU ANANEH FIREMPONG,**
**REGINA Y. CAWTHORNE-SHARIFF,**
**JAMES DYLAN HAYES,**
**Also Known As "Shawn Anthony Davis,"**
**MARLAN MICAH McRAE,**
**ALVIN MAURICE ANDERSON,**
**Also Known As "Reece,"**
**EMOND DUREA LOGAN, and**
**CAROLINE EPPS LOGAN,**

did combine, conspire, confederate, and agree together, and with Alvin Keith Jackson, Donnie

Charles, Lindell Brown, Felicia Blake, Tamara Hughes, Kevin Emerson (a/k/a "Kenneth

Coleman"), and other persons both known and unknown to the Grand Jury, to knowingly,

intentionally and unlawfully distribute and possess with intent to distribute five kilograms or

more of a mixture or substance containing a detectable amount of cocaine, a Schedule II

controlled substance.

21 U.S.C. § 846
21 U.S.C. § 841(a)(1)
21 U.S.C. § 841(b)(1)(A)(ii)

2

## COUNT TWO
### (Money Laundering Conspiracy)

Beginning on or about an unknown date in the mid-1990s and continuing through on or about

December 2, 2009, in the Southern Division of the Western District of Michigan, and elsewhere, the

defendants,

**CHARLES JACKSON SR.,**
**CHARLES JACKSON JR.,**
**WILLIE CORNELIUS JACKSON,**
**SAMUEL AARON COLLINS,**
**Also Known As "Duran Anthony Lloyd,"**
**Also Known As "DuJuan Winston,"**
**Also Known As "DuJuan Bell,"**
**Also Known As "Steven Parker,"**
**Also Known As "Lucio Garcia,"**
**ROBERT EDWARD WILSON,**
**OWUSU ANANEH FIREMPONG,**
**REGINA Y. CAWTHORNE-SHARIFF,**
**JAMES DYLAN HAYES,**
**Also Known As "Shawn Anthony Davis,"**
**MARLAN MICAH McRAE, and**
**ALVIN MAURICE ANDERSON,**
**Also Known As "Reece,"**

knowing that the property involved represented the proceeds of some form of unlawful activity,

as defined in Title 18, United States Code, Section 1956(c)(1), that is, the distribution of cocaine

and conspiracy to do the same, both felony offenses under Title 21, United States Code, Sections

841(a)(1) and 846, did knowingly, intentionally and unlawfully combine, conspire, confederate

and agree together, and with Lindell Brown, Donnie Charles, Felicia Blake, Tamara Hughes,

Kevin Emerson (a/k/a "Kenneth Coleman"), and other persons both known and unknown to the

Grand Jury, to conduct and cause to be conducted financial transactions which involved the

proceeds of said unlawful activity, with intent to promote the carrying on of said unlawful

activity, to conceal and disguise the nature, location, source, ownership and control of the

3

proceeds of the unlawful activity, and to avoid transaction reporting requirements under federal

law.

### Means and Methods

During the course of this unlawful conspiracy, CHARLES JACKSON, SR., CHARLES

JACKSON, JR., SAMUEL AARON COLLINS, Donnie Charles, Lindell Brown, and others

procured thousands of kilograms of cocaine from the State of California that was delivered to and

distributed in the Detroit, Michigan area, and elsewhere, for further redistribution in both the

Eastern and Western Districts of Michigan, and elsewhere.

It was a further part of the unlawful conspiracy that at regular intervals, at least once or

twice a month, CHARLES JACKSON, SR., SAMUEL AARON COLLINS, and Donnie Charles

directed Kevin Emerson (a/k/a "Kenneth Coleman") to transport multiple-kilogram loads of

cocaine from the State of California to the Detroit, Michigan area and elsewhere, using the

United States interstate highways, including Interstate 94 in the Western and Eastern Districts of

Michigan. After Kevin Emerson (a/k/a "Kenneth Coleman") arrived in the Detroit, Michigan

area with the cocaine from California, he would meet with JAMES DYLAN HAYES, Lindell

Brown, Felicia Blake, Tamara Hughes and others at various locations in the Detroit, Michigan

area. At times during the course of the conspiracy, Kevin Emerson (a/k/a "Kenneth Coleman")

delivered loads of cocaine to JAMES DYLAN HAYES at 37530 Jefferson Ave., Apt. #104,

Harrison Township, Michigan ("the Harrison Township Condo"), the title for which was placed

in the name of "Kenneth Coleman" (Kevin Emerson's alias) but the true owners of which were

CHARLES JACKSON, SR. and JAMES DYLAN HAYES.

4

It was further part of the unlawful conspiracy that JAMES DYLAN HAYES redistributed the cocaine he received from Kevin Emerson (a/k/a "Kenneth Coleman") to MARLAN MICAH McRAE, ALVIN MAURICE ANDERSON and others. After JAMES DYLAN HAYES, Lindell Brown, Felicia Blake, Tamara Hughes and others further distributed the cocaine, they collected the drug proceeds in the form of United States currency.

It was further part of the unlawful conspiracy that JAMES DYLAN HAYES, Lindell Brown, Felicia Blake, Tamara Hughes and others retained their profits from the sale of cocaine, but returned the bulk of the drug proceeds to Kevin Emerson (a/k/a "Kenneth Coleman"), who transported the drug proceeds, in the form of United States currency, back to CHARLES JACKSON, SR., SAMUEL AARON COLLINS, Donnie Charles and others in the State of California. This United States currency that Kevin Emerson (a/k/a "Kenneth Coleman") transported to the State of California was used to pay for the cocaine previously obtained by the drug trafficking organization and for purchasing additional cocaine in the State of California, thus promoting the continued illicit distribution of cocaine in the State of Michigan and elsewhere. Typically the value of these loads of United States currency transported by Kevin Emerson (a/k/a "Kenneth Coleman") ranged from several hundred thousand dollars to over $1,000,000. Kevin Emerson (a/k/a "Kenneth Coleman") was paid in cash for transporting the kilograms of cocaine and United States currency derived from the sale of the cocaine between the States of California and Michigan.

It was further part of the conspiracy that CHARLES JACKSON, SR., SAMUEL AARON COLLINS, JAMES DYLAN HAYES, OWUSU ANANEH FIREMPONG, Donnie Charles and others purchased and provided Kevin Emerson (a/k/a "Kenneth Coleman") with various motor

vehicles, including minivans and motor homes, so that Kevin Emerson (a/k/a "Kenneth Coleman") could transport the multiple-kilogram loads of cocaine to the State of Michigan and elsewhere, and transport the drug proceeds back to the State of California. Some of these vehicles that Kevin Emerson (a/k/a "Kenneth Coleman") used to transport the cocaine and U.S. currency included:

- a 1995 Toyota Previa Minivan with VIN JT3AC14R0S1171553;
- a 1997 Toyota Previa Minivan with VIN JT3GK13M7V1247468;
- a 1998 Toyota Camry sedan with VIN JT2SV22W6J0209275;
- a 2000 Windstar Minivan with VIN 2FMZA5041YBC47571;
- a 1997 American Dream Motor Home with VIN 4V2BN1098VC023724;
- a 2000 Pace Arrow Motor Home with VIN 1FCNF53S5Y0A0224; and
- a 2003 Revolution Motor Home built on a Freightliner Chassis with VIN 4UZAAHBS83CM0384.

At times while Kevin Emerson (a/k/a "Kenneth Coleman") remained in the Detroit, Michigan area waiting for the cocaine to be sold and the drug proceeds collected, JAMES DYLAN HAYES provided him access to 37530 Jefferson Ave., Apt. #104, Harrison Township, Michigan ("the Harrison Township Condo") and with a 1991 Oldsmobile Calais with VIN 1G3NL54UXMM059322, so that Kevin Emerson (a/k/a "Kenneth Coleman") had lodging and transportation in the Detroit area while the cocaine was sold and the transport vehicle loaded with drug proceeds for the return trip to the State of California.

It was further part of the unlawful conspiracy that REGINA Y. CAWTHORNE-SHARIFF paid the storage bill for at least one of the motor homes used to transport the cocaine and drug proceeds between the States of Michigan and California. At various times during the

6

course of the unlawful conspiracy, REGINA Y. CAWTHORNE-SHARIFF stocked the motor

home with provisions for the trips to the State of Michigan and elsewhere with the cocaine, and

she helped unload the duffle bags containing drug proceeds from the motor homes upon their

return to the State of California. Moreover, on or about February 17, 2008, REGINA Y.

CAWTHORNE-SHARIFF drove Donnie Charles to a location in Carson, California, where

Donnie Charles delivered approximately $80,000.00 in United States currency to his cocaine

supplier.

It was further part of the unlawful conspiracy that CHARLES JACKSON, SR.,

CHARLES JACKSON, JR., SAMUEL AARON COLLINS and others used the United States

Postal Service to send kilograms of cocaine from the State of California to various addresses in

the Detroit, Michigan area, including a residence located at 12711 Wade Street, Detroit,

Michigan, a residence owned by JAMES DYLAN HAYES. It was further part of the conspiracy

that CHARLES JACKSON, SR. and SAMUEL COLLINS instructed others to use the United

States Postal Service to send the drug proceeds back to them in the State of California, where the

packages containing United States currency were sent to homes and businesses of others, in order

to avoid detection by law enforcement.

It was further part of the unlawful conspiracy that CHARLES JACKSON, SR.,

CHARLES JACKSON, JR., WILLIE CORNELIUS JACKSON, OWUSU ANANEH

FIREMPONG, JAMES DYLAN HAYES, MARLAN MICAH McRAE,

ALVIN MAURICE ANDERSON, Donnie Charles and others used a portion of their drug

proceeds to purchase real estate, businesses, motor vehicles, and other items of personal property.

