# ATTACHMENT D

```
 1              UNITED STATES DISTRICT COURT
               WESTERN DISTRICT OF MICHIGAN
 2                    SOUTHERN DIVISION

 3      _____

 4      UNITED STATES OF AMERICA,

 5                     Plaintiff,
                                        DOCKET NO. 1:09-cr-245
 6      vs.

 7

 8      EMOND DUREA LOGAN,

                       Defendant.
 9      _____/

10

11       TRANSCRIPT OF MOTION TO WITHDRAW/MOTION TO SUBSTITUTE COUNSEL

12             BEFORE THE HONORABLE ROBERT J. JONKER

13                UNITED STATES DISTRICT JUDGE

14                GRAND RAPIDS, MICHIGAN

15                  February 17, 2010

16

17      Court Reporter:          Glenda Trexler
                                 Official Court Reporter
18                               United States District Court
                                 685 Federal Building
19                               110 Michigan Street, N.W.
                                 Grand Rapids, Michigan 49503
20

21      Proceedings reported by stenotype, transcript produced by

22      computer-aided transcription.

23

24

25
```

```
 1    A P P E A R A N C E S:

 2    FOR THE GOVERNMENT:

 3        MR. BRIAN P. LENNON
          UNITED STATES ATTORNEY'S OFFICE
 4        330 Ionia Avenue, N.W.
          P.O. Box 208
 5        Grand Rapids, Michigan 49501-0208
          Phone:  (616) 456-2404
 6        Email:  Brian.Lennon@usdoj.gov

 7    FOR THE DEFENDANT:

 8        MR. RICHARD E. ZAMBON
          MITCHELL & ZAMBON, P.C.
 9        507 Waters Building
          161 Ottawa Avenue, N.W.
10        Grand Rapids, Michigan 49503
          Phone:  (616) 456-7831
11        Email:  Richard.zambon@sbcglobal.net

12

          MR. LEO J. TERRELL
13        LAW OFFICES OF LEO JAMES TERRELL
          8383 Wilshire Boulevard, Suite 920
14        Beverly Hills, California 90211
          Phone:  (323) 655-6909
15        Email:  Civil1975@aol.com

16                    *    *    *    *    *

17                            Grand Rapids, Michigan

18                            February 17, 2010

19                            10:11 a.m.

20              P R O C E E D I N G S

21        THE COURT:  We're here today on the case of the

22    United States against Emond Logan, 1:09-cr-245.  There's a

23    motion to withdraw as counsel that Mr. Zambon has on file and

24    then a motion for substitution of counsel that Mr. Terrell

25    filed.
```

1    Why don't we start out by seeing who we have here,

2  and then we can proceed.

3    MR. LENNON:  Yes.  Good morning, Your Honor,

4  Brian Lennon on behalf of the United States.

5    THE COURT:  All right.

6    MR. ZAMBON:  Good morning, Your Honor, Richard Zambon

7  appearing on behalf of the defendant, Mr. Logan, who is present

8  in court.

9    THE COURT:  All right.

10    MR. ZAMBON:  Also present but not at counsel table is

11  Mr. Leo Terrell.

12    THE COURT:  All right.  And is Mr. Terrell in the

13  courtroom, then?

14    MR. ZAMBON:  He is, Your Honor.

15    THE COURT:  Mr. Terrell?

16    MR. TERRELL:  Yes, Your Honor.

17    THE COURT:  All right.  Why don't you come forward

18  since you have a motion today as well, and I'm sure we'll have

19  questions directed to you.

20    I've gone through the materials, of course, including

21  the most recent submission.  It's called a Reply to the Court's

22  Concerns About Timeliness and Conflict Issues.

23    What I want to talk about are several things.  Timing

24  has been one from the beginning, at least since November 13

25  when I think I put everybody on notice that if there's going to

1    be new counsel, I'd deal with that if and when a motion came

2    in, and that all other things being equal, the later it came,

3    the less likely I'd be to grant it, especially if it required

4    further postponement of trial.

5            The motion didn't come until February --

6    early-February, 4 or 6, something like that, so about four

7    months.  It's here now.  I'm still not satisfied I understand

8    the reason for that delay.  And based on the last reply, I do

9    see that new counsel, Mr. Terrell, if he's allowed to appear

10   here, would be seeking more time and would not be able or

11   willing to proceed -- or at least would seek more time with

12   respect to the March trial date that we currently have.  So

13   that remains a concern.

14           Regarding the conflict issues that I have to probe a

15   bit, I think I need to understand a little bit more about

16   what's characterized as the forfeiture representation of

17   Mr. Logan's brother that's related to the drug forfeiture here.

18   I'm real concerned about that.  It may or may not be a formal

19   criminal representation because he hasn't been indicted, but as

20   I understand it from prior hearings, he's a target and has

21   gotten a letter to that effect.  So there's some concerns in my

22   mind about that as well.

23           I don't know from the government's perspective

24   whether Mr. Logan's father is a target.  That's something we'll

25   have to probe since he's the reported source of the funds.  So

1   those things are on my mind.

2          And then lastly I need to talk with both Mr. Zambon

3   and perhaps Mr. Logan as well about their relationship.  You

4   know, to some extent a motion to withdraw raises the same

5   timeliness concerns that the motion for substitution does.

6   It's one of the factors.  And as in any relationship issue, I

7   don't see Mr. Zambon's motion statement that he thinks the

8   relationship is bad.  He simply reports what Mr. Terrell's

9   motion has said to that effect.  And, you know, there's always

10  two sides to a relationship.

11         I'm going to provide and make sure that competent

12  counsel is provided and available to Mr. Logan.  He has to

13  choose to use it.  And if he chooses to keep documents from

14  Mr. Zambon, that's not something that I can prevent.  That's

15  within his power to deal with and his alone.  So Mr. Logan is

16  going to have to be able to make use of the resources that the

17  Court has provided.

18         So those are things that are on my mind.  I think

19  I'll start with Mr. Zambon.  He's present counsel for

20  Mr. Logan.  I'll hear your perspective on these issues.  You

21  can address them in any order you'd like.  And then I'll talk

22  to the other people based on what I hear from you.

23              MR. ZAMBON:  All right.  Thank you, Your Honor.

24         In regard to the timeliness of Mr. Terrell's motion,

25  I will say, Your Honor, that Mr. Terrell has been in contact

 1   with me since early on in the case.  Mid-October I think I

 2   stated in my --

 3        THE COURT:  Right.  And I know -- I mean, to some

 4   extent that's my problem.  Right?  We can't have people out

 5   there saying, Hey, I'm going to be or I am the lawyer, I'm

 6   involved, but not come into court and appear.  I mean, that

 7   potentially compromises the ability of appointed counsel who is

 8   on record to make the representation work, and it puts us in

 9   the position we're in today on the eve of trial, or two or

10   three weeks away.  And I don't know how I could have been

11   clearer.

12        MR. ZAMBON:  I understand that, Your Honor, but I

13   will say Mr. Terrell, I believe, has been working on the case

14   but in California, and I don't think it's just one of these I'm

15   waiting to get retained, I'm waiting, waiting, waiting, one of

16   those situations.  I think it's more that he was retained and

17   he was working on it, and maybe not formally, he did not

18   formally enter his appearance on this case, but I don't think

19   he's been dilatory in his representation of Mr. Logan.