For example, during the course of the conspiracy, CHARLES JACKSON, SR., CHARLES

7

JACKSON, JR., WILLIE CORNELIUS JACKSON, and Donnie Charles purchased, constructed, maintained, remodeled, refinanced, and made mortgage payments on the following properties, in whole or in part, with drug proceeds obtained from the unlawful sale of cocaine in the State of Michigan and elsewhere:

- 4588 Don Milagro, Los Angeles, California;
- 4230 Don Jose, Los Angeles, California;
- 1943 West 74th Street, Los Angeles, California;
- 3745 Lorado Way, Los Angeles, California;
- 4607 3rd Avenue, Los Angeles, California;
- 2800 6th Avenue (also referred to as 2800 54th Street), Los Angeles, California;
- 1061 West 111th Street, Los Angeles, California;
- 1063 West 111th Street, Los Angeles, California;
- 1603 West 209th Street, Torrance, California, to include 20821-20823 Harvard, Torrance, California, which are buildings now located on the property;
- 715 West Rosecrans, Compton, California;
- 4900 South Van Ness Avenue, Los Angeles, California;
- 5411 6th Avenue, Los Angeles, California;
- 5419 6th Avenue, Los Angeles, California;
- 5912 West Blvd., Los Angeles, California;
- 7620 S. Western, Los Angeles, California;
- 10232 Victoria, Riverside, California;

- 11915 Willowbrook, Los Angeles, California;

- 12201 South Vermont, Los Angeles, California, to include 1002-1004 West 112nd Street, which are buildings now located on the property;

- 19441 Radlett, Carson, California;

- 11846-50 S. Normandie, Los Angeles, California;

- 8936 Haas Avenue, Los Angeles, California;

- 19506 Fariman, Carson, California; and

- 10318 St. Andrews Place, Los Angeles, California.

CHARLES JACKSON, SR., CHARLES JACKSON, JR., WILLIE CORNELIUS JACKSON, and Donnie Charles purchased these properties, and later transferred ownership of several of these properties between themselves, to other co-conspirators, to nominees, and to corporations they control, in order to conceal the true source, nature, and ownership of the funds involved in the real estate transactions, as these funds were derived, in whole or in part, from the sale of cocaine in the State of Michigan and elsewhere.

Similarly, it was further part of the conspiracy that JAMES DYLAN HAYES and MARLAN MICAH McRAE purchased, refinanced, and made mortgage payments on the following properties, in whole or in part, with drug proceeds obtained from the unlawful sale of cocaine in the State of Michigan:

- 37530 Jefferson Ave., Apt. #104, Harrison Township, Michigan ("the Harrison Township Condo");

- 48714 Tanglewood Dr., Macomb, Michigan;

- 21973 International Lane, Macomb, Michigan; and

- 5480 Seneca Street, Detroit Michigan.

JAMES DYLAN HAYES and MARLAN MICAH McRAE purchased these properties using documents provided to financial institutions which falsely portrayed the source of the funds used to purchase the properties in order to conceal the true source, nature, and ownership of the funds involved in the real estate transactions, as these funds were derived, in whole or in part, from the sale of cocaine in the State of Michigan and elsewhere.

It was further part of the conspiracy that ROBERT EDWARD WILSON and others provided fraudulent documents, including fake W-2 tax forms and employment documents, to other co-conspirators and to financial institutions for the purchase and transfer of some of these properties in both the States of California and Michigan, including fraudulent documents used for the purchase of 37530 Jefferson Ave., Apt. #104, Harrison Township, Michigan ("the Harrison Township Condo") by "Kenneth Coleman" (alias for Kevin Emerson) in May of 2001.

It was further part of the conspiracy that JAMES DYLAN HAYES used proceeds from the sale of cocaine to purchase commercial real estate and operate business entities including Executive Auto Sales, Inc., a used car business located at 10333 and 10351 Gratiot Avenue, Detroit, MI. JAMES DYLAN HAYES used these businesses and others to conceal the true source, nature, and ownership of the funds involved in the purchase and operation of these businesses, as these funds were derived, in whole or in part, from the sale of cocaine in the State of Michigan and elsewhere.

It was further part of the unlawful conspiracy that the defendants used accounts at banks and other financial institutions to conceal the true source, nature and ownership of the United States currency they acquired from the sale of cocaine in the State of Michigan and elsewhere. For example, between January 14, 2003 and March 16, 2009, JAMES DYLAN HAYES made

144 large cash deposits totaling more than $961,000 into a JP Morgan Chase Bank account

ending in number "4693," which he controlled. Similarly, between January 1, 2003 and January

27, 2009, JAMES DYLAN HAYES made 73 individual cash deposits totaling $226,391 into a

JP Morgan Chase Bank account ending in number "8235," which he controlled. All of these

cash deposits into both accounts were under $10,000 with the maximum cash deposit being

$9,900. Several transactions involving the JP Morgan Chase Bank account ending in number

"4693" show cash deposits of just under $10,000 with money orders being purchased and

deposited on the same day, all in an attempt to avoid the filing of currency transaction reports by

financial institutions as required by law, and to conceal the true source, nature and ownership of

the United States currency involved in these transactions, which was derived from the sale of

cocaine in the State of Michigan and elsewhere.

It was further part of the unlawful conspiracy that JAMES DYLAN HAYES, ALVIN

MAURICE ANDERSON and others submitted false and fraudulent loan applications for the

purchase of automobiles and other items of personal property, in order to conceal the true source,

nature and ownership of the United States currency involved in these transactions, which was

derived from the sale of cocaine in the State of Michigan and elsewhere.

It was further part of the unlawful conspiracy that the defendants either failed to file

federal tax returns and/or filed fraudulent or misleading federal tax returns for the tax years 2002

through 2008, in order to hide and conceal their illegal proceeds from the sale of cocaine in the

State of Michigan and elsewhere.

18 U.S.C. § 1956(h)
18 U.S.C. § 1956(a)(1)(A)(i)
18 U.S.C. § 1956(a)(1)(B)(i)
18 U.S.C. § 1956(a)(1)(B)(ii)
18 U.S.C. § 1957

## COUNT THREE
### (Money Laundering Conspiracy)

Beginning on or about an unknown date in 2004 and continuing through in or about September 2009, in the Southern Division of the Western District of Michigan, and elsewhere, the defendants,

### EMOND DUREA LOGAN,
### CAROLINE EPPS LOGAN,
### MARTELL D. LOGAN and
### SHARON LOGAN

knowing that the property involved represented the proceeds of some form of unlawful activity, as defined in Title 18, United States Code, Section 1956(c)(1), that is, the distribution of cocaine and conspiracy to do the same, both felony offenses under Title 21, United States Code, Sections 841(a)(1) and 846, did knowingly, intentionally and unlawfully combine, conspire, confederate and agree together, and with Alvin Keith Jackson, Lindell Brown, Felicia Blake, Tamara Hughes and others, both known and unknown to the Grand Jury, to conduct and cause to be conducted financial transactions which involved the proceeds of said unlawful activity, with intent to promote the carrying on of said unlawful activity, to conceal and disguise the nature, location, source, ownership and control of the proceeds of the unlawful activity, and to avoid transaction reporting requirements under federal law.

### Means and Methods

It was part of the unlawful conspiracy that Lindell Brown, Alvin Keith Jackson, Felicia Blake, Tamara Hughes and others operated a large-scale drug distribution organization which involved the procurement of thousands of kilograms of cocaine from the State of California, and the delivery of said cocaine to the Detroit, Michigan area, for distribution in both the Eastern and Western Districts of Michigan, and elsewhere.

It was a further part of the unlawful conspiracy that, once or twice a month from in or about April 2004 through in or about January 2007, EMOND DUREA LOGAN used a tractor-trailer to transport multiple-kilogram quantities of cocaine from the State of California to the Detroit, Michigan area and elsewhere, using interstate highways, including Interstate 94 in the Western and Eastern Districts of Michigan. After EMOND DUREA LOGAN arrived in the Detroit, Michigan area with the cocaine, Alvin Keith Jackson would meet with EMOND DUREA LOGAN at various locations, including a truck-related business located at 3000 Williams Road in Ypsilanti, Michigan, for the purpose of retrieving the cocaine from EMOND DUREA LOGAN. After retrieving the cocaine from EMOND DUREA LOGAN, Alvin Keith Jackson would transport the cocaine to various locations in the Detroit, Michigan area, including a residence owned by Felicia Sabrina Blake located at 22521 Carleton Avenue, Southfield, Michigan 48033, where the cocaine was unloaded by Alvin Keith Jackson, Lindell Brown, and others, for distribution to and by various drug trafficking organizations, including AHH DEE AHH, which operated in the Lansing, Michigan area from 2001 through 2006.

It was further part of the unlawful conspiracy that Alvin Keith Jackson, Lindell Brown, and others at their direction, collected or arranged for the collection, counting and packaging of large amounts of United States currency derived from the sale of the cocaine in the Lansing and metropolitan Detroit areas, and elsewhere. After the United States currency was counted, vacuum-sealed, and packaged, Alvin Keith Jackson delivered the United States currency to EMOND DUREA LOGAN at various locations in the Detroit, Michigan area, including a truck-related business located at 3000 Williams Road in Ypsilanti, Michigan. EMOND DUREA LOGAN then transported the United States currency in his tractor-trailer back to the State of California via the interstate highway system, including Interstate 94 in both the Eastern and Western Districts of Michigan. The United States currency that EMOND DUREA LOGAN transported to the State of California was used to pay for cocaine previously obtained by the drug

13

trafficking organization and for purchasing additional cocaine in California, thus promoting the

continued illicit distribution of cocaine in the State of Michigan and elsewhere. Typically, these

loads of United States currency transported by EMOND DUREA LOGAN ranged from several

hundred thousand dollars to over $1,000,000. EMOND DUREA LOGAN was paid in cash

derived from the sale of the cocaine.