20        And as I stated, he did come to Michigan, met with

21   me, Mr. Lennon also, and then he met with Mr. Logan at the

22   Newaygo County Jail.  And he's been in pretty constant contact,

23   he and his associate Ms. Brawley, and I provided them materials

24   upon their request with Mr. Logan's permission.  And so I know

25   he's been working on the case, and I don't think he's at all

the type of attorney who just comes in like we used to have back in the '80s where somebody would show up from Miami, talk to the client, and then we'd never see him again. I think Mr. Terrell is an honorable, hard-working man, and I think he'll ably represent Mr. Logan.

I think part -- that, of course, is part my problem in my relationship with Mr. Logan has been compromised. Mr. Logan, I think rightfully so, assumed that Mr. Terrell was on his case and was his attorney and did not want to discuss his defense with me, which was his right. And so what I was left to do, since I was still the attorney of record, I would speak with Mr. Logan about plea bargain offers that Mr. Lennon had put forth, which were of a pretty continuing nature. And I think that Mr. Logan felt that I was just a, you know, a go-for to the government and that I was really working for the government because we were discussing plea bargains all the time. I would tell him what evidence the government had. And I could see from his standpoint where it would appear that I was just working for the government and not for him.

I thought that we had a pretty good relationship, all things considered. I would visit with him two or three times a month at the jail and just discuss the case with him, see what his relationship with Mr. Terrell was. And it wasn't until I received the motion from Mr. Terrell substituting in that I realized the extent of Mr. Logan's distrust of me and the fact

1 that he felt that I was compromising this case and working for

2 the government.

3 When I received that motion -- I think I received it

4 on Thursday -- the next day I visited with Mr. Logan at the

5 jail, and I asked him, "Is all this true in this motion?" He

6 said, "Yes." He thought I was working for the government and

7 not for him. He asked me to withdraw from the case, and,

8 therefore, the following Monday or Tuesday I filed my Motion to

9 Withdraw.

10 I think that he would feel better if the Court were

11 to allow the substitution. We have already discussed, and I

12 think there's been two ends-of-justice continuances, he's

13 willing to waive whatever rights under the Speedy Trial Act. I

14 believe he's already done that. But he definitely wants

15 Mr. Terrell as his attorney.

16 There's a history and a relationship there. As

17 Mr. Terrell stated in his motion, he's represented Mr. Logan on

18 a matter in California. Mr. Terrell is friends of the family.

19 I believe he went to school with Mr. Logan's -- one of

20 Mr. Logan's siblings. So he feels comfortable with

21 Mr. Terrell. And he has asked me to withdraw for all those

22 reasons I've stated.

23 THE COURT: You had communication with Mr. Logan

24 throughout the case as you described in your papers?

25 MR. ZAMBON: Absolutely, Your Honor. Like I said, I

had regular visits with him at the jail.  If I received some
kind of correspondence from Mr. Lennon, I would -- if it was
oral, I would memorialize it and send it to Mr. Logan in a
letter.  If there were any documents I thought were necessary
to show Mr. Logan, I would bring them up there to the jail to
show him.  So we were in constant communication.

     *THE COURT:*  All right.  And I know, as you described,
passed plea offers back and forth, as any counsel would do.
And you described, I think, that you could see in Mr. Logan's
view why you might have been a go-for for the government, using
your words.

     What did you consider yourself?  Did you consider
yourself Mr. Logan's appointed counsel and legal representative
in the court?

     *MR. ZAMBON:*  Absolutely, Your Honor.

     *THE COURT:*  In all respects?  Not just with respect
to plea negotiations, but --

     *MR. ZAMBON:*  Yes, Your Honor.

     *THE COURT:*  -- with respect to motions and trial if
it came to that?

     *MR. ZAMBON:*  Absolutely, Your Honor, yes.

     *THE COURT:*  Okay.  Thank you.

     *MR. ZAMBON:*  Thank you, Your Honor.

     *THE COURT:*  Mr. Terrell, let me invite you to come
forward.  I want to hear from you about your perspective on it.

1    I'm concerned about the things I summarized.  You can start

2    with that.  And then I'll probably have some questions that

3    come out of your response.

4              But I'm not doubting that you've been involved in the

5    case since October, late-October or whatever the date is, or

6    that you've been working it or are prepared to take it on.  I'm

7    not doubting that, as Mr. Zambon summarizes.  What troubles me

8    is that at least as early as November 13 I think I made it

9    clear that if somebody was out there who wanted to be counsel

10   for Mr. Logan, I expected a motion, I expected them to come

11   into court, and I expected it sooner rather than later all

12   other things being equal.  And then four months go by.

13             And I have somewhat further trouble, I didn't mention

14   this earlier, your papers mention and a voicemail you left with

15   the Court once mentioned you anticipated pretrial motions on

16   sufficiency of the Indictment, maybe sufficiency of the

17   affidavits, venue.  And, you know, the time for pretrial

18   motions has long since passed.  I mean, they are not timely

19   anymore.  In fact, they are not timely now for some time.

20             And then the most recent filings saying, Look, if you

21   do get in, you'll be seeking time.  So I don't know whether

22   you'll be ready to go to trial on March 9, final pretrial on

23   March 2 if you do come in -- it's a factor -- or not.  But

24   those are things that are on my mind when I consider your

25   application at this point to represent Mr. Logan.

1      MR. TERRELL:  Your Honor, the magnitude of the case

2   that I have asked to sub in has required me to explain the

3   reasons why when I made the first initial or disclosed to

4   Mr. Zambon it was my intention of signing on to the case, I

5   needed to get prepared for this case.

6      Logistically, Your Honor, being in Los Angeles and

7   having a practice in Los Angeles and making sure I have taken

8   care of my attorney-client relationship with the other cases, I

9   needed to make sure that I set forth time, resources, and

10  effort to accommodate Mr. Logan and provide an adequate

11  defense.  That time took longer than I expected.  It is

12  something that I take very serious in saying to an individual

13  that I'm going to represent him.  I have an affirmative

14  obligation to provide the best defense possible.

15      I apologize to this Court to the extent that my entry

16  into this case did not occur in November.  If I was to attempt

17  to enter into this case in November, I would have been

18  ineffective, I believe.  I believe that my entry into this case

19  or my request to enter into this case now, I believe I'm in a

20  position to do so.

21      I have to make sure I have the proper defense team in

22  place.  These are some of the elements that I felt was

23  necessary for me to take on this what I consider a very

24  important case and a very important case to my client and my

25  obligation to make sure I serve him effectively.

1    Your Honor, the Court made reference specifically to

2    certain motions I planned to file. I do plan to seek whatever

3    appropriate relief.

4    What the Court heard from Mr. Zambon -- who I'd like

5    to say has in my opinion done a very good job in communicating

6    with my office, and I put him in an awkward situation -- again,

7    for the reasons I've just stated, I wasn't ready to provide

8    effective assistance of counsel to Mr. Logan.

9    But in that voice message that I left, Your Honor, in

10   the review of materials that I had and the constant phone calls

11   and research that my office has been providing, I felt that

12   there were certain motions that needed to be addressed or

13   raised in order to provide effective counsel.