It was further part of the unlawful conspiracy that EMOND DUREA LOGAN and his

wife, CAROLINE EPPS LOGAN, used EMOND DUREA LOGAN's portion of the drug

proceeds to pay for and maintain various motor vehicles, including a tractor-trailer, pay the

mortgage for their residence located at 19058 Springbrook Court, Riverside, California 92508,

credit card bills, and other expenses. Beginning in or about April 2004, EMOND DUREA

LOGAN began making large cash deposits, typically ranging from $9,000 to $9,800, into various

financial institutions in an attempt to avoid the filing of currency transaction reports by financial

institutions as required by law, and to conceal the true source, nature and ownership of the

United States currency involved in these transactions, which was derived from the sale of cocaine

in the State of Michigan and elsewhere.

It was further part of the unlawful conspiracy that on or about Memorial Day weekend

(late May) in 2006, EMOND DUREA LOGAN informed at least one co-conspirator that a load

of United States currency from the State of Michigan was confiscated from him by law

enforcement in another state on his way back to the State of California. Shortly thereafter,

EMOND DUREA LOGAN began making large cash deposits into accounts he and CAROLINE

EPPS LOGAN controlled in two or more financial institutions. On twenty-one (21) days

between May 30, 2006, and November 15, 2006, EMOND DUREA LOGAN made 62 large cash

deposits ranging from $1,500 to $9,800 and totaling $527,200 into accounts he controlled in two

financial institutions. These large cash deposits typically ranged from $9,000 to $9,800.

EMOND DUREA LOGAN, and others on his behalf, structured these large cash deposits in an

14

attempt to avoid the filing of currency transaction reports by financial institutions as required by law, and to conceal the true source, nature and ownership of this United States currency, which was derived from the sale of cocaine in the State of Michigan and elsewhere.

It was a further part of the unlawful conspiracy that EMOND DUREA LOGAN, and others at his direction, including CAROLINE EPPS LOGAN, MARTELL D. LOGAN, and SHARON LOGAN, deposited funds into various financial institutions to purchase and lease motor vehicles and to conduct other financial transactions, while concealing the true source, nature and ownership of the funds involved in these transactions, which were derived from the sale of cocaine in the State of Michigan and elsewhere.

It was further part of the unlawful conspiracy that EMOND DUREA LOGAN and CAROLINE EPPS LOGAN would utilize funds in these financial institutions to pay their mortgage held by World Savings Bank on their residence located at 19058 Springbrook Court, Riverside, California 92508, and that in or about August 2006 EMOND DUREA LOGAN and CAROLINE EPPS LOGAN used $177,000 of these funds derived from the sale of cocaine in the State of Michigan and elsewhere to pay off this mortgage.

It was a further part of the unlawful conspiracy that EMOND DUREA LOGAN, CAROLINE EPPS LOGAN, MARTELL LOGAN, and SHARON LOGAN would take large amounts of cash derived from the organization's sale of cocaine and: (1) deposit the cash into various bank accounts or direct others to make the deposits; and (2) purchase cashier's checks and money orders or direct others to make such purchases. These funds would then be used to purchase assets and pay personal expenses with the goal of concealing the true source, nature and ownership of the funds.

It was a further part of the unlawful conspiracy that during the course of the conspiracy EMOND DUREA LOGAN and/or CAROLINE EPPS LOGAN purchased the following

15

vehicles, in whole or in part, with proceeds from the sale of cocaine in the State of Michigan and elsewhere:

A 2008 Ford Mustang with Vehicle Identification Number 1ZVHT82H285157391;

A 2007 Maserati Quattroporte with Vehicle Identification Number ZAMCE39A670027835;

A 2004 Porsche Cayenne with Vehicle Identification Number WP1AB29P04LA66271;

A 2010 Ford Mustang with Vehicle Identification Number 1ZVBP8CH9A5116707;

A 2007 Volvo semi tractor-trailer with Vehicle Identification Number 4V4NC9TJ17N457049;

A 2007 Lexus RX350 with Vehicle Identification Number 2T2GK31U77C005333;

A 2006 Chrysler 300 with Vehicle Identification Number 2C3KA53G66H192383;

A 2007 Mercedes Benz SL 500R with Vehicle Identification Number WDBSK71FO7F128632;

A Ziema Trailer with Vehicle Identification Number 1ZCS14011W304061; and

A 2009 Great Dane Trailer with Vehicle Identification Number 1GRAA06209T548382.

18 U.S.C. § 1956(h)
18 U.S.C. § 1956(a)(1)(A)(i)
18 U.S.C. § 1956(a)(1)(B)(i)
18 U.S.C. § 1956(a)(1)(B)(ii)
18 U.S.C. § 1957

16

(Forfeiture Allegation)

The Grand Jury realleges the conspiracy charges in this Second Superseding Indictment

as though fully set forth herein.  Upon conviction of the controlled substance and/or money

laundering offense charged in this Second Superseding Indictment, the defendants,

KELLY BURNETT GARMON,

CHARLES JACKSON, SR.,

CHARLES JACKSON, JR.,

WILLIE CORNELIUS JACKSON,

SAMUEL AARON COLLINS,

Also Known As "Duran Anthony Lloyd,"

Also Known As "DuJuan Winston,"

Also Known As "DuJuan Bell,"

Also Known As "Steven Parker,"

Also Known As "Lucio Garcia,"

ROBERT EDWARD WILSON,

OWUSU ANANEH FIREMPONG,

REGINA Y. CAWTHORNE-SHARIFF,

JAMES DYLAN HAYES

Also Known As "Shawn Anthony Davis,"

MARLAN MICAH McRAE,

ALVIN MAURICE ANDERSON,

Also Known As "Reece,"

EMOND DUREA LOGAN,

CAROLINE EPPS LOGAN,

MARTELL D. LOGAN, and

SHARON LOGAN,

shall forfeit to the United States, pursuant to 21 U.S.C. § 853(a), any and all property constituting

or derived from proceeds obtained, directly or indirectly, as a result of the violation of the

Controlled Substances Act in Count One of this Second Superseding Indictment, and any and all

property used or intended to be used, in any manner or part, to commit or to facilitate the

commission of the violation set forth in Count One; and shall forfeit, pursuant to 18 U.S.C. §

982(a)(1), any property, real or personal, involved in the violation of the money laundering

17

offenses set forth in Counts Two and Three of this Second Superseding Indictment, and any

property traceable to such property, including but not limited to the following:

1.    <u>ACCOUNTS</u>

    a.    Any and all funds in JP Morgan Chase Bank account ending in the numbers XXXX4693, in the name of Executive Auto Sales, Inc./"JAMES HAYES" (**"Account #1"**);

    b.    Any and all funds in JP Morgan Chase Bank account ending in the numbers XXXX8235, in the name of "JAMES HAYES" (**"Account #2"**)

    c.    Any and all funds in JP Morgan Chase Bank account ending in the numbers XXXX5591, in the names of WILLIE CORNELIUS JACKSON, Lois Jackson or Charles Jackson (**"Account #3"**);

    d.    Any and all funds in JP Morgan Chase Bank account ending in the numbers XXXX6780, in the name of WILLIE CORNELIUS JACKSON (**"Account #4"**);

    e.    Any and all funds in JP Morgan Chase Bank account ending in the numbers XXXX8540 in the name of WILLIE CORNELIUS JACKSON (**"Account #5"**);

    f.    Any and all funds in JP Morgan Chase Bank account ending in the numbers XXXX9811, in the name of Casa Don Jose, Inc. (**"Account #6"**);

    g.    Any and all funds in JP Morgan Chase Bank account ending in the numbers XXXX8706, in the name of Casa Don Milagro, Inc. (**"Account #7"**);

    h.    Any and all funds in JP Morgan Chase Bank account ending in the numbers XXXX6150, in the name of WILLIE CORNELIUS JACKSON (**"Account #8"**);

    i.    Any and all funds in JP Morgan Chase Bank account ending in the numbers XXXX9803, in the name of Rosetta 111th and Rosecrans Corp. (**"Account #9"**);

    j.    Any and all funds in JP Morgan Chase Bank account ending in the numbers XXXX9837, in the name of Rosetta 3rd and Van Ness Corp. (**"Account #10"**);

    k.    Any and all funds in JP Morgan Chase Bank account ending in the numbers XXXX9613, in the name of Rosetta 209th and Western Corp. (**"Account #11"**);

    l.    Any and all funds in JP Morgan Chase Bank account ending in the numbers XXXX9639, in the name of Rosetta 54th and 6th Avenue Corp. (**"Account #12"**);

m.    Any and all funds in JP Morgan Chase Bank account ending in the numbers XXXX9829, in the name of Rosetta West Blvd. and Vermont Corp. (**"Account #13"**);

n.    Any and all funds in JP Morgan Chase Bank account ending in the numbers XXXX9621, in the name of Rosetta Willowbrook Plus Corp. (**"Account #14"**);

o.    Any and all funds in JP Morgan Chase Bank account ending in the numbers XXXX9605, in the name of Rosetta 69th and St. Andrew Corp. (**"Account #15"**);

p.    Any and all funds in JP Morgan Chase Bank account ending in the numbers XXXX3508, in the name of CCW Assets Management Ltd. (**"Account #16"**);