14   My client will waive any speedy trial rights that he

15   has, it's just, Your Honor, in the position that I was in in

16   November versus now February, I am in a position to provide

17   Mr. Logan with the defense that I believe he needs by taking

18   care of my obligations with my other clients, by making myself

19   available to this Court, by retaining local counsel in

20   Michigan, and to make sure that I personally participate in

21   upcoming motions that I intend to file.

22   A lot of research on this case is, in my opinion,

23   necessary to do an effective job, and I think the Court is

24   contemplating the motion of Mr. Zambon and my request to enter

25   the case. And I think the overall concern that I believe the

1  Court has, hopefully, is providing Mr. Logan with the best

2  defense possible in light of the seriousness of the charges.

3       THE COURT: Well, that's certainly one of the factors

4  and an important one. It's also the Court's obligation to

5  consider the timely administration of justice, and that's

6  really the balance we're in.

7       And, I mean, will you be ready to go to trial on

8  March 9 if you file the motions and I deny them as untimely?

9       MR. TERRELL: Your Honor, to be very candid with the

10  Court, if I -- no.

11       THE COURT: All right.

12       MR. TERRELL: There's no way I would be ready to go.

13  Because at this point the amount of work that I've done on the

14  case, Your Honor, has been in an unofficial capacity to obtain

15  the information in the current possession of Mr. Zambon and

16  make certain requests. No, Your Honor. If I was to say

17  otherwise, I would not be up-front and honest with this Court,

18  and I want to be candid with this Court, as this division has

19  allowed me to be admitted, and I plan to be very candid with

20  the Court.

21       I have practiced in the Eastern Division before on a

22  civil case, but I want to be very up-front and candid.

23       I plan, Your Honor -- of course with the Court's

24  permission -- to do everything possible to prepare the best

25  defense for my client, which means to prepare motions, and if

1   the Court denies them, to take the appropriate steps. But I

2   need to make sure I cover all bases in order to provide

3   effective assistance of counsel.

4       I'm not ready -- I want to point out to the Court one

5   other factor which I think is significant. I take this job and

6   this position very, very serious. I've set aside three of my

7   associates to work on this case exclusively.

8       Again, the Court was concerned about the delay, and I

9   cannot stress the importance of this case for my client and for

10  myself, and also to make sure I do a very, very good job. I

11  have to do that in order to take this case. If I wasn't in a

12  position to do that, I would not be standing before this Court

13  because I would not be able to provide that effective

14  assistance of counsel. I wouldn't be able to do it.

15     THE COURT: Are there motions -- I think you

16  mentioned in the papers sufficiency of the Indictment,

17  sufficiency of the affidavits supporting the search warrant

18  into your client's house.

19      MR. TERRELL: And to the jurisdictional --

20      THE COURT: And on the venue?

21      MR. TERRELL: Yes, Your Honor.

22      THE COURT: Venue, of course, is one that you can

23  take up at trial, right? The government is going to have to

24  prove venue anyway at trial.

25      And the others, as I said, would fall within the

1  pretrial motions that are now barred by our pretrial order and

2  have been really for some time.

3       *MR. TERRELL:*  Well, Your Honor, I understand the

4  pretrial order that was initially issued in this case.  I

5  understand that.  I will file some papers to seek relief.

6       *THE COURT:*  All right.

7       *MR. TERRELL:*  Your Honor, I want to make it clear,

8  respectfully, Mr. Zambon has done, like I said, a good job on

9  this case.  He's worked with my office.  Again, I want to be

10  candid with the Court.  I'm hoping to -- I hate to use this

11  word -- start from the beginning.

12       If the Court denies that as far as -- I understand.

13  But it is my intent to seek relief from the pretrial order so I

14  can file these appropriate motions.  I think these motions are

15  substantive in nature, and we're not filing the motions for

16  purposes of just filing.  We believe we have some very solid

17  legal arguments to file these motions, Your Honor, and that is

18  why it is necessary.

19       As you know, up until this point there's been no

20  motions filed on behalf of Mr. Logan challenging the items that

21  I left on the voice message.  I think they are critical, and I

22  think the relief would be granted -- I think the relief would

23  be represented in my papers and the reasons why, Your Honor.

24       *THE COURT:*  All right.  I just want to make sure I'm

25  not missing any motions you're anticipating.  It's the

 1    sufficiency of the evidence -- or not the evidence --
 2    sufficiency of the Indictment, the challenge potentially to the
 3    affidavits of the search warrant, and then the venue?
 4            MR. TERRELL:  Yes, Your Honor.  Venue, the
 5    sufficiency of Count 1 and Count 2.  We will be filing -- our
 6    search warrants would be basically a Franks motion on certain
 7    issues.
 8            And I want to make sure -- and I apologize for being
 9    repetitive -- these motions are being worked on as we speak.
10    If I was to anticipate the Court's question "When would they be
11    filed?" I would say it's my intention to file these motions in
12    anywhere between zero to 10 days.  10 days at the outside.
13    That's what we plan -- what we would request.  Ask the Court to
14    vacate the current pretrial order.  So it would be a series of
15    these motions.
16            And I would say to Your Honor respectfully by
17    March 1st at the latest I plan to file a series of motions.
18            THE COURT:  All right.  Let me -- if you've covered
19    the issues you want to talk about on timeliness --
20            MR. TERRELL:  Yes, Your Honor.
21            THE COURT:  -- okay, let me turn to the conflict
22    issues, which is something I think I need to go into as well,
23    in part because, as I understood it from the government's
24    earlier statements, at least some family members of Mr. Logan
25    have gotten target letters.

1    MR. TERRELL:  Yes, Your Honor.

2        THE COURT:  And if I understood your papers

3    correctly, you're representing one of those targets on a

4    forfeiture issue.

5        MR. TERRELL:  Yes, Your Honor.

6        THE COURT:  Now, is that a forfeiture that is related

7    to a criminal -- I mean, in other words, a criminal forfeiture

8    or the criminal forfeiture that's at issue here?

9        MR. TERRELL:  Yes.  Well, it involves the personal

10   property of the individual, Martel Logan, who received a target

11   letter --

12       THE COURT:  All right.

13       MR. TERRELL:  -- but is not subject to any criminal

14   charge at this point.

15       THE COURT:  All right.  And the personal property was

16   property that was seized by the government in connection with

17   this case?

18       MR. TERRELL:  Yes, Your Honor.  Specifically,

19   Your Honor, I believe it was approximately $40,000 in cash from

20   Mr. Martel Logan's personal bank account --

21       THE COURT:  Okay.

22       MR. TERRELL:  -- that was seized at this point.

23       THE COURT:  Go ahead.

24       MR. TERRELL:  With the Court's permission,

25   Mr. Martel Logan, his wife Sharon Logan, and I believe

1   Mr. Emond Logan's wife have received target letters

2   concurrently.

3          Not that Mr. Lennon has -- knows what I'm about to

4   write to him, but I plan to write a series of -- my role with

5   those individuals -- excuse me -- my role with those

6   individuals has not been defined.  I am not representing

7   Sharon Logan or Caroline Logan.  It's Mr. Martel Logan on the

8   forfeiture issue at this point.  And I can sit here and say to

9   the Court respectfully my representation is to Mr. Emond Logan

10  on the criminal nature.