q.    Any and all funds in JP Morgan Chase Bank account ending in the numbers XXXX3483, in the name of CCW Assets Management Ltd. (**"Account #17"**);

r.    Any and all funds in JP Morgan Chase Bank account ending in the numbers XXXX3516, in the name of CCW Assets Management Ltd. (**"Account #18"**);

s.    Any and all funds in JP Morgan Chase Bank account ending in the numbers XXXX2551, in the name of CCW Assets Management Ltd. (**"Account #19"**);

t.    Any and all funds in JP Morgan Chase Bank account ending in the numbers XXXXXX7758 in the name CCW Asset Management Ltd.(**"Account #20"**);

u.    Any and all funds in JP Morgan Chase Bank account ending in the numbers XXXXXX3532 in the name CCW Asset Management Ltd. (**"Account #21"**);

v.    Any and all funds in JP Morgan Chase Bank account ending in the numbers XXXXXX3524 in the name CCW Asset Management Ltd.(**"Account #22"**);

w.    Any and all funds in JP Morgan Chase Bank account ending in the numbers XXXXXX3475 in the name CCW Asset Management Ltd.(**"Account #23"**);

x.    Any and all funds in JP Morgan Chase Bank account ending in the numbers XXXXXX5102 in the name CCW Asset Management Ltd.(**"Account #24"**);

y.    Any and all funds in JP Morgan Chase Bank account number N17-501727 in the name of Willie C. Jackson, Willie and L. Jackson Trust (**"Account #25"**);

z.    Any and all funds in JP Morgan Chase Bank account number 000004953421628, in the name of CHARLES JACKSON, JR. (**"Account #26"**);

aa.    Any and all funds in One United Bank account number 1002638592 in the name of CHARLES JACKSON, JR. (**"Account #27"**);

bb.    Any and all funds in One United Bank account number 1002265303 in the name of Worldwide Auto Sales (**"Account #28"**);

cc.    Any and all funds in NuVision Federal Credit Union account number 449401749, in the name of WILLIE C. JACKSON (**"Account #29"**);

dd.    Any and all funds in NuVision Federal Credit Union account number 451625915, in the name of Lois Jackson (**"Account #30"**);

ee.    Any and all funds in Bank of America account number 23621-01361, in the names of Lois Jackson and WILLIE C. JACKSON (**"Account #31"**);

ff.    Any and all funds in Bank of America account number 21743-40484, in the name Marvin C. Shelton (**"Account #32"**);

gg.    Any and all funds in Bank of America account number 21740-76671, in the name of Marvin C. Shelton (**"Account #33"**);

hh.    Any and all funds in Broadway Federal Bank account number 730073124, in the name of Lois Jackson (**"Account #34"**);

ii.    Any and all funds in Broadway Federal Bank account number 7300737728 in the name Willie Jackson (**"Account #35"**);

jj.    Any and all funds in Broadway Federal Bank account number 710297311, in the name of WILLIE C. JACKSON (**"Account #36"**);

kk.    Any and all funds in Western Federal Credit Union account number 2009660, in the name of WILLIE C. JACKSON (**"Account #37"**);

ll.    Any and all funds in AIG Annuity Ins. Co account number VV270737, in the name of WILLIE C. JACKSON (**"Account #38"**);

mm.    Any and all funds in AIG Annuity Ins. Co account number NN088610, in the name of WILLIE C. JACKSON  (**"Account #39"**);

nn.    Any and all funds in Western National Life Insurance Company account number VV270737, in the name of WILLIE C. JACKSON (**"Account #40"**);

oo.    Any and all funds in ING, ReliaStar Life Insurance Company account number
B1992050, in the name of Lois Jackson, Insured Rory Jackson (**"Account #41"**);

pp.    Any and all funds in ING, ReliaStar Life Insurance Company account number
B1992051, in the name of Lois Jackson, insured Willie C. Jackson, Jr.
(**"Account #42"**);

qq.    Any and all funds in SAFECO Life and Investments annuity account number
LP1076145, in the name of WILLIE C. JACKSON (**"Account #43"**);

rr.    Any and all funds in JP Morgan Chase account number 000000716102025 in the
name of Executive Properties Enterprise LLC (**"Account #44"**);

ss.    Any and all funds in Comerica Bank account number1852519014 in the name of
Executive Auto Sales Inc. (**"Account #45"**);

tt.    Any and all funds in FAA First Federal Credit Union account number 56362 in
the name of Stacy Jackson (**"Account #46"**);

uu.    Any and all funds in Wells Fargo Bank Checking Account ending in the numbers
XXXXX2635, in the name of EMOND D. LOGAN dba Executive Transporting
(**"Account #47"**);

vv.    Any and all funds in Wells Fargo Checking Account ending in the numbers
XXXXXX5039, in the names of EMOND D. LOGAN and Caroline Epps
(**"Account #48"**);

ww    Any and all funds in Wells Fargo Savings Account ending in the numbers
XXXXXX9432, in the name of Caroline Epps (**"Account #49"**);

xx.    Any and all funds in Wells Fargo Savings Account ending in the numbers XXX-
XXX3464, in the name of EMOND D. LOGAN dba Executive Transporting
(**"Account #50"**);

yy.    Any and all funds in Wescom Credit Union, combined checking and money
market Account ending in the number XX5664, in the name of EMOND LOGAN
(**"Account #51"**);

zz.    Any and all funds in JP Morgan Chase money market account number 411-
878400001-1 in the name of Caroline Logan (**"Account #52"**);

aaa.   Any and all funds in Wescom Credit Union account ending in the number
XX9216, in the names of MARTELL LOGAN and SHARON LOGAN
(**"Account #53"**);

2.    <u>VEHICLES</u>

    a.    One 1995 Toyota Previa Minivan, VIN JT3AC14R0S1171553 (**"Vehicle #1"**);

    b.    One 1997 Toyota Previa Minivan, VIN JT3GK13M7V1247468 (**"Vehicle #2"**);

    c.    One 2000 Windstar Minivan, VIN 2FMZA5041YBC47571 (**"Vehicle #3"**);

    d.    One 1997 American Dream Motor Home, VIN 4VZBN1098VC023724 (**"Vehicle #4"**);

    e.    One 2003 Revolution Motor Home built on a Freightliner Chassis, VIN 4UZAAHBS83CM03804 (**"Vehicle #5"**);

    f.    One 2003 Lexus SC430, VIN JTHFN48Y330036099 (**"Vehicle #6"**);

    g.    One 2006 BMW, VIN WBAEK13436CN78697 (**"Vehicle #7"**);

    h.    One 2002 Mercedes Benz, VIN WDBRH64J62F150831 (**"Vehicle #8"**);

    i.    One 1996 Eliminator (boat), VIN ELBU0321C696 (**"Vehicle #9"**);

    j.    One 1994 Chevrolet pickup truck, VIN 1GCHC33N5RJ327018 (**"Vehicle #10"**);

    k.    One 2003 GMC Yukon SUV, VIN 1GKFK66U53J183318 (**"Vehicle #11"**);

    l.    One 2009 GMC Yukon SUV, VIN 1GKFK06269J120426 (**"Vehicle #12"**);

    m.    One 2008 Chevrolet Malibu, VIN 1G1ZH57B984267252 (**"Vehicle #13"**);

    n.    One 1949 Chevrolet pickup, VIN SGPC7445 (**"Vehicle #14"**);

    o.    One 2004 Rance Trailer, VIN 4PVCH20234E020390 (**Vehicle #15"**);

    p.    One 2004 Honda Motorcycle, VIN 1HFSC53J14A000208 (**"Vehicle #16"**);

    q.    One 2006 Harley Davidson, VIN 1HD1FCW186Y638493 (**"Vehicle #17"**);

    r.    One 1996 Chevrolet Caprice, VIN 1G1BL52P5TR156051 (**"Vehicle #18"**);

    s.    One 2000 Freightliner wrecker, VIN 1FV3EFAC5YHB77710 (**"Vehicle #19"**);

t.  One 2006 International wrecker, VIN 1HTMMAAL96H223946 ("**Vehicle #20**");

u.  One 2002 Toyota Sequoia, VIN 5TDBT48A52S105542 ("**Vehicle #21**");

v.  One 2003 Mercury Marauder, VIN 2MEHM75V43X677805 ("**Vehicle #22**");

w.  One 1999 Honda Accord, VIN 1HGCG164XXA054775 ("**Vehicle #23**");

x.  One 1998 Toyota Camry, VIN JT2BF22K0W0145137 ("**Vehicle #24**");

y.  A 1998 Buick Park Avenue with VIN 1G4CW52K8W4620356 ("**Vehicle #25**");

z.  A 2000 Ford Taurus with VIN 1FAFP5528YA202142 ("**Vehicle #26**");

aa.  A 2001 Chrysler Sebring with VIN 1C3EL46X21N617451 ("**Vehicle #27**");

bb.  A 2004 Honda Odyssey with VIN 2HKRL1859YH575538 ("**Vehicle #28**");

cc.  A 2000 Cadillac DeVille with VIN 1G6KD54YXYU168195 ("**Vehicle #29**");

dd.  A 1990 Mercury Grand Marquis with VIN 2MECM74F9LX668568 ("**Vehicle #30**");

ee.  A 2001 Ford Taurus with VIN 1FAHP53U01G232400 ("**Vehicle #31**");

ff.  A 2005 Pontiac Grand Prix with VIN 2G2WP522551287644 ("**Vehicle #32**");

gg.  A 2000 Chevrolet Impala with VIN 2G1WF52E9Y9338716 ("**Vehicle #33**");