11         THE COURT:  Now, what happens if you scroll ahead?

12  And I guess we never know for sure, but how do I deal with this

13  eventuality:  Let's say that the government goes ahead and

14  indicts Martel Logan as a target.

15         MR. TERRELL:  Uh-huh.

16         THE COURT:  We take it the grand jury comes back with

17  the Indictment.  Presumably you're not going to represent him

18  in the criminal matter.

19         MR. TERRELL:  No.  In fact, my thinking here,

20  Your Honor, is hopefully after this Court hopefully would grant

21  my motion to represent Mr. Emond Logan, I'm hoping that that

22  subsequent indictment never occurs.

23         THE COURT:  I understand.

24         MR. TERRELL:  I plan to provide Mr. Lennon some

25  information that hopefully would persuade him not to indict

1    other members of the Logan family.

2        But my representation, Your Honor, on this case and

3    why I waited so long is to represent Mr. Emond Logan and

4    provide a vigorous defense.  I would assume then that I would

5    advise Mr. Martel Logan to provide -- to seek separate counsel.

6        THE COURT:  So if separate counsel comes in, let's

7    say, just going with a hypothetical, assuming it happens that

8    way, and separate counsel says, "Well, we have to disqualify

9    Emond Logan's counsel, Mr. Terrell, because he received

10   information from Martel Logan," I mean, isn't that a potential

11   conflict and something I've got to think about down the road?

12       MR. TERRELL:  Well, Your Honor, I think the conflict

13   really, first of all, depends on the nature of the

14   representation.  I'm sure it's something that, yes, the Court

15   needs to --

16       THE COURT:  All right.  Or looking at it from another

17   way, to put another one out there to discuss in the same

18   category, if the case eventually goes to trial and you find

19   yourself either having to cross-examine Martel Logan, should he

20   choose to testify, or at least actively pursue potentially

21   impeaching information, how can you do that --

22       MR. TERRELL:  Um . . .

23       THE COURT:  -- on behalf of Mr. Emond Logan?

24       MR. TERRELL:  A lot of hypotheticals, and it's very

25   hard to give an opinion or answer to that, because I'd need

1    to -- I'm not ducking away from the question, Your Honor.  I

2    just can't -- I don't believe I'm in a position to provide

3    those solid answers to the Court on the nature of the question

4    posed by the Court at this time.  I just -- I hopefully --

5    hopefully the Court would not let that be an obstacle for me

6    representing Mr. Emond Logan.

7            I don't see a conflict at this point, but I cannot

8    provide a solid answer to the Court's hypothetical at this

9    time.

10           THE COURT:  Okay.

11           MR. TERRELL:  If I was to do so, I would be guessing,

12   and I don't want to guess.

13           THE COURT:  What about -- and it's probably the same

14   kind of response -- but what about other people that you may

15   have interviewed in the Logan family in connection with your

16   own research and investigation should they later turn out to be

17   indicted as targets?

18           MR. TERRELL:  Well, Your Honor, that would lend every

19   potential witness who I speak to subject to a potential

20   conflict.  I mean, my job to do --

21           THE COURT:  Well, it is an issue, I suppose, a little

22   differently if you're on the front end representing or working

23   in an unofficial capacity, as you say, working on trying to get

24   sort of a family arrangement, if you will, that satisfies all

25   the interests of the family, but now that doesn't work for one

1  reason or another and all the family, at least that the

2  government is able to indict, is in the case.  I mean, it's

3  conceivable that your role in this unofficial period would make

4  it impossible for you to represent any one of those

5  individuals.

6       *MR. TERRELL:*  Possibly, yes.  To be candid with the

7  Court, I've interviewed family members for the purpose of

8  providing -- or preparing a defense for Mr. Logan.  I've

9  interviewed his wife, his wife's sister, and family members so

10  I can learn more about the case.  That would occur in any

11  scenario of representing --

12       *THE COURT:*  True, but often those people would have

13  counsel or you would have at least advised them of separate

14  counsel.

15       *MR. TERRELL:*  True.  But in a very early stage,

16  Your Honor, if some of these individuals are not subject to a

17  target letter, or if they are just, you know, members of the

18  family who may have information and then subsequently the

19  government says, you know, these individuals are possible

20  targets, it would be a conflict for Mr. Logan's situation as

21  well.

22       Do I pursue an effective representation by ignoring?

23  Do I deny Mr. Logan effective representation by not

24  interviewing these individuals or have some third-party do the

25  interview?  A variety of issues raised by the Court,

unfortunately, I don't have the answers to that potential series of problems. I hope that doesn't occur. But I believe that (A) it could be worked out, and (B) my role here is to provide that representation of Mr. Logan, Emond Logan. I don't see the potential conflict.

The Court has an obligation to raise these issues. I understand the reasons why. Again, I apologize for not having answers for every one of those questions. It really has a lot to depend on what the government does as far as subsequent indictments if necessary.

*THE COURT:* All right. If you do come into the case as counsel, are you satisfied that you've made financial arrangements through Mr. Logan's father that would see the case through to completion of the trial?

*MR. TERRELL:* Yeah. I want to be very clear on that. I want the Court to understand, there has been a financial arrangement made. An arrangement made that has satisfied my need to provide an adequate defense representation, retain experts if necessary, set aside staff members in my office, and to make sure I personally appear before this Court in addition to local representation.

And that is one of the reasons why, Your Honor, that I want to try to impress upon the Court that I have -- the motions that I was contemplating, the request to vacate the pretrial order is because the Court's question basically asks

1  me do I plan -- do I have the resources and the time and effort

2  to do a good job? The answer is yes. Have financial

3  arrangements been made? Yes. And the delay in that process

4  and why I was not here before this Court in November and why

5  I'm here in February is to say to the Court that I am now

6  ready, willing, and able to provide Mr. Logan that defense that

7  he has requested. The speedy trial, Mr. Logan waives those

8  rights.

9          And I'm not asking this Court to start all over

10  because I had to get my act together, but what I'm saying to

11  this Court is that had I appeared before this Court in

12  November, I would not have been effective. I would have been

13  ineffective. I would have been a disservice to the Court. I

14  would have been a disservice to Mr. Logan. And I would have

15  basically been displeased from a personal professional standard

16  of practicing for 20 years and making sure that when I take a

17  case I do a good job.

18          I've represented Mr. Logan in the past. I've known

19  him and his family for over 30 years. There's too much at

20  stake for me to have prematurely entered this case unprepared.

21          THE COURT: And the funds that you've secured are

22  through Mr. Logan's father?

23          MR. TERRELL: Yes, Your Honor. And I want to make

24  sure it's clear in the papers that my client is

25  Mr. Emond Logan --

1     *THE COURT:* Yes.

2    *MR. TERRELL:* -- not Mr. Emond Logan's father.

3     *THE COURT:* And he hasn't received a target letter,

4 the father?

5    *MR. TERRELL:* No, Your Honor, he has not received.