hh.  A 2002 Ford Explorer with VIN 1FMZU73E02UA93489 ("**Vehicle #34**");

ii.  A 1996 Doge Caravan with VIN 2B6HB21Y9VK500729 ("**Vehicle #35**");

jj.  A 1998 Lexus E8300 with VIN JT8BF28G0W5028489 ("**Vehicle #36**");

kk.    A 2001 Dodge Neon with VIN 1B3ES46C71D135853
       ("Vehicle #37");

ll.    A 2000 Ford Windstar with VIN 2FMZA5244YBC92100
       ("Vehicle #38");

mm.    A 1998 Chevrolet Venture with VIN 1GNDU06E5WD334896 ("Vehicle #39");

nn.    A 2000 Ford Taurus with VIN 1FAFP52U7YA253704
       ("Vehicle #40");

oo.    A 1999 Mazda Protege with VIN JM1BJ2217X0157848
       ("Vehicle #41");

pp.    A 2002 Kia Sedona with VIN KND0P131226116341 ("Vehicle #42");

qq.    A 2000 Chevrolet Venture with VIN 1GNDU06E5W0334896 ("Vehicle #43");

rr.    A 1999 Chevrolet Express Van with VIN 1GCHG35R7Y1160051
       ("Vehicle #44");

ss.    A 2007 Kaufman trailer with serial number 15XFE47357L003674
       ("Vehicle #45");

tt.    A 1997 Chevrolet van with VIN 1GCHG35R6V1062818
       ("Vehicle #46");

uu.    A 1998 Yamaha Wave Runner with VIN YAMA1329L798
       ("Vehicle #47");

vv.    A 2000 Seadoo (boat) with VIN ZZN58381D999 ("Vehicle #48");

ww.    A 2000 GMC pickup truck with VIN 1GTG034F9W2539X1
       ("Vehicle #49");

xx.    A 2000 Bobcat front loader with VIN 512264612 ("Vehicle #50");

yy.    A 2001 Honda Accord with VIN 1HGCG8658XA033719
       ("Vehicle #51");

zz.    A trailer (for watercraft) with serial number 6408201 ("Vehicle #52");

aaa.   A 2003 Freightliner with VIN 1FVJAPCK03DL81549 ("Vehicle #53");

24

bbb.   A 1999 Harley Davidson motorcycle with VIN 1HD1FCW37XY623907
       (**"Vehicle #54"**);

ccc.   A 2003 Harley Davidson motorcycle with VIN 1HD1FRW503Y702074
       (**"Vehicle #55"**);

ddd.   A 2005 Harley Davidson motorcycle with VIN 1HD1JAB345Y087116
       (**"Vehicle #56"**);

eee.   A 2000 Ultraloc 28-foot boat with VIN: UTCSX607G900 and hull number MC
       8369PZ, and trailer (**"Vehicle #57"**);

fff.   A 2005 Harley Davidson motorcycle with VIN 1HD1BYB115Y07723
       (**"Vehicle #58"**);

ggg.   A 2004 Harley Davidson motorcycle with VIN 1HD1FCW394Y604366
       (**"Vehicle #59"**);

hhh.   A 2007 Maserati Quattroporte with Vehicle Identification Number
       ZAMCE39A670027835 (**"Vehicle #60"**);

iii.   A 2010 Ford Mustang with Vehicle Identification Number
       1ZVBP8CH9A5116707 (**"Vehicle #61"**);

jjj.   A 2007 Volvo semi tractor trailer with Vehicle Identification Number
       4V4NC9TJ17N457049 (**"Vehicle #62"**);

kkk.   A 2007 Lexus RX350 with Vehicle Identification Number
       2T2GK31U77C005333 (**"Vehicle #63"**);

lll.   A 2006 Chrysler 300 with Vehicle Identification Number  2C3KA53G66H192383
       (**"Vehicle #64"**);

mmm.   A 2007 Mercedes Benz SL 500R with Vehicle Identification Number
       WDBSK71FO7F128632 (**"Vehicle #65"**);

nnn.   A Ziema Trailer with Vehicle Identification Number 1ZCS14011W304061
       (**"Vehicle #66"**); and

ooo.   A 2009 Great Dane Trailer with Vehicle Identification Number
       1GRAA06209T548382 (**"Vehicle #67"**).

3.    REAL PROPERTY

    a.    All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 19441 Radlett Avenue, Carson, California, County of Los Angeles, more particularly described as:

        Lot 127 of tract 29681, as per map recorded in book 739, pages 30 to 32 inclusive, of maps in the office of the County Recorder of Los Angeles County.

    APN: 7322-017-037.
    Owner: The Ralph and Mae Charles Living Trust. **("Property #1")**;

    b.    All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 12201 South Vermont Avenue, Los Angeles, California, County of Los Angeles, more particularly described as:

        The north 45 feet of lots 10, 11 and 12, in block "J" in the townsite of Howard Tract, in the County of Los Angeles, State of California, as per map recorded in book 22, page 59 of seq. of miscellaneous records in the office of the County Recorder of said county.

    APN: 6089-012-007
    Owner: Rosetta West Blvd. and Vermont Corp., a California corporation. **("Property #2")**;

    c.    All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 11915 Willowbrook Avenue, Los Angeles, California, County of Los Angeles, more particularly described as:

        Lot 132 of Springdale Tract in the County of Los Angeles, State of California, as per map recorded in book 6, page 194 of maps in the office of the County Recorder of said county.

    APN: 6150-007-027.
    Owner: Rosetta Willowbrook Plus Corp., a California corporation. **("Property #3")**;

    d.    All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 7620 South

Western Avenue, Los Angeles, California, County of Los Angeles, more particularly described as:

> Lots 8, 9, and 10, block 17 of tract no. 6757, in the City of Los Angeles, County of Los Angeles, State of California, as per map recorded in book 76, pages 35 and through 38 inclusive of maps, in the office of the County Recorder of said county.

APN: 6018-017-031.
Owner: Rosetta 209th and Western Corp. **("Property #4")**;

e.    All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 5912 West Boulevard, Los Angeles, California, County of Los Angeles, more particularly described as:

> Lot 88 of tract 2095, in the City of Los Angeles, County of Los Angeles, State of California as per map recorded in book 23, page 22 of maps in the office of the County Recorder of said county.

> Except the easterly 20 feet thereof conveyed to the City of Los Angeles, for alley purposes, by deed recorded in book 933 page 172, official records.

APN: 4004-015-004.
Owner: Rosetta West Blvd. and Vermont Corp. **("Property #5")**;

f.    All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 5159 South St. Andrews Place, Los Angeles, California, County of Los Angeles, more particularly described as:

> Lot 115 of Chesterfield Square as per map recorded in book 21 pages 90 and 91 of maps, in the office of the County Recorder of said county.

APN: 5015-009-007.
Owner: Rosetta 69th and St. Andrews Corp. **("Property #6")**;

g.    All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 4900 S. Van Ness Avenue, Los Angeles, California, County of Los Angeles, more particularly described as:

Lot 82 of St. Vincents College Tract, in the City of Los Angeles, County of Los Angeles, State of California, as per map recorded in book 12, pages 118 and 119 of maps, in the office of the County Recorder of said county.

APN: 5015-023-010.
Owner: Rosetta 3rd and Van Ness Corp. (**"Property #7"**);

h.    All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 715 West Rosecrans, Compton, California, County of Los Angeles, more particularly described as:

TRACT # 6468 E 39.07 FT EX OF ST OF LOT 4 AND EX OF ST LOT 5 BLK 2

Parcel No.: 6178-003-002.
Owner: Rosetta 111th and Rosecrans Corp. (**"Property #8"**);

i.    All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 1603 West 209th Street, Torrance, California, County of Los Angeles, more particularly described as:

Lot 13, block 43 of tract 4983, in the City of Los Angeles (Torrance Area), County of Los Angeles, State of California as per map recorded in book 58, page(s) 80 to 85, inclusive of maps in the office of the County Recorder of said county.

APN: 7351-010-013.
Owner: Rosetta 209th and Western Corp. (**"Property #9"**);

j.    All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 1061 West 111th Street, Los Angeles, California, County of Los Angeles, more particularly described as:

The southerly 150 feet of lot 14, Woodcrest Tract, in the County of Los Angeles, State of California, as per map recorded in book 9, page 40 of maps, in the office of the County Recorder of said county.

APN: 6076-013-020.
Owner: Rosetta 111th and Rosecrans Corp. (**"Property #10"**);

28

k.      All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 2800 6th Avenue, Los Angeles, California, County of Los Angeles, more particularly described as:

> Lots 32, 33 and 34 of the east 18 feet of lot 35 of tract no. 1610, as per map recorded in book 20, page 85 of maps in the office of the County Recorder of said county.

APN: 5006-023-033.
Owner: Rosetta 54th and 6th Avenue Corp. (**"Property #11"**);

l.      All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 4607 3rd Avenue, Los Angeles, California, County of Los Angeles, more particularly described as:

> Lot 95 of tract 1700 in the City of Los Angeles, County of Los Angeles, as per map recorded in book 22, page 29 of maps, in the office of the County Recorder of said county.
> Except all oil, naptha, maltha gas, or other kindred substances deposited in, lying under or flowing through said property as reserved in deed from Los Angeles Investment Company, a corporation recorded April 11, 1918 in book 6644 page 158 of deeds.

APN: 5014-027-011.
Owner: Rosetta 3rd and Van Ness Corp. (**"Property #12"**);

m.      All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 3745 Lorado Way, Los Angeles, California, County of Los Angeles, more particularly described as:

> Lot 51 of tract 6177, in the City of Los Angeles, County of Los Angeles, California as per map recorded in book 144, page(s) 77 through 81, inclusive of maps in the office of the County Recorder of said county.