6 The targets letters have been directed specifically, in my

7 recollection, to Martel Logan, Emond Logan's brother;

8 Sharon Logan, Emond Logan's sister-in-law; and Caroline Logan,

9 Emond Logan's wife. That's to my knowledge.

10    I have interviewed Caroline Logan. I've interviewed

11 one of the individuals, her name is Lisa Jackson, who is, I

12 believe, one of the individuals who provided grand jury -- or

13 is identified in the Indictment as Alvin Jackson. And I have

14 not interviewed Sharon Logan at all.

15    I did participate with Mr. Lennon in providing --

16    *THE COURT:* Handwriting exemplars?

17    *MR. TERRELL:* -- handwriting exemplars.

18    *THE COURT:* Right, I remember that in the papers.

19    *MR. TERRELL:* Right. I've done that. But that's

20 been the limitation at this point.

21    *THE COURT:* All right. Okay. Are there other things

22 that you want to address, Mr. Terrell?

23    *MR. TERRELL:* No, Your Honor, other than the fact

24 that as I explained to you my intention to -- no, I'm done,

25 unless the Court has any other questions.

1    THE COURT:  Not right now.

2    MR. TERRELL:  Thank you.

3    THE COURT:  Thank you.

4    Mr. Lennon, let me hear from the government and their

5    perspective.  I'm also interested in the government's thinking

6    about trial.  I think the last time we were here the government

7    said, Well, you know, we're going to supersede if the trial

8    goes on as scheduled without an adjournment.  I don't know if

9    the government is in that position again now or if the

10   government intends to go to trial on March 9.

11   MR. LENNON:  Well, to answer the Court's question,

12   no, we've got a second superseding indictment in the

13   United States v. Garmin prepared and being reviewed right now.

14   I think we've been candid with the Court ever since

15   our filings.  Well, from the entire case.  But certainly we

16   highlighted this for the Court in our early filing on

17   November 10th with the joint motion to adjourn that this was

18   certainly going to be a possibility.  We certainly thought that

19   that was going to happen earlier.  But I can explain, I

20   think -- well, the Court is well aware of some of the

21   circumstances that led to that.

22   But at this point that second superseding

23   indictment -- I'm letting both counsel know and the Court

24   know -- in U.S. v. Garmin is going to contain a drug -- cocaine

25   conspiracy count in Count 1, two separate money laundering

1    conspiracy counts, and then one large -- much larger expanded

2    forfeiture allegation.  That forfeiture allegation does include

3    not only -- well, it includes everything from -- in the current

4    case.  And that also includes a bank account that belongs to at

5    least Martel Logan.  It may also belong to Sharon.  I don't

6    know that.  But that was seized back in September.

7          So to answer the Court, yes, we expect -- we can't

8    ever guarantee what the grand jury is going to do, but this

9    grand jury has had this case for a long time.  They were the

10   ones who returned the initial Garmin investigation -- or

11   indictment back in December -- sorry, November of '08.  And

12   that included the lead defendant Alvin Jackson who is related

13   to Emond Logan and who is mentioned in this as well.  So it's

14   that same case.

15         You know, had our local rule been written a little

16   differently, Your Honor, when we filed this Indictment against

17   Mr. Logan, we certainly at that point could have, you know --

18   for example, if our local rule had included the ability to say

19   a related case has some kind of significant attachment to

20   another, we could have done that.  But because we had to indict

21   this case in early-September and the grand jury that had been

22   investigating Garmin for quite some time was the end of

23   September, it didn't fit the definition.  So I want to let the

24   Court know --

25         *THE COURT:*  So if the superseding indictment comes

1  down as you expect, then this case essentially would evaporate

2  and you'd try everything together in the new case?  Or the new

3  superseding?

4         MR. LENNON:  Yes, Your Honor, we would move to

5  dismiss this case, 245, in light of 1:08-cr-274, Alvin Jackson,

6  et al.

7         THE COURT:  All right.

8         MR. LENNON:  And Mr. Terrell is absolutely correct,

9  in November -- in September, on September 11th when Mr. Logan

10  was arrested we personally served target letters on just

11  Caroline Logan, Martel Logan, and Sharon Logan.

12         One of the reasons we have held off this far is

13  because our plea negotiations with Mr. Logan, Emond Logan, have

14  included a nonprosecution agreement for his wife, brother, and

15  sister-in-law.  And obviously we had a deadline on that plea of

16  January 15th, I believe.  That deadline passed.

17         So, you know, we stand in a position where we

18  expected to be, but we expected to be at the end of 2008 in

19  this position had Mr. Terrell come in the case.

20         Now, hindsight is 20/20, and I'm guessing that

21  Mr. Terrell would acknowledge that had he filed -- we received

22  an email November 6th from his office saying that they were

23  going to get in hopefully before November 16th.  You know, had

24  they done that, we acknowledge that this case is a very

25  sophisticated case, not your typical drug case, particularly

1   with the volume of documents that we had subpoenaed prior to

2   indictment and that we collected from Mr. Logan's house after

3   the -- during the search.  We would have joined any motion for

4   an adjournment to give new counsel time to prepare those

5   motions, time to review all the documents that we have.

6           THE COURT:  Well, there was an adjournment on the

7   basis of the complexity of the case late-2009, right?

8           MR. LENNON:  That's correct, Your Honor.  And that

9   was at the -- that was filed jointly with the motion for status

10  of counsel.  Because we had thought that Mr. Terrell was going

11  to come in by this email that was November 6th.  We thought he

12  was going to be in by the 16th.

13          So I guess what we're telling the Court is we don't

14  object to -- we take Mr. Zambon at his word.  By no means do we

15  believe he was an agent for the government.  We had provided

16  significant discovery, Rule 16 plus, very early on because we

17  wanted to show the strength of our case and the connection we

18  believe that we could show Caroline Logan, Martel Logan, and

19  Sharon to either the drug and/or the money laundering

20  conspiracy.  So the fact that Mr. Zambon and I were fairly

21  early discussing some plea negotiations, the government's

22  contention is it's because we believe the strength of the case

23  dictated that and we had provided in this case electronic

24  copies of the documents taken from the home as well as those

25  subpoenaed documents.

1    So just to be clear, that's the reason we were

2    discussing plea negotiations that included nonprosecution

3    agreements for family members fairly early.

4    But our intention, Your Honor, is to file -- is to

5    seek and obtain that second superseding indictment in Garmin

6    next week.  And I guess the only other -- I'm here to answer

7    any questions, but I think Mr. Terrell did accurately state

8    that he did provide -- helped arrange for Martel and

9    Caroline Logan for handwriting exemplars.  And I think at this

10   point while they haven't been indicted yet, there certainly is

11   no conflict now, but there certainly is a potential conflict,

12   but it will depend on a number of things, including the nature

13   of the representations, whether all parties would waive.

14   And I can't speak for -- if indeed this goes as we

15   expect it will be, I don't -- I don't want to speak for the

16   Court as to how -- you know, whether any of those factors are

17   going to require Mr. Terrell at that point to relieve himself

18   from the case.

19   At this point it's not as clear as some cases where

20   we've had defense counsel has represented someone who he knows

21   is going to be a government witness and then is also trying to

22   represent the defendant.  Those are a little clearer cases.