APN: 5012-027-004.
Owner: Owusu Firempong, a single man. (**"Property #13"**);

n.      All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 1943 West 74th Street, Los Angeles, California, County of Los Angeles, more particularly described as:

Lot 16, in block 7, of tract no. 5107, in the City of Los Angeles, County of Los Angeles, State of California, as per map recorded in book 54 pages 67 to 70 inclusive of maps, in the office of the County Recorder of said county.

APN: 6017-007-016.
Owner: Peggy Dalcour, a single woman. (**"Property #14"**);

o.  All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 4230 Don Jose Drive, Los Angeles, California, County of Los Angeles, more particularly described as:

Lot 100 of tract no. 20871, in the City of Los Angeles, County of Los Angeles, State of California, as per map recorded in book 619, pages 93 through 96, inclusive of maps, in the office of the County Recorder of said county.

APN: 5028-012-013.
Owner: Casa Don Jose, Inc. (**"Property #15"**);

p.  All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 4588 Don Milagro Drive, Los Angeles, California, County of Los Angeles, more particularly described as:

Lot 100 of tract no. 17455, in the City of Los Angeles, in the County of Los Angeles, State of California, as per map recorded in book 542, pages 33 through 36 inclusive of maps, in the office of the County Recorder of said county.

Except therefrom all petroleum, oil, gas, naptha, asphaltum, brea and other hydrocarbons and all minerals within or underlying said land, without, however, any right to re-enter or use the surface of said land or any portion of the subsurface thereof to a depth of 200 feet from the present surface of said land, as reserved by Dextra Baldwin Derx, Baldwin M. Baldwin and Raymond L. Knisley, as trustees under the trust created by the last will and testament of Anita M. Baldwin, deceased, in the deed recorded April 22, 1947 in book 24497 page 230, official records.

APN: 5028-017-015.
Owner: Casa Don Milagro, Inc. (**"Property #16"**);

q.    All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 21973 International Lane, Macomb, Michigan, County of Macomb, more particularly described as:

> Lot(s) 30, Towngate Subdivision, according to the plat thereof as recorded in Liber 137, Page(s) 34, 35, 36, 37, 38, 39 and 40 of Plats, Macomb County Records.

APN: 08-35-151-016.
Owner: Marlan M. McRae, a single man. ("Property #17");

r.    All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 37530 Jefferson, #104, Harrison Township, Michigan, County of Macomb, more particularly described as:

> Unit 63, Harbor Club North Condominium, according to the Master Deed recorded in Liber 9472, Page(s) 518 through 580, inclusive, and any amendments thereto, Macomb County Records, and designated as Macomb County Condominium Subdivision Plan No. 657, together with rights in general common elements and limited common elements, as set forth in the above Master Deed and as described in Act 59 of the Public Acts of 1978, as amended.

APN: 12-29-204-063.
Owner: James Hayes, a single man. ("Property #18");

s.    All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 48714 Tanglewood Drive, Macomb, Michigan, County of Macomb, more particularly described as:

> Lot(s) 26, Sycamore Estates No. 1, according to the plat thereof as recorded in Liber 155 of Plats, Page(s) 64, Macomb County Records.

APN: 08-26-126-007.
Owner: James Dylan Hayes, as Trustee of the Revocable Living Trust of James Dylan Hayes dated July 30, 2007. ("Property #19");

t.    All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 5480 Seneca, Detroit, Michigan, County of Wayne, more particularly described as:

31

Lot(s) 6, Stephenson-Trebein Company's Subdivision, according to the plat thereof as recorded in Liber 27, Page(s) 48 of Plats, Wayne County Records.

APN: 17-006743.

Owner: Executive Properties Enterprises LLC. **("Property #20")**;

u.    All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 4893 Chatsworth, Detroit, Michigan, County of Wayne, more particularly described as:

Lot(s) 1, Arthur J. Scully's Rifle Range Subdivision, according to the plat thereof as recorded in Liber 45, Page(s) 34 of Plats, Wayne County Records.

APN: 21-69028.

Owner: Executive Properties Enterprises LLC. **("Property #21")**;

v.    All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 10300 and 10351 Gratiot Avenue, Detroit, Michigan, County of Wayne, more particularly described as:

Parcel 1:  Lots 1 through 10, both inclusive, Edgewood Subdivision, according to the plat thereof as recorded in Liber 15, page(s) 83 of Plats, Wayne County Records.

Parcel 2: Lot 14, except the east 100 feet and that part taken for Gratiot Avenue, as widened, Bessenger & Moore's Gratiot Avenue Subdivision No. 2, according to the plat thereof as recorded in Liber 28, page(s) 30 of Plats, Wayne County Records.

APN: 19-1773 through 19-1779 and 19-1598.

Owner: Executive Properties Enterprises LLC. **("Property #22")**;

w.    All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 10333 Gratiot Avenue (as to Lots 12 and 13) and 10341 Gratiot Avenue (as to Lot 14), Detroit, Michigan, County of Wayne, more particularly described as:

Lot(s) 12, 13 and 14, except Gratiot as widened, Alfred M. Lows Gratiot Avenue Subdivision, according to the plat thereof as recorded in Liber 17, Page(s) 69 of Plats, Wayne County Records.

APN: 19-001771 and 19-001772.
Owner: Executive Properties Enterprises LLC. **("Property #23")**;

x. All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 12711 Wade, Detroit, Michigan, County of Wayne, more particularly described as:

> Lot(s) 612, Ravendale Subdivision No. 1, according to the plat thereof as recorded in Liber 46, Page(s) 72 of Plats, Wayne County Records.

APN: 21-6287
Owners: James Hayes, a single man, and Sandra Chatman, a single woman.
**("Property #24")**;

y. All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 16130 Whitcomb, Detroit, Michigan, County of Wayne, more particularly described as:

> Lot(s) 50, Puritan Greenfield Subdivision of the South 1/2 of the Southwest 1/4 of the Northwest 1/4 of Section 18, Town 1 South, Range 11 East, City of Detroit, Wayne County, Michigan, as recorded in Liber 51, Page(s) 8 of Plats, Wayne County Records.

APN: 22-047548.003L.
Owner: Executive Properties Enterprises LLC **("Property #25")**;

z. All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 16161 Roselawn, Detroit, Michigan, County of Wayne, more particularly described as:

> Lot(s) 166, McIntyre Park Subdivision, according to the plat thereof as recorded in Liber 44, Page(s) 12 of Plats, Wayne County Records.

APN: 16-30787.
Owner: James Hayes, a married man, and Twyla Cabil Hayes, his wife.
**("Property #26")**;

aa. All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 8936 Haas Avenue, Los Angeles, California, Los Angeles County, more particularly described as:

58

Lot 32 of Tract 11772 in the City of Los Angeles, County of Los Angeles, State of California, as per map recorded in Book 219, Page 3 and 4 of Maps in the Office of the County Recorder of said County.

APN: 6036-023-008.
Owner: Stacey Jackson, A Single Woman. (**"Property #27"**);

bb.   All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 11846-50 S. Normandie, Los Angeles, California, Los Angeles County, more particularly described as:

The portion of Lot(s) 17 of Tract No. 15735, in the County of Los Angeles, State of California, as per map recorded in Book 378, Page(s) 7 and 8 of Maps, in the Office of the County Recorder of Said County, Lying Westerly of a Line Parallel with and Distant Easterly 53.00 Feet, Measured at right angles form the Tangent Portion of the Prologation of the Westerly Line of said Lot 17.

APN: 6079-011-020.
Owner: Rosetta 69th and St. Andrews Corp. (**"Property #28"**); and

cc.   19058 Springbrook Court, Riverside California 92508-6283, more fully described as: The land situated in the State of CA, County of Riverside, City of Riverside, and described as follows:

Lot 45 of Tract No. 28628, as shown by map on file in Book 285 Pages 34 through 38 inclusive of Maps, records of Riverside County, California.

APN: 266-491-012-1
Owner: Caroline Epps-Logan and Emond D. Logan, wife and husband as joint tenants (**"Property #29"**).

4.   **PERSONAL PROPERTY**

a.   The following items of personal property seized and removed from 19058 Springbrook Court, Riverside California 92508-6283, a residence owned by EMOND DUREA LOGAN and CAROLINE EPPS-LOGAN, on or about September 11 and 14, 2009, including but not limited to:

1.   Three Rolex Watches and assorted items of jewelry;

2.   Three fur coats and a fur wrap;

34

    3.     Sixty-three designer handbags and pieces of designer luggage; and

    4.     United States currency in the amount of $7,535.00, now in the form of a Bank of America Cashier's Check.

b.    The following items of personal property seized and removed from MARLAN McRAE's residence, located at 21973 International, Macomb, MI, on or about December 2, 2009, including but not limited to:

    1.     One Rolex watch and assorted items of jewelry;

    2.     Eight (8) fur coats;

    3.     U.S. currency in the amount of $14,372, now in the form of a Comerica Bank Cashier's Check #00553166;

    4.     U.S. Savings Bonds in various denominations; and

    5.     Foreign currency.

c.    United States currency in the amount of $56,314 seized from the residence of JAMES DYLAN HAYES located at 48714 Tanglewood, Macomb, MI and from his safe deposit box located at Comerica Bank on or about December 2 and 3, 2009, and now the form of a Comerica Bank Cashier's Check #00553165.

d.    United States currency in the amount of $440 seized from the residence of ALVIN ANDERSON after his arrest on or about December 2, 2009, and now in the form of a Comerica Bank Cashier's Check #00553167.

e.    United States currency in the amount of $30,011 seized from the residence of Sandy Yamamoto and Marvin Shelton during the search of their home on or about December 2, 2009, and now in the form of a Bank of America cashier's check.

f.    United States currency in the amount of $19,200, now in the form of two Bank of America cashier's checks, and U.S. Savings Bonds in various denominations, seized from the residence of WILLIE CORNELIUS JACKSON during the search of his home located at 4230 Don Jose, Los Angeles, California, on or about December 2, 2009.

g.    U.S. Savings Bonds in various denominations and assorted rare coins seized from MARLAN McRAE's safe deposit box at 5th/3rd Bank on or about December 3, 2009.