23   But certainly if indeed the grand jury returns that second

24   superseding indictment, I think there's a potential conflict.

25   And it's one that we've actually brought up to Mr. Terrell's

1     office fairly early on in this matter.

2          I stand ready to answer any specific questions.

3          THE COURT: Only if you want to comment on any of the

4     timeliness or conflict issues beyond what you already have.

5          MR. LENNON: Not the conflict. And, again, I think

6     Mr. Terrell would probably acknowledge that had he filed his

7     Appearance then, we would have acknowledged the complexity of

8     the case and would have at least probably come to the Court

9     with a joint motion. Whether the Court would have granted that

10     or not I don't know. But we signaled very early on in the case

11     that we intended to try this case together with Garmin. Thank

12     you.

13          THE COURT: Well, let me ask one other thing. If the

14     motions -- and this is just scrolling ahead on the practical

15     issues -- if the motions today are denied, the case is set for

16     trial March 9 I think, if the superseding indictment comes down

17     as you expect, there's going to be a motion to dismiss and

18     effectively you've got a new case in front of Garmin and

19     presumably the motions to the new indictment -- well depending

20     on whether you have cured the deficiencies they see, but the

21     whole train of pretrial motions will start fresh.

22          MR. LENNON: We understand that.

23          THE COURT: So in a way denying the motion is a

24     backdoor way of providing an opportunity to Mr. Terrell and

25     Mr. Logan to seek representation in that new superseding

1   indictment. Right? I mean, isn't that --

2       MR. LENNON: Well --

3       THE COURT: If I deny the motion and the superseding

4   indictment comes down, then some new judge is going to have to

5   decide whether to let Mr. Terrell in, and the timeliness issues

6   aren't going to be a factor anymore.

7       MR. LENNON: Well, I clearly was thinking of the

8   timeliness issue. I wasn't thinking of the other issue, but --

9       THE COURT: The timeliness issue may be more severe

10   or may not, but that's there, whether it's a potential or

11   whether it's real.

12       MR. LENNON: No, and we acknowledge that. And

13   certainly I had gotten my hands around the fact of the

14   timeliness issues with respect to the Rule 12 motions. We

15   realized that there's probably going to be a new clock.

16       THE COURT: What happens if I grant the motion now?

17   Looking in practical terms. I grant the motion, Mr. Terrell is

18   in here, you still supersede next week. Is that still your

19   intent? Regardless of the outcome of these motions, you intend

20   to supersede next week?

21       MR. LENNON: That's correct, Your Honor.

22       THE COURT: I see.

23       MR. LENNON: It's drafted, it's being reviewed. I

24   expect it's going to be presented on Wednesday and voted -- and

25   returned on Wednesday. But that's our intent.

1     THE COURT:  Okay.  So no matter what happens in this

2  case today, next week everything changes if it goes the way the

3  government plans?

4     MR. LENNON:  If it goes the way the government plans,

5  Your Honor, I think you're right.  And if the Court grants our

6  motion to dismiss the case.  Then I guess the government

7  realizes we're starting fresh in this case.

8     THE COURT:  All right.  Okay.  Thank you.

9     MR. LENNON:  Yes, Your Honor.

10     THE COURT:  Mr. Logan, I just want to ask you one

11  thing, depending on your answer maybe more, but you read the

12  papers, obviously, that both Mr. Terrell and Mr. Zambon filed.

13  And they have described in some detail your concern, your

14  distrust of Mr. Zambon or your sense that Mr. Zambon is, you

15  know, working for the government as much as he's working for

16  you.  And I think we hit on that primarily, as Mr. Zambon

17  describes it, with his role being to talk with you a lot about

18  plea issues, plea negotiations, and plea options.

19     Is there more to it than that from your perspective?

20  Are there things between you and Mr. Zambon that are

21  interfering with your ability to work with him?

22     THE DEFENDANT:  No.

23     THE COURT:  Okay.

24     THE DEFENDANT:  The only thing is he didn't file any

25  motions or anything like that on my behalf.

1      THE COURT:  Okay.

2      THE DEFENDANT:  Which --

3      THE COURT:  The kinds of motions that you've talked

4  to Mr. Terrell about?

5      THE DEFENDANT:  Correct.

6      THE COURT:  Okay.  Fair enough.

7      Anything else?

8      THE DEFENDANT:  I would like for him, Mr. Terrell, to

9  represent me.

10      THE COURT:  Okay.

11      THE DEFENDANT:  My life is hanging in the balance.

12  It's 30 years of life.  It's not like two or three years that

13  I'm facing.  So I need to have an adequate defense.

14      THE COURT:  Okay.  Thank you.

15      Do any other counsel want to address any of the

16  issues up today?

17      Mr. Terrell?

18      MR. TERRELL:  Just one other issue.  I think I had

19  mentioned it before, and thank you for the additional time,

20  Your Honor.

21      This delay, I think it is important for me to

22  emphasize that when I talked about my representation, my

23  intention to represent Mr. Logan in November, I had not been

24  admitted to practice in this particular division.  And

25  logistically, Your Honor, to -- Grand Rapids, Michigan, is not

1   around the corner from Los Angeles.  And the factor that I'm

2   traveling here, even though, you know, the rules are a level

3   playing field, the distance and the geographical proximity

4   between Los Angeles and Grand Rapids is that other factor that

5   I think I wanted to just point out that made it necessary for

6   me to delay my entry into this proceeding.  That is no longer a

7   problem.  And I just felt that that's also something that I

8   just wanted to put on the record.

9          Other than that, Your Honor, my previous comments

10  reflect my answer to the Court's questions.  Thank you.

11          THE COURT:  Thank you.

12          Anything else, Counsel?  Mr. Zambon?

13          MR. ZAMBON:  Just very briefly, Your Honor.  I

14  believe that one of the things that's been assumed that wasn't

15  directly addressed is that even if this case isn't dismissed

16  and there's a superseding indictment, Mr. Terrell does intend

17  on representing Mr. Logan throughout the new indictment.  We've

18  discussed that, and he is onboard for that.

19          Second, the nature of the case.  Mr. Lennon and

20  Mr. Terrell both alluded to a large number of documents.  I've

21  received six CDs which are scanned documents that were seized

22  from Mr. Logan's house.  Thousands of documents which I've

23  attempted to go through.  It's very time-consuming.  And

24  Mr. Terrell and his staff will have to spend a lot of time

25  going through that, so I think a request for an adjournment

1    would be well founded.

2           And I don't believe that the Court directly addressed

3    with Mr. Logan about waiving his speedy trial rights, but I did

4    talk to him about that again, and he's willing to waive those

5    rights, Your Honor.

6           *THE COURT:* All right. Anything else, Mr. Lennon?

7          *MR. LENNON:* The only thing, Your Honor, is that,

8    again, there's a lot of what-ifs, what if the grand jury

9    returns the indictment, what if this Court dismisses. But I

10   would want to just make Mr. Logan aware that if the Court was

11   going to grant him to substitute in on this case, that

12   Mr. Zambon has already made the affirmative promise to provide

13   the government with reciprocal discovery, and we would be

14   expecting that Mr. Terrell would be abiding by that promise as

15   well to provide reciprocal discovery.