5.    <u>SUBSTITUTE ASSETS</u>

If any of the above-described forfeitable property, as a result of any act or omission of the

defendant:

  a.    cannot be located upon the exercise of due diligence;

  b.    has been transferred or sold to, or deposited with, a third party;

  c.    has been placed beyond the jurisdiction of the Court;

  d.    has been substantially diminished in value; or

  e.    has been commingled with other property which cannot be divided without
        difficulty;

It is the intent of the United States, pursuant to 21 U.S.C. § 853(p), to seek forfeiture of

any other property of said defendants up to the value of the forfeitable property described above.

6.    <u>MONEY JUDGMENT</u>

By virtue of the commission of the controlled substance offense contained in Count One

of this Second Superseding Indictment, the defendants shall forfeit to the United States the sum

of $136,000,000.00, which sum represents the aggregate of monies received in exchange for their

involvement in the sale and distribution of cocaine, and constitutes proceeds derived from the

sale and distribution of cocaine or which are traceable thereto.

21 U.S.C. §§ 853(a) and (p)
21 U.S.C. § 846
21 U.S.C. § 841(a)(1)
18 U.S.C. § 982(a)(1) and (b)(1)
18 U.S.C. § 1956(a) and (h)
18 U.S.C. § 1957
28 U.S.C. § 2461(c)

A TRUE BILL

_____
GRAND JURY FOREPERSON

DONALD A. DAVIS
United States Attorney


BRIAN P. LENNON
Assistant United States Attorney
P.O. Box 208
Grand Rapids, Michigan 49501-0208
(616) 456-2404

58

**EXHIBIT 3**

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

- - - - - - - - - - - - - -

UNITED STATES OF AMERICA,

          Plaintiff,              No.1:09-CR-245

v.

EMOND DUREA LOGAN,

                               Hon. Robert J. Jonker
                               United States District Judge

           Defendant.

_____/

## PLEA AGREEMENT

The United States of America, by and through Donald A. Davis, United States Attorney for the Western District of Michigan, and Assistant United States Attorney Brian P. Lennon, and the Defendant Emond Durea Logan, and his attorney, Richard E. Zambon, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, have entered into an agreement resolving this matter by a plea of guilty under the following terms and conditions:

1.    The Defendant Agrees to Plead Guilty. The Defendant agrees to plead guilty to Count One of the Indictment, charging him with conspiracy to distribute and possess with the intent to distribute five kilograms or more of cocaine, in violation of Title 21, United States Code, Sections 846 and 841(a)(1).

2.    The Defendant Understands the Crime. In order for the Defendant to be guilty of violating Title 21, United States Code, Sections 846 and 841(a)(1), the following must be true: (1) that Defendant conspired or agreed with at least one other person -- specifically Alvin Keith Jackson -- to commit the crime of distribution and possession with intent to distribute cocaine; (2) that

Defendant knowingly and intentionally joined the conspiracy; and (3) that the overall conspiracy involved five (5) kilograms or more of cocaine.

3.    The Defendant Understands the Penalties.  The Defendant realizes that this charge is punishable by a mandatory minimum of 10 years and a maximum sentence of life in prison, a maximum fine of $4,000,000, a period of supervised release following incarceration of not less than five (5) years, and a mandatory $100 special assessment. **The Parties, however, respectfully submit this binding plea agreement for the Court's consideration and agree herein that the Defendant should be sentenced to a term of imprisonment of not more than 120 months (10 years) based on his conduct, criminal history, and cooperation with law enforcement. This proposed 120-month sentence cap is intended to be binding on the Court as provided by Federal Rule of Criminal Procedure 11(c)(1)(C). Consequently, the Parties understand that if this Honorable Court were to manifest an intent to sentence the Defendant to a term of imprisonment for more than 120 months, the Defendant can withdraw his guilty plea.** Defendant agrees to pay the special assessment at or before the time of sentencing unless the Defendant affirmatively demonstrates to the Court that he lacks the ability to pay.

4.    Stipulations.  The United States Attorney's Office and the Defendant stipulate to the facts stated below with the understanding that, pursuant to USSG § 6B1.4(d), neither the United States Probation Office nor the Court is bound by any stipulation in this agreement, and that the Court, with the aid of the presentence report, will determine the facts and calculations relevant to sentencing.  Both the Defendant and the U.S. Attorney's Office are free to supplement the facts stipulated to in this agreement by supplying relevant information to the United States Probation Office and the Court, and to correct any and all factual misstatements relating to the calculation of

2

the sentence. The Defendant understands that if the Court finds facts or reaches conclusions different from those in any stipulation contained in this agreement, the Defendant cannot, for that reason alone, withdraw his guilty plea.

A.    Stipulation As To Facts.

1.    That between on or about an unknown date in 2004 and continuing through in or about January 2007, as alleged in Count One of the Indictment, Defendant was the courier for Alvin Keith Jackson, who is Defendant's wife's brother-in-law. As the courier for Alvin Keith Jackson and at Jackson's direction, Defendant transported loads of cocaine from the Los Angeles, California area to the Detroit, Michigan area, using a tractor-trailer. Defendant also transported loads of drug proceeds, in the form of United States currency, from Michigan to California, at Alvin Keith Jackson's direction and via U.S. interstate highways, including Interstate 94 in both the Western and Eastern Districts of Michigan. Defendant acknowledges that at trial the government could prove that some of the cocaine he delivered for Alvin Keith Jackson was later distributed in and around the Lansing, Michigan area by AHH DEE AHH, a Detroit-based drug trafficking organization operating in the Lansing, Michigan area. Further, there was a mutual understanding between the Defendant, Alvin Keith Jackson, and others to financially benefit from Alvin Keith Jackson's cocaine trafficking between California and Michigan.

2.    That over the course of the conspiracy, Defendant transported over 150 kilograms of cocaine for and at the direction of Alvin Keith Jackson.

3.    That it was further part of the conspiracy that Defendant used some of his portion of the drug proceeds to pay for various motor vehicles, including a tractor-trailer, the mortgage for his residence located at 19058 Springbrook Court, Riverside, California 92508, items

3

of personal property, credit card bills, and other living expenses, from sometime in 2004 through in or about August 2009.

        B.      No Aggravating Role. That Defendant was neither a leader or organizer, nor a manager or supervisor of any criminal activity as defined in USSG § 3B1.1.

        5.      The Defendant Agrees:

        A.      To Cooperate with Law Enforcement. The Defendant agrees to cooperate fully with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), the U.S. Attorney's Office for the Western District of Michigan, and any other law enforcement agency in their investigation of the charge contained in the Indictment as well as the investigation of crimes over which they have actual or apparent jurisdiction. The Defendant's cooperation will consist of all steps needed to uncover and prosecute such crimes, including, but not limited to, providing investigators with a full, complete and truthful statement concerning the Defendant's knowledge of any and all criminal activity of which he is aware; truthfully answering investigators' questions; meeting with prosecutors before testifying; truthfully testifying before grand juries and in any court proceedings; and providing all relevant tangible evidence in the Defendant's possession or under the Defendant's control, including, but not limited to, objects, documents, and photographs. The Defendant's obligation to cooperate under this paragraph is an affirmative one and includes the obligation to voluntarily come forward with any and all information which the Defendant should reasonably know will assist in the investigation of other criminal activity. The Defendant will not commit any criminal offense during the course of his cooperation with the United States. The Defendant will submit to polygraph examination(s) upon request. The Defendant's obligation under this paragraph is a continuing one, and shall continue after sentencing until all investigations and prosecutions in

which the Defendant's cooperation is deemed relevant by the U.S. Attorney's Office have been completed.

B.    To Waive Some Appeal And Section 2255 Rights:    The Defendant understands that the law affords him the right to appeal the sentence imposed. Acknowledging this, the Defendant knowingly waives the right to appeal any sentence that is at or below the maximum guideline range, as determined by the Court at sentencing, and the manner in which the sentence was determined on the grounds set forth in Title 18, United States Code, Section 3742, or any ground whatsoever. Defendant retains the right to appeal a sentence above the maximum guideline range. In addition, as a matter of law, the Defendant retains the right to appeal a sentence that exceeds the statutory maximum for the crime charged, or is based upon an unconstitutional factor, such as race, religion, national origin or gender. The Defendant acknowledges that this waiver is in exchange for the substantial concessions made by the United States Attorney's Office in this Plea Agreement, including those enumerated in paragraph six (6) of this Agreement. The Defendant also waives the right to challenge such a sentence and the manner in which it was determined in any collateral attack, including but not limited to, a motion brought under Title 28, United States Code, Section 2255 (except a challenge that goes to the validity of his waiver, such as a claim that the waiver was involuntary or the product of ineffective assistance of counsel). This Agreement does not affect in any way the right of the United States Attorney's Office to appeal the sentence imposed by the Court.