16          *THE COURT:* Well, the superseding indictment would be

17   in the new case, right?

18          *MR. LENNON:* That's correct, Your Honor.

19          *THE COURT:* All right.

20          *MR. LENNON:* Just if that didn't come down and the

21   Court granted the substitution, we would be expecting that new

22   counsel would be abiding by the promises made by Mr. Zambon in

23   this case to provide reciprocal discovery. That's all. Thank

24   you, Your Honor.

25          *THE COURT:* All right. Mr. Terrell, are you in a

1    position to comment on that?

2          MR. TERRELL:  Yes.  My comment would be, Your Honor,

3    at this present time I don't know what -- other than the

4    argument of reciprocal discovery, I would have no problem with

5    providing Mr. Lennon with the discovery pursuant to that

6    agreement.  Any other agreement that may have been entered into

7    I wouldn't be able to comment on, but reciprocal discovery, I

8    think, yes, Your Honor.

9          THE COURT:  Okay.  Thank you.

10         Counsel, anything else?

11         MR. ZAMBON:  No, thank you, Your Honor.

12         THE COURT:  All right.

13         MR. LENNON:  No, thank you, Your Honor.

14         THE COURT:  Okay.  Well, we have, as I said, the

15   motion to substitute from Mr. Terrell and the motion to

16   withdraw from Mr. Zambon.  To some extent both implicate

17   similar concerns regarding timeliness, and then beyond that

18   each has somewhat independent concerns.  And then there's the

19   practical point that at least if the case unfolds the way the

20   government expects and the related case, or the other case I'll

21   just call it, the Garmin case goes to superseding indictment

22   next week, much of what we're talking about here will become,

23   at least for purposes of this case, moot because the government

24   will move to dismiss the case, and we'll look at it, but

25   presumably that would happen so that the entire conspiracy

charge and related charges could be handled together in one
case with one judge.

You know, I've thought about it. I really appreciate
people coming and putting forward their candid responses. I
would enjoy having Mr. Terrell in the case I'm sure, just as I
know I would enjoy Mr. Zambon in the case.

I'm going to deny both motions -- and I'll give you
my reasons in a moment -- because I don't think that at this
stage of the case they are warranted. I don't have any doubt
that Mr. Terrell would be capable counsel for Mr. Logan. I
don't have any doubt that Mr. Zambon is capable counsel for
Mr. Logan. To me it comes down to concerns regarding timing
and it comes down to concerns regarding potential conflicts,
but I'll say a few other words about that in a moment.

If in fact the case, Garmin case, supersedes and the
government moves to dismiss here next week, then it seems to me
the timeliness concerns that I'm going to address are going to
be gone, and it would seem -- of course Judge Maloney may see
it differently -- but it would seem from a timeliness
perspective getting new counsel in for Mr. Logan at that point
would be in a much different setting. Whether conflicts are
there or are different is another question. We can't really
address that until we see it.

Let me start with the motion to withdraw. That's a
concern that the courts have dealt with many times. I'll look

1  at the standard. United States against Iles is the one I'm

2  using from the Sixth Circuit, 906 F.2d. 1122 (1990). And it

3  simply lays out the concerns that the Court has to deal with

4  between getting counsel that's competent and counsel that's

5  working effectively with the defendant but also promoting a

6  timely administration of justice and probing into the

7  difficulties in the relationship.

8  And what I see here on this record is that to the

9  extent there's any difficulty in the relationship, it's

10  somewhat self-imposed and self-inflicted by Mr. Logan, I think.

11  The two issues that I have seen raised in the papers regarding

12  the problems involve, number 1, this trust issue in the sense

13  that Mr. Zambon has practiced here for many years in this

14  district, he's connected as a result to both the defense and

15  the prosecution bar, and he's busily passing plea offers back

16  and forth, and that necessarily carries with it the potential

17  that a defendant in Mr. Logan's position would say, "Well,

18  jeez, aren't you really going to help me win this case? Why

19  are you talking to me about pleas?"

20  That's, I think, in the nature of any relationship

21  between defense counsel and a defendant, and I don't sense that

22  there's any other actual -- certainly actual sense in which

23  Mr. Zambon is working against the interests of Mr. Logan in the

24  interests of the government. He's simply trying to ensure that

25  Mr. Logan, if he wants to pursue a plea, gets the best plea

opportunity possible. And if he doesn't, as Mr. Zambon
indicates here today, he's known from the beginning he's
counsel for Mr. Logan in all respects and he'll be there to try
the case.

The only other issue that I think I've seen come up,
in earlier papers mostly, was this concern that there may be
exonerating documents that were in the hands of Mr. Terrell in
California last fall but not in the hands of Mr. Zambon. And
that's the part that I think is self-inflicted. We didn't talk
about it a lot today. But those documents are available. They
can be handed to Mr. Zambon. It's simply up to Mr. Logan and
his agents or family members to decide to pass them or not. I
can't force any defendant to make use of competent counsel
that's appointed on their behalf. I can simply make that
competent counsel available, and they can decide whether to use
that counsel or not.

I'm satisfied that there's been regular communication
and opportunity to communicate between Mr. Zambon and Mr. Logan
and that the case can be handled capably by Mr. Zambon.

Now, the comment today from Mr. Logan was a little
new commenting that he was also concerned there were no
pretrial motions filed. It would -- I can't evaluate the
propriety of any pretrial motions per se. I haven't seen
papers or specific proffers on what they would be, simply we
have the labels of sufficiency of the indictment or sufficiency

1    of the affidavit. I think a Franks motion as Mr. Terrell

2    characterized it. They may or may not be good motions, but I

3    don't get the sense that they were simply ignored by

4    Mr. Zambon.

5          Frankly, most cases go through the district without

6    motions like that, and certainly motions like that are filed

7    much earlier in the case under our pretrial order, or

8    alternatively when there's the prospect of such a motion

9    there's a request filed for extension of those deadlines to

10   permit some opportunity to investigate them. That didn't

11   happen here. Instead the deadline simply ran without any kind

12   of proffer from anybody until long after those deadlines had

13   run.

14         So I don't sense that there's the kind of breakdown

15   of a relationship between Mr. Zambon and Mr. Logan that

16   prevents effective assistance of counsel from being provided.

17   And when I balance the factors in a case like Iles, and we're

18   already here after two ends-of-justice adjournments, we're now

19   about three weeks away from trial, and I don't think that

20   there's any good reason to further delay trial by bringing in

21   new counsel when we have the presence of Mr. Zambon as capable

22   counsel. So I think under the Iles factors the motion to

23   withdraw is denied.

24         The motion to substitute comes forward in a somewhat

25   different light. I don't have any doubt about Mr. Terrell's

competence and ability to represent Mr. Logan. I'm sure he'd

do an outstanding job, as I'm sure that Mr. Zambon will do as

well.

The question, though, is not simply whether

Mr. Terrell will do a great job; it's whether Mr. Logan has had

a fair opportunity here to secure that counsel of his own

choice. And timeliness is a specific factor that goes into

that mix.

Wilson against Mintzes, Linton against Perini are two

Sixth Circuit cases. Wilson 761 F.2d. 275 from 1985 and

Linton, 656 F.2d. 207 from 1981. And they both talk about the

nature of the qualified right that a defendant has to bring in

retained counsel. It certainly doesn't include an absolute

right to delay. It includes rather that fair opportunity to

obtain counsel.