C.    To Consent to Forfeiture.    The Defendant agrees to disclose to law enforcement officials the whereabouts of, the Defendant's ownership interest in, and all other information known to the Defendant about, all property or assets of any kind, derived from or acquired as a result of, or used to facilitate the commission of, the Defendant's illegal activities, and

5

shall forfeit, pursuant to 21 U.S.C. § 853(a), all interest in such property or assets. To that end, the Defendant consents to the entry of an order of forfeiture of all accounts, vehicles and real property listed in the forfeiture allegation contained in the Indictment, and any other accounts, vehicles, and items of Defendant's personal property seized by the ATF from the Defendant's home and elsewhere in September 2009. The Defendant herein admits that all those accounts, vehicles, real property, and items of personal property, constitute the proceeds, or traceable proceeds, of the Defendant's illegal activities and/or were used to facilitate the commission of Defendant's criminal activity, in violation of 21 U.S.C. § 853(a)(1) &(2). The Defendant further agrees to execute and deliver to the U.S. Attorney's Office a completed financial statement (Form OBD-500) listing the Defendant's assets.

6.      The United States Attorney's Office Agrees:

A.      To Dismiss Count Two. The U.S. Attorney's Office agrees to dismiss Count Two of the Indictment, charging a money laundering conspiracy.

B.      To Move To Release The 10-Year Mandatory Minimum. Not later than ten (10) days prior to sentencing in this case, pursuant to 18 U.S.C. § 3553(e), the U.S. Attorney's Office will move to release the 10-year mandatory minimum thereby giving the Court the discretion to sentence Defendant to a term of imprisonment of less than 120 months.

C.      To Not Bring Additional Charges. The U.S. Attorney's Office for the Western District of Michigan agrees not to bring additional criminal charges against the Defendant in the Western District of Michigan arising out of the Defendant's participation in the cocaine and money laundering conspiracies set forth in the Indictment, so long as the Defendant or his attorney discloses the conduct to the Government prior to the date of sentencing. The Defendant shall remain subject to prosecution for any criminal activity that he has failed to disclose to the Government prior to the

6

64

date of sentencing. This promise of non-prosecution shall not include crimes of violence, if any, or criminal tax violations (including conspiracy to commit such violations chargeable under 18 U.S.C. § 371).

      D.    <u>Not to Oppose Acceptance of Responsibility</u>. The U.S. Attorney's Office agrees not to oppose the Defendant's request for a two-level reduction of his offense level for acceptance of responsibility under §3E1.1(a) of the Sentencing Guidelines. However, the U.S. Attorney's Office reserves the right to object to the Defendant's request if it subsequently learns of conduct by the Defendant that is inconsistent with the criteria set forth in the Commentary to Section 3E1.1. Should the Court grant a two-level reduction as provided herein, the government states that the Defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying it of his intention to enter a guilty plea, thereby permitting the government to avoid preparing for trial, and hereby moves the Court to grant an additional one-level reduction if the adjusted offense level is 16 or greater.

      E.    <u>To Not Use Defendant's Statements Provided Pursuant to Cooperation</u>: The Government agrees that information provided by the Defendant through the Defendant's proffer(s), and any information provided pursuant to the Defendant's promise to cooperate as described in this agreement, will not be used by the Government to enhance the Defendant's sentence, in accordance with Sentencing Guidelines §1B1.8, and according to the terms of the written agreement entered into between the parties immediately prior to the proffer(s). It is expressly understood, however, that such information may be used by the Government at sentencing if the Defendant takes a position at

7

65

sentencing that contradicts information provided by the Defendant pursuant to this agreement or any proffer agreement.

      F.    Possibility of Sentence Reduction Motions.   The U.S. Attorney's Office will decide whether to file a motion for sentence reduction pursuant to Rule 35(b) of the Federal Rules of Criminal Procedure. The Defendant fully understands that such a motion may be after sentencing and made pursuant to law if, and only if, the Defendant continues to fully cooperate with the Government after sentencing and materially and substantially assists the Government in the investigation or prosecution of others. The determination of whether the Defendant has provided substantial assistance to the United States, or to designated state or local law enforcement authorities, will be made in the sole discretion of the United States Attorney's Office. Further, in determining whether to file such a motion, the United States Attorney's Office will take into consideration the benefits already conferred upon the Defendant in paragraphs 6A through 6C, and 6G of the plea agreement. The Defendant fully understands that this paragraph is not a promise by the Government to file a sentence reduction motion. Additionally, the Defendant understands that, even if such a motion were filed, the Court has complete discretion to grant or deny the motion. Furthermore, if the Court were to grant the motion, the Court -- not the government -- would decide how much of a sentence reduction the Defendant receives based upon the nature and extent of the Defendant's assistance. The Defendant acknowledges and agrees that he may not appeal the Court's exercise of its discretion in granting or denying a sentence reduction motion, if such a motion is made.

      G.    Other No-Prosecution Agreements.  The U.S. Attorney's Office for the Western District of Michigan agrees not to bring criminal charges against the Defendant's wife, whose initials are CEL, brother, whose initials are MDL, and sister-in-law, whose initials are SL, in

8

66

the Western District of Michigan arising out of their knowledge of or participation in the cocaine

and/or money laundering conspiracies set forth in the Indictment, so long as they ~~disclose their~~

~~knowledge and conduct to the United States within 30 days of the date of this agreement, and~~ agree

to not contest the forfeitures set forth in paragraph 5C above. This promise of non-prosecution shall

not include crimes of violence, if any, or criminal tax violations (including conspiracy to commit

such violations chargeable under 18 U.S.C. § 371).

7.    <u>Consequences of Breach.</u> If the Defendant breaches any provision of this agreement,

whether before or after sentencing, the United States shall have the right to terminate this agreement,

or deny any or all benefits to which the Defendant would otherwise be entitled under the terms of

this agreement. In the event that the United States elects to terminate this agreement, the agreement

shall be considered null and void, and the parties shall return to the same position they were in prior

to the execution of this agreement, as though no agreement ever existed. In such an event, the

Defendant shall remain liable for prosecution on all original charges, and the United States shall be

free to bring such additional charges as the law and facts warrant. The Defendant further agrees to

waive and forever give up his right to raise any claim that such a prosecution is time-barred if the

prosecution is brought within one (1) year of the breach that gives rise to the termination of this

agreement.

8.    <u>The Sentencing Guidelines.</u>    The Defendant understands that, although the United

States Sentencing Guidelines (the "Guidelines") are not mandatory, the Court must consult the

Guidelines and take them into account when sentencing the Defendant. The Defendant understands

that the Court, with the aid of the presentence report, will determine the facts and calculations

relevant to sentencing. The Defendant understands that the Defendant and the Defendant's attorney

9

will have the opportunity to review the presentence report and to make objections, suggestions, and recommendations concerning the calculation of the Guideline range and the sentence to be imposed. The Defendant further understands that the Court shall make the final determination of the Guideline range that applies in this case, and may impose a sentence within, above, or below the Guideline range, subject to the statutory maximum penalty described elsewhere in this Agreement. The Defendant further understands that disagreement with the Guideline range or sentence shall not constitute a basis for withdrawal of the plea. **However, as set forth above, the Parties have agreed that the Defendant should be sentenced to imprisonment for not more than 120 months (10 years) in prison based on his conduct, criminal history, and cooperation with law enforcement. This 120-month sentence cap is intended to be binding on the Court as provided by Federal Rule of Criminal Procedure 11(c)(1)(C). The Parties understand that if this Honorable Court were to manifest an intent to sentence the Defendant to a term of imprisonment for more than 120 months, the Defendant can withdraw his guilty plea.**

9.    <u>The Court is not a Party to this Agreement.</u>    The Defendant understands that the Court is not a party to this agreement and is under no obligation to accept any recommendation by the U.S. Attorney's Office or the parties regarding the sentence to be imposed. The Defendant further understands that, even if the Court ignores such a recommendation, the Defendant cannot, for that reason, withdraw his guilty plea, and he will remain bound to fulfill all his obligations under this agreement, **unless the Court sentences the Defendant to a term of prison for more than 120 months**. The Defendant understands that no one – not the prosecutor, the Defendant's attorney, or the Court – can make a binding prediction or promise regarding the sentence the Defendant will receive, except that it will be within the statutory maximum. **The Parties acknowledge, however,**

10

**that Defendant can withdraw his guilty plea if the Court sentences him to a term of prison**

**exceeding 120 months.**

10.  This is the Complete Agreement.  This Plea Agreement has been entered into by both

sides freely, knowingly, and voluntarily, and it incorporates the complete understanding between the

parties.  No other promises have been made, nor may any additional agreements, understandings or

conditions be entered into unless in a writing signed by all parties or on the record in open court.

DONALD A. DAVIS
United States Attorney

Dated: February 19, 2010

BRIAN P. LENNON .
Assistant United States Attorney
Western District of Michigan

I have read this agreement and carefully discussed every part of it with my attorney.  I
understand the terms of this agreement, and I voluntarily agree to those terms.  My attorney has
advised me of my rights, of possible defenses, of the sentencing guideline provisions, and of the
consequences of entering into this agreement.  No promises or inducements have been made to me
other than those contained in this agreement, unless otherwise made in writing and signed by all
parties or on the record in open court.  No one has threatened or forced me in any way to enter into
this agreement.  Finally, I am satisfied with the representation of my attorney in this matter.

Dated: February 19, 2010

EMOND DUREA LOGAN
Defendant

I am Emond Durea Logan's attorney.  I have carefully discussed every part of this agreement
with my client.  Further, I have fully advised my client of his rights, of possible defenses, of the
sentencing guideline provisions, and of the consequences of entering into this agreement.  To my
knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

Dated: February 9, 2010

RICHARD E. ZAMBON, ESQ.
Attorney for Defendant Emond Durea Logan

11

69