Here when I look at the kinds of factors that Linton

and Wilson evaluate, I think the timeliness factors weigh

against the substitution: Length of delay; previous

continuances; inconvenience to litigants, witnesses, counsel,

and the Court; are the delays purposeful; whether there's other

competent counsel available; the complexity of the case; and

identifiable prejudice would be the principal factors, seven of

factors.

And what still strikes me and bothers me is that as

early as November 13 when the Court first learned about the

1   prospect of other retained counsel coming into the case, I made

2   it clear, not simply in an oral statement, though I did in

3   court, but in a written order as well saying, Look, I'm not

4   going to talk about status of counsel in some informal process.

5   Right now Mr. Zambon is the legal representative.  He stays

6   that way unless and until somebody else comes in.  And the

7   point of that is not just to be a pain in the neck.  The point

8   of that is to avoid what I think Mr. Terrell honestly, candidly

9   characterized today as his somewhat unofficial capacity.

10          The Court can't have counsel, capable or otherwise,

11  out there unofficially handling cases on behalf of a defendant.

12  When somebody wants to represent a defendant in the court, they

13  need to come.  They need to come timely.  And that could have

14  happened as early as October or November, or certainly shortly

15  after the Court made it clear that the longer people waited,

16  the less likely it was going to be granted.

17          And that's not to say -- well, the point can be that

18  somebody can come in, can explain that they are in, that they

19  have the need for time to investigate the case, all the kinds

20  of things that counsel would do if they are appointed or

21  retained, but it didn't happen here.  Time just went by.

22          We had another hearing in, as I recall, the first

23  part or maybe mid-January where I raised it again.  I said,

24  "Where is Mr. Terrell?  You know, he's had two months."  We

25  still don't hear anything.  And then finally it comes in now a

few weeks before trial where the last ends of justice was
granted with a specific statement from the Court at the end of
the Order saying I see no further reason on this record for
delay.

And yet the request comes, and I appreciate
Mr. Terrell's candor in saying, "Yeah, if I substitute in, I'm
going to want more time." So to me the delay factors weigh
heavily against permitting the substitution at this point. I
think there's been plenty of time, there's been plenty of
warning. There's been two ends-of-justice extensions already.
And at this point the case needs to move forward.

The other thing that I am concerned about when I
consider timeliness is that in effect we are looking to start
the case from the beginning, as Mr. Terrell alludes to. He
says I don't really want to say that, that's not exactly what
he has in mind, but he does have in mind going back to pretrial
motions that would be filed at the beginning of the case, and
that again seems to me is a direct problem with the timeliness
of the request.

And I think there is prejudice to the parties and to
the Court when we have the schedule move like that and now we
would effectively have to start all over. Not to mention the
overall prejudice to the timely administration of justice,
which is one of the things that the Court has to consider as
well.

1    The conflict of interest issue is another one the

2 Court has to look into in substitution of counsel, and I do

3 have concerns about that.  Probably the leading case is Wheat

4 against the United States, 486 U.S. 153 (1988).  And, you know,

5 that charges the court with pursuing inquiry into potential

6 conflicts of interest.  And that includes not simply actual

7 conflicts of interest that may exist today but a realistic

8 assessment of potential conflicts that may or are likely to

9 emerge.  And it seems to me that we're in that world here.

10    We have an existing Indictment in this case that

11 charges a drug and money laundering conspiracy.  There's

12 multiple people involved.  We're all told in addition that

13 family members who have not been indicted in this case, that is

14 family members of Mr. Logan, are targets and have gotten target

15 letters.  And we're further told that at least on a forfeiture

16 issue Mr. Terrell is presently representing one of those

17 targets, the brother of Mr. Emond Logan.  And it seems to me

18 that we can parse that very finely and say, Well, that's just

19 civil forfeiture -- or rather criminal forfeiture -- and I'm

20 not going to do anything else.  But I'm not convinced that

21 that's adequate at this point.  There certainly would need, it

22 seems to me, more scrutiny.  But when the very conspiracy

23 charged is what led to the forfeiture, it seems to me the

24 issues are just necessarily overlapping.

25    And I'm trying to imagine if a case goes to trial and

somebody in the position of counsel for Mr. Emond Logan needs

to cross-examine Mr. Martel Logan, it just can't be done by

Mr. Terrell where he's got representation of both of those

people on matters that are at the very least related it seems

to me.

Now, Mr. Terrell is quite right, as Mr. Lennon

confirms, those are hypotheticals. We don't know exactly how

things are going to unfold. But I think that's part of the

problem and part of what the Court is charged with doing in

seeing that every member of the family, or every defendant

whether family or otherwise, has counsel that is truly

undivided in loyalty but beyond that in potential problems that

could come back to haunt either the proceedings or further

delay the proceedings if down the road one of those other

codefendants says, Wait a minute, I talked to that lawyer,

Mr. Terrell in this case, and now he's got confidences,

protected information that he shouldn't have, and it's going to

hurt me.

So the conflict of interest issue I'm not going to

resolve it. Specifically it's an alternative basis for the

Court's concern here today, but I'll let Judge Maloney deal

with that finally if and when the superseding indictment comes

down and this case is dismissed and Mr. Terrell tries to appear

there for Mr. Emond Logan. All of that will unfold, and I

don't want anything in my ruling here to be construed to bind

1   the hands of Judge Maloney if he is the one who winds up with a

2   superseding indictment that takes care of this entire case.   I

3   would want him to feel completely free to look at all of these

4   issues on whatever record is presented to him.

5           But as I look at it today, it's a concern that is

6   amplified in my mind when I consider the timing issues, when I

7   consider some of the reasons for the timing issues, namely, as

8   Mr. Terrell says, the need to marshal his own resources,

9   ultimately through Mr. Logan's father, but after all we have a

10  family relationship at issue that seems to me this is a

11  situation that's rife with potential conflict that at least

12  needs exploration.  But I'm going to deny it principally on the

13  timing grounds with added concerns about the conflict.  So I'll

14  enter an Order to that effect.  If the government proceeds with

15  a superseding indictment from a grand jury, you should file a

16  motion to dismiss here as quickly as you can.  Unless something

17  surprising happens in the motion, I don't anticipate needing a

18  hearing on that.  And other than that, if it doesn't come

19  forward for one reason or another, we'll stay with the trial,

20  we'll schedule a March 2 final pretrial and March 9 for the

21  trial, and we'll enter an Order.

22          Okay.  Anything else today?

23          MR. ZAMBON:  Thank you, Your Honor.

24          MR. TERRELL:  Thank you, Your Honor.

25          THE COURT:  Okay.  Thank you.

1          *THE CLERK:*  Court is adjourned.

2          *(Proceeding concluded at 11:17 a.m.)*

3                    *   *   *   *   *

4          I certify that the foregoing is a correct transcript

5     from the record of proceedings in the above-entitled matter.

6

7     Date:  March 29, 2010

8

9                              **/s/ Glenda Trexler**
                               _____
10                             Glenda Trexler, CSR-1436, RPR, CRR

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25