1    IN THE UNITED STATES DISTRICT COURT

2    FOR THE WESTERN DISTRICT OF MICHIGAN

3    SOUTHERN DIVISION

4

5    UNITED STATES OF AMERICA,

6        Plaintiff,

7    v.                              CASE NO:  1:08-CR-274

8    EMOND DUREA LOGAN,

9        Defendant.

10    _____/

11                * * * *

12            CHANGE OF PLEA HEARING

13                * * * *

14

15    BEFORE:   THE HONORABLE PAUL L. MALONEY, CHIEF JUDGE
                United States District Judge
16              Kalamazoo, Michigan
                September 13, 2010
17
      APPEARANCES:
18
      APPEARING ON BEHALF OF THE PLAINTIFF:
19
          BRIAN P. LENNON
20        Assistant United States Attorney
          P.O. Box 208
21        Grand Rapids, Michigan  49501-0208

22    APPEARING ON BEHALF OF THE DEFENDANT:

23        SCOTT GRAHAM
          2911 West Centre Avenue, Suite C
24        Portage, Michigan  49024

25

1        Kalamazoo, Michigan

2        September 13, 2010

3        at approximately 10:06 a.m.

4                    PROCEEDINGS

5        THE COURT:  This 08-274; The United States of America

6    vs. Emond Logan.  This matter is before the Court for a

7    change of plea proceeding.

8        The record should reflect that Assistant United

9    States Attorney Brian Lennon is here on behalf of the

10    government.  Attorney Scott Graham, who was

11    court-appointed by the Court pursuant to a previous order,

12    is present in person representing Mr. Logan.  Mr. Logan is

13    present in person.

14        Counsel, this is a change of plea proceeding pursuant

15    to a plea agreement, is that correct, Mr. Lennon?

16        MR. LENNON:  Yes, your Honor.

17        THE COURT:  The Court has in its possession Docket

18    Number 334, which is a plea agreement containing the

19    signatures of the defendant; Mr. Leo James Terrell,

20    co-counsel for the defendant; as well as Attorney Scott

21    Graham.  Mr. Graham's signature is dated September 10th;

22    Mr. Logan's signature is dated August 27th; and

23    Mr. Terrell's signature is dated August 21st.

24        By previous order of the Court, the Court appointed

25    Attorney Scott Graham in an abundance of caution to make

1    sure that entry into this plea agreement was in the best

2    interests of the defendant from the perspective of the

3    defendant, Mr. Terrell having a, what the Court determined

4    to be a conflict of interest in his representation of

5    others.  I also appointed counsel to represent those

6    defendants.

7         Mr. Graham, have you had ample opportunity, sir, of

8    reviewing the circumstances of this case with your client,

9    Mr. Logan, and are you satisfied concerning the plea

10   agreement?

11        MR. GRAHAM:  Your Honor, I have had time to confer

12   with Mr. Logan in order to determine the appropriateness

13   of the plea agreement from his perspective.  Perhaps more

14   important, I've had time to evaluate evidence that the

15   government would use against him independently from what

16   he has told me.  So I've been able to actually take a look

17   at what I think the government would produce in the way of

18   proof, if it went to trial against Mr. Logan.  And based

19   upon all of those things, I believe that the plea

20   agreement that was previously signed by Mr. Logan and

21   Mr. Terrell is appropriate, with only one exception that

22   doesn't impact the substantive nature, and that is the

23   conflict-- the conflict waiver.  I think that I've been

24   able to do enough work so that I understand that Mr. Logan

25   will waive any claim of conflict as it relates to

1    Mr. Terrell, but it is my opinion that his plea before

2    this Court is not tainted in any way by a conflict in

3    terms of the analysis of the plea.  So there is a written

4    provision there, rather than change that, we just thought

5    we would put something on the record on that.

6        THE COURT:  Thank you, Counsel, I appreciate that.

7        Mr. Logan, you've had ample opportunity, sir, of

8    reviewing your case with Mr. Graham, is that correct, sir?

9        THE DEFENDANT:  Yes, sir.

10       THE COURT:  And are you satisfied with his work and

11   representation of you?

12       THE DEFENDANT:  Yes, I am.

13       THE COURT:  Do you understand everything that

14   Mr. Graham just told me?

15       THE DEFENDANT:  Yes.

16       THE COURT:  Do you agree with it?

17       THE DEFENDANT:  Yes.

18       THE COURT:  All right, sir.

19       Mr. Lennon, anything in the nature of a preliminary

20   statement from you?

21       MR. LENNON:  No, your Honor.

22       And we would concur with Mr. Graham's analysis.  And

23   to go further on that, your Honor, we believe that with

24   respect to the Court's ruling in appointing Mr. Graham,

25   and now if this plea indeed goes forward, that really the

1    conflict no longer becomes even an issue at all, because

2    as independent counsel has looked at it, and if indeed

3    Mr. Logan is willing to go through with the plea, we think

4    it's really for the most part, a moot issue at that

5    point.

6    Thank you.

7    THE COURT:  All right.  Thank you.

8    Well, that of course was my concern at the last

9    hearing.  I did believe that Mr.-- and still do-- that

10    Mr. Logan needed independent advice, and that's why I

11    appointed Mr. Graham, and I'm satisfied that that has been

12    accomplished.

13    All right.  Mr. Logan, the plea agreement calls for

14    you to plead guilty to Count One of the Second Superceding

15    Indictment, is that what you wish to do, sir?

16    THE DEFENDANT:  Yes, sir.

17    THE COURT:  All right, sir.  In order to take a plea

18    of guilty from you, I must place you under oath.  Would

19    you raise your right hand.

20    THE DEFENDANT:  Do you want me to stand up?

21    THE COURT:  If you wish, sir.

22    EMOND DUREA LOGAN - DEFENDANT - SWORN

23    THE COURT:  Thank you, sir.

24    You may be seated.

25    How old are you, Mr. Logan?

1      THE DEFENDANT:  Forty-nine.

2      THE COURT:  And how far did you go in school?

3      THE DEFENDANT:  Twelfth grade.

4      THE COURT:  So you are able to read and write the

5  English language?

6      THE DEFENDANT:  Yes.

7      THE COURT:  Have you taken any prescription

8  medication or any other substance which might affect your

9  ability to understand what is occurring here today?

10      THE DEFENDANT:  No.

11      THE COURT:  Do you understand what I'm saying to you?

12      THE DEFENDANT:  Yes, sir.

13      THE COURT:  If at any time I say something you don't

14  understand, I want you to ask me questions.  Do you

15  understand?

16      THE DEFENDANT:  Yes.

17      THE COURT:  Have you had ample opportunity of

18  reviewing your case and the wisdom of this plea agreement

19  from your perspective with Mr. Graham?

20      THE DEFENDANT:  Yes.

21      THE COURT:  And are you satisfied with his work and

22  representation of you?

23      THE DEFENDANT:  Yes.

24      THE COURT:  You understand, sir, that you have the

25  absolute right to continue your plea of not guilty and

1    proceed to trial on these matters.  Do you understand

2    that?

3        THE DEFENDANT:  Yes, I do.

4        THE COURT:  Throughout those proceedings, you would

5    have the absolute right to be represented by counsel at

6    the-- at all proceedings in this matter.  Do you

7    understand that?

8        THE DEFENDANT:  Yes.

9        THE COURT:  All right, sir.

10        Mr. Lennon, would you review the highlights of the

11    plea agreement, sir.

12        MR. LENNON:  Yes, your Honor.

13        Your Honor, pursuant to the plea agreement, in

14    Paragraph 1, Mr. Logan agrees to plead guilty to Count One

15    of the Second Superceding Indictment.

16        Paragraph 2 simply sets forth the elements of the

17    crime.

18        Paragraph 3, your Honor, sets forth the penalties.

19        Paragraph 4 contains some stipulations, which if the

20    Court would let me just highlight.

21        In Paragraph 1, the parties are stipulating that

22    between on or about an unknown date in 2004 and continuing

23    through in or about January, 2007, as alleged in the

24    charge, that the defendant was the courier for Alvin Keith

25    Jackson, who is the defendant's wife's brother.  As the

1   courier for Mr. Jackson, and at Mr. Jackson's direction,

2   the defendant, Mr. Logan, transported loads of cocaine

3   from Los Angeles, California area to the Detroit, Michigan

4   area, using a tractor trailer.  The defendant also

5   transported loads of drug proceeds in the form of U.S.

6   currency from Michigan to California at Mr. Jackson's

7   direction, and via the interstate highways, including

8   Interstate 94 in both the Western and Eastern Districts of

9   Michigan.

10      Defendant acknowledges that at trial, the government

11   would be able to prove that some of this cocaine he

12   delivered for Alvin Jackson was later distributed in and

13   around the Lansing, Michigan area, by AHH DEE AHH, a

14   Detroit-based drug trafficking organization operating in

15   the Lansing, Michigan area.

16      Further, there was a mutual understanding between

17   Alvin Keith Jackson-- between the defendant, Mr. Jackson

18   and others, to financially benefit from Alvin Keith

19   Jackson's cocaine trafficking between California and

20   Michigan.

21      The parties also agree that over the course of this

22   conspiracy the defendant transported over 150 kilograms of

23   cocaine for and at the direction of Mr. Jackson.

24      Finally, the parties stipulate that it was further

25   part of the conspiracy that the defendant used some

1   portion of his drug proceeds to pay for various motor

2   vehicles, including a tractor trailer, the mortgage for

3   his residence located at 19058 Springbrook Court,

4   Riverside, California, and items of personal property,

5   credit card bills, and other living expenses from sometime

6   in 2004 through in or about August, 2009.

7      Now, the promises that Mr. Logan is making in

8   consideration of this plea agreement are as follows:

9      First, to fully cooperate with law enforcement,

10   that's ATF, my office, the Lansing Police, any other law

11   enforcement agencies, not only about the charges in this--

12   that are set forth in this Indictment, but any other

13   charges or violations of the law that we have apparent or

14   general jurisdiction over. The defendant will agree to

15   submit to polygraph examinations upon request as part of

16   his obligation to cooperate.

17      Paragraph B talks about his waiver of any conflict of

18   interest challenge, which again, the government's position

19   is if this plea goes forward with Mr. Graham today, is

20   probably moot.

21      Paragraph C says that the defendant is going to waive

22   some of his appellate rights. Essentially he waives the

23   right to challenge any sentence, or the way it came about,

24   that is within the guideline range. He also retains-- he

25   has the opportunity to appeal any sentence that is above

1    the guideline range or any objections that he's preserved

2    at sentencing.  And of course, there's some other ones in

3    there about preserving the right for a sentence above the

4    maximum, but the maximum is life in this case, and also

5    anything that would-- any sentence that would be based on

6    some kind of improper or illegal criteria, like age, race,

7    religion, those kind of things.

8        This is an important paragraph here for the

9    government.  That is, Mr. Logan is agreeing to consent to

10    the forfeiture of all the property listed in the Second

11    Superceding Indictment.

12        Now, at this point, we only believe he has really

13    rights to certain properties in here, your Honor,

14    specifically in the accounts W through AAA, the vehicles

15    HHH through OOO.  As far as real property, the very last

16    one is the home on Springbrook, and that is CC.  And then

17    with respect to personal property, there are some items of

18    personal property listed just generally discussed in

19    Paragraph 4-- 4A.

20        Now, just for the record, your Honor, there was some

21    other property taken from Mr. Logan's house during the

22    execution of search warrants in September, and that's

23    covered in here as well, but not listed in the Indictment,

24    some flat screen TVs, a Laker's lithograph, but Mr. Logan

25    is willing to give up his rights to all of that property

1    in consideration of the other promises made in this plea

2    agreement.

3        Your Honor, the promises made by my office are

4    contained in Paragraph 6.  Obviously at sentencing to

5    dismiss Count Three, which is the money laundering

6    conspiracy.

7        In 6B is to not bring additional charges against

8    Mr. Logan, provided he has told us about those

9    violations.  Of course, that standardly does not include

10   crimes of violence or any criminal tax violations.

11       Paragraph 6C, we are not going to oppose his request

12   for acceptance of responsibility.  And in light of the

13   fact that Mr. Logan is pleading guilty after the Court's

14   order, if the Court determines that because of the counsel

15   situation it was indeed a timely plea, we certainly would

16   have no objection to that, your Honor.

17       Paragraph 6D says we are not-- it's essentially a

18   retelling of 1B1.8.  We are not going to use the

19   information Mr. Logan told us about either in his proffer

20   or pursuant to this cooperation agreement to enhance his

21   sentence.

22       And Paragraph 6E is potentially a very important one

23   to Mr. Logan, that is that we will certainly evaluate the

24   information he gives us and decide whether any sentence

25   reduction or downward departure motions are appropriate.

1    The defendant acknowledges it's not a promise to make such

2    a motion and he can't appeal the Court's decision to deny

3    any such motion, but we'll certainly evaluate the

4    information he's provided.

5        Paragraph 7, your Honor, is just the consequences of

6    breach.

7        Paragraph 8 mentions the guidelines are advisory, not

8    mandatory.

9        Paragraph 9 simply says the Court is not a party to

10    this agreement, is not obligated to follow any of the

11    recommendations or stipulations of the parties.

12        We had a deadline for acceptance, your Honor, and

13    that was August 26, but we had agreed with Mr. Terrell to

14    move that because of logistical reasons.  He wasn't able

15    to even get here until the 27th, and sit with Mr. Logan.

16        And then, your Honor, this is--  Finally, this is the

17    complete agreement.  I don't think-- there are no other

18    parts of the agreement other than I think the kind of

19    clarifications that counsel made with respect to the issue

20    of the conflict of interests, but there is no other

21    promises other than those contained in this plea

22    agreement.

23        THE COURT:  All right.  Thank you.

24        For purposes of the record, the Court will state that

25    under the circumstances here, I think third level of

1    acceptance will be granted, so that's-- to the extent that

2    might be of concern, I recognize the dynamics of the

3    situation, so I think third level is appropriate in this

4    instance.

5        Mr. Graham, is that the plea agreement, sir?

6        MR. GRAHAM:  It is, your Honor.

7        THE COURT:  All right.  Thank you.

8        Mr. Logan, is that your understanding of the plea

9    agreement, sir?

10        THE DEFENDANT:  Yes, sir.

11        THE COURT:  Do you have any questions about it?

12        THE DEFENDANT:  No.

13        THE COURT:  Do you understand that the Court is not a

14    party to the agreement?

15        THE DEFENDANT:  Yes, I do.

16        THE COURT:  At this time, I have no idea what your

17    sentence might be, other than it can be no more than

18    life.  Do you understand that?

19        THE DEFENDANT:  Yes.

20        THE COURT:  And you understand that the maximum-- the

21    mandatory minimum is ten years in prison?

22        THE DEFENDANT:  Yes.

23        THE COURT:  Do you understand that?

24        THE DEFENDANT:  Yes.

25        THE COURT:  All right.  One other provision-- couple

1   of other provisions that I want to go over with you,

2   Mr. Logan, is your waiver of direct appeal and your right

3   to file a petition pursuant to Section 2255.

4       First, do you understand that you are-- under the

5   plea agreement, you're waiving your right to appeal any

6   sentence that is at or below the maximum advisory

7   guideline range as determined by the Court at sentencing.

8   Do you understand that?

9       THE DEFENDANT:  Yes.

10      THE COURT:  Now, this does not give up your right to

11  challenge the scoring of the guidelines, you have a right

12  to do that.  But the essence of the plea agreement is that

13  if the guidelines have been scored correctly, and I

14  sentence you within the guidelines, you give up your right

15  to appeal.  Do you understand that?

16      THE DEFENDANT:  Yes.

17      THE COURT:  You retain your right to appeal a

18  sentence above the maximum of the advisory guideline

19  range, and also to appeal any objections that you have

20  that the Court incorrectly scored the guidelines.  Do you

21  understand?

22      THE DEFENDANT:  Yes.

23      THE COURT:  Obviously it's not within my power to

24  give you a sentence greater than life, but do you

25  understand that the maximum for the offense is life, and

1    that therefore, to the extent that there is an agreement

2    here that you can appeal a sentence that exceeds the

3    statutory maximum, that really doesn't apply here?

4        THE DEFENDANT:  Yes, sir.

5        THE COURT:  Now, you are also giving up your right to

6    challenge the sentence by way of collateral attack

7    pursuant to 28 U.S. Code 2255.  Do you understand that?

8        THE DEFENDANT:  Yes.

9        THE COURT:  And while the Court believes and both

10    counsel believe that any difficulty or taint from the fact

11    that Mr. Terrell was representing you and several

12    co-defendants has been dissipated, you are clearly, under

13    the plea agreement, giving up your right to a claim of

14    ineffective assistance of counsel by Mr. Terrell.  Do you

15    understand that?

16        THE DEFENDANT:  Yes, sir.

17        THE COURT:  Now, the Court is going to be required to

18    calculate the advisory sentencing guideline range in this

19    case.  Do you understand that?

20        THE DEFENDANT:  Yes.

21        THE COURT:  The guidelines are advisory to the

22    Court.  That means I don't necessarily have to follow

23    them.  I can go above them, I can go below them, I can

24    stay within the range.  It's the starting point for the

25    Court, and it's just that, advisory.  Do you understand?

1    THE DEFENDANT: Yes, sir.

2    THE COURT: Okay. All right. And you heard

3    Mr. Lennon's statement regarding the forfeiture provisions

4    of the plea agreement. Do you have any questions about

5    those?

6    THE DEFENDANT: No.

7    THE COURT: Do you agree to them?

8    THE DEFENDANT: Yes.

9    THE COURT: All right, sir. In Count One of the

10   Second Superceding Indictment, it's alleged that beginning

11   on or about an unknown date in the mid-1990s, and

12   continuing through on or about an unknown date in 2009, in

13   the Southern Division of the Western District of Michigan

14   and elsewhere, you and others named in the Indictment did

15   combine, conspire, confederate, and agree together with

16   Alvin Keith Jackson, Donnie Charles, Lindell Brown,

17   Felicia Blake, Tamara Hughes, Kevin Emerson, also known as

18   Kenneth Coleman, and other persons both known and unknown

19   to the grand jury, to knowingly, intentionally, and

20   unlawfully distribute and possess with intent to

21   distribute five kilograms or more of a mixture or

22   substance containing a detectable amount of cocaine, a

23   Schedule II controlled substance. Do you understand that

24   charge?

25   THE DEFENDANT: Yes.

1       THE COURT:  The maximum term of imprisonment for this

2   offense is life in prison.  Do you understand?

3       THE DEFENDANT:  Yes.

4       THE COURT:  There is a mandatory minimum provision of

5   ten years in prison.  Do you understand?

6       THE DEFENDANT:  Yes, sir.

7       THE COURT:  The maximum fine is $4 million.  Do you

8   understand?

9       THE DEFENDANT:  Yes.

10      THE COURT:  The Court can place you on supervised

11  release for-- or must place you on supervised release for

12  at least five years.  Do you understand that?

13      THE DEFENDANT:  Yes.

14      THE COURT:  The special assessment of $100 will be

15  ordered in this case, upon your sentencing.  Do you

16  understand?

17      THE DEFENDANT:  Yes.

18      THE COURT:  The Court may order any restitution, if

19  there is any.  The forfeiture provisions also apply, and

20  we have already explained those during the course of this

21  proceeding.  Do you understand that?

22      THE DEFENDANT:  Yes.

23      THE COURT:  All right, sir.  How do you wish to plead

24  to Count One of the Second Superceding Indictment?

25      THE DEFENDANT:  Guilty.

1    THE COURT:  Do you understand, sir, that by pleading

2    guilty, you'll be giving up your right to a trial?  There

3    will be no trial of any kind.  Do you understand that?

4    THE DEFENDANT:  Yes.

5    THE COURT:  You have the right to a jury trial of

6    twelve persons or the right to be tried by a judge alone

7    without a jury.  These rights you give up if you plead

8    guilty, do you understand?

9    THE DEFENDANT:  Yes.

10   THE COURT:  You would be giving up your right to be

11   presumed innocent of this offense until proven guilty, and

12   the right to have the government prove beyond a reasonable

13   doubt that you are guilty.  These rights you also give up

14   if you plead guilty, do you understand?

15   THE DEFENDANT:  Yes.

16   THE COURT:  You would be giving up your right to

17   cross examine the witnesses that the government calls in

18   support of their case, through your lawyer.  That is your

19   right of confrontation under the Constitution.  This right

20   you also give up if you plead guilty, do you understand?

21   THE DEFENDANT:  Yes.

22   THE COURT:  You would be giving up the right to call

23   witnesses at the trial if you wanted to, to compel the

24   attendance of those witnesses in court through the

25   subpoena power of the Court, and to present any other

1   evidence you have for your defense.  These rights you also

2   give up if you plead guilty, do you understand?

3       THE DEFENDANT:  Yes.

4       THE COURT:  You would have the absolute right to

5   testify at the trial if you wanted to.  On the other hand,

6   you have the absolute right to remain silent, and that

7   silence cannot be used against you in any way.  Do you

8   understand that?

9       THE DEFENDANT:  Yes.

10      THE COURT:  The government could not call you as a

11  witness at the trial, that's your right against compelled

12  self incrimination.  Do you understand that?

13      THE DEFENDANT:  Yes.

14      THE COURT:  Do you understand, sir, that if you plead

15  guilty and I accept your plea, you'll be forever giving up

16  your right to a trial and all the other rights that we

17  have talked about?

18      THE DEFENDANT:  Yes.

19      THE COURT:  If I accept your guilty plea, this will

20  result in a conviction of the offense, and it will be my

21  obligation and duty to sentence you on that crime.  Do you

22  understand?

23      THE DEFENDANT:  Yes.

24      THE COURT:  Has anybody threatened or coerced you

25  into pleading guilty?

1       THE DEFENDANT:  No.

2       THE COURT:  Have there been any promises of leniency

3   or benefit, others than those contained in the plea

4   agreement?

5       THE DEFENDANT:  No.

6       THE COURT:  Any predictions of what the sentence

7   might be if you plead guilty?

8       THE DEFENDANT:  No.

9       THE COURT:  Are you pleading guilty freely and

10   voluntarily because are you, in fact, guilty of the

11   offense?

12       THE DEFENDANT:  Yes, sir.

13       THE COURT:  All right, sir.  Tell me what you did

14   that leads you to believe that you are guilty of this

15   offense, but I-- and I don't want to put words in your

16   mouth, but I assume this happened between the mid-1990s

17   continuing through on or about an unknown date in 2009,

18   and that the crime occurred in the Southern Division of

19   the Western District of Michigan; is that correct?

20       THE DEFENDANT:  Yes, sir.

21       THE COURT:  And did you agree with Mr. Alvin Keith

22   Jackson and others to deliver cocaine from the State of

23   California into the State of Michigan?

24       THE DEFENDANT:  Yes.

25       THE COURT:  And did you know that at least part of

1 those drugs were going to be distributed by this drug

2 organization or gang organization, the AHH DEE AHH

3 organization?

4     THE DEFENDANT:  I didn't know per se, but I knew they

5 were going to be distributed.

6     THE COURT:  And you knew that distribution was going

7 to occur in the Western District and the Eastern District

8 of Michigan?

9     THE DEFENDANT:  Yes, sir.

10     THE COURT:  Who instructed you to deliver the drugs

11 to Michigan from California?

12     THE DEFENDANT:  Alvin Keith Jackson.

13     THE COURT:  And was a statement in the statement of

14 facts that indicates that the total amount of drugs here

15 was approximately 150 kilograms of cocaine; is that

16 correct?

17     THE DEFENDANT:  Yes, sir.

18     THE COURT:  I take it that not only did you transport

19 the drugs from California to Michigan, but you collected

20 money here in the State of Michigan, and transported the

21 money from the State of Michigan back to California?

22     THE DEFENDANT:  Yes.

23     THE COURT:  At whose instructions did you deliver the

24 money?

25     THE DEFENDANT:  Alvin Keith Jackson.

1        THE COURT:  And did you deliver all of the money to

2    him?

3        THE DEFENDANT:  Yes.

4        THE COURT:  No question that you knew that this was

5    cocaine you were delivering, correct?

6        THE DEFENDANT:  Yes.

7        THE COURT:  And no doubt you knew also that the money

8    that you were taking from Michigan and California was

9    proceeds from drug sales; is that correct?

10       THE DEFENDANT:  Yes, sir.

11       THE COURT:  And you knew obviously that this was

12   illegal, correct?

13       THE DEFENDANT:  Yes.

14       THE COURT:  And you did it anyway?

15       THE DEFENDANT:  Yes.

16       THE COURT:  Mr. Lennon, any additional facts?

17       MR. LENNON:  Not on the substantive charges, just on

18   the forfeiture, if I may, your Honor.

19       THE COURT:  All right.  Thank you.

20       Mr. Lennon has outlined in his previous statement all

21   of the property that you've agreed to forfeit pursuant to

22   the plea agreement.  Were those items, whether they be

23   real or personal property, purchased with drug proceeds?

24       THE DEFENDANT:  Yes, sir.

25       THE COURT:  Satisfied?

1          MR. LENNON:  I am, your Honor.

2          THE COURT:  All right.  Thank you.

3          Mr. Graham, satisfied with the facts?

4          MR. GRAHAM:  Yes, your Honor.

5          THE COURT:  The Court is also so satisfied.  I find

6    the plea to be freely and voluntarily made without any

7    undue influence, promises of leniency or benefit, except

8    as stated in the plea agreement.

9          The Court finds no evidence of coercion.

10          The facts as contained in Count One of the Second

11    Superseding Indictment is factually accurate.  The

12    defendant is actually guilty of the offense contained in

13    Count One and stands convicted thereof.

14          The Court will take the plea agreement under

15    advisement pending sentencing.

16          A presentence report is ordered.

17          The defendant is remanded to the custody of the

18    marshal to await sentencing.

19          Anything further?

20          MR. LENNON:  Well, your Honor, there are some pending

21    motions as to Mr. Logan-- Emond Logan, I assume those

22    motions are all--

23          THE COURT:  Withdrawn.

24          MR. LENNON:  --withdrawn?

25          THE COURT:  Mr. Graham?

1    MR. GRAHAM:  Yes, your Honor.

2    MR. LENNON:  That's all.  Thank you, your Honor.

3    THE COURT:  Mr. Graham, anything further?  Go ahead.

4    MR. GRAHAM:  From my perspective, your Honor, I guess

5    I just want to make sure that I have the Court's guidance

6    regarding my assignment in this case.  I'm willing to stop

7    now, I'm willing to continue.  I'm willing to do whatever

8    you want me to do.  But I guess I feel in light of the

9    nature of the appointment that maybe I need some further

10    guidance from the Court, and I'm not sure if inquiry of

11    Mr. Logan is relevant.  I defer to the Court on that.

12    THE COURT:  All right.  Thank you.

13    My preference, Mr. Graham, is for you to remain in

14    the case until sentencing is concluded.

15    Mr. Logan, do you object to that in any way?

16    THE DEFENDANT:  No, I concur.

17    THE COURT:  Okay.  So consider yourself continued.

18    MR. GRAHAM:  All right.  Thank you.

19    THE COURT:  Defendant is remanded to the custody of

20    the marshal to await sentencing.

21    MR. LENNON:  Thank you, your Honor.

22    COURT CLERK:  All rise, please.

23    Court is in recess.

24    (At 10:33 a.m., proceedings were concluded.)

25

1

2

3

4                   REPORTER'S CERTIFICATE

5

6

7          I, Kathleen S. Thomas, Official Court Reporter for

8     the United States District Court for the Western District

9     of Michigan, appointed pursuant to the provisions of Title

10    28, United States Code, Section 753, do hereby certify

11    that the foregoing is a true and correct transcript of

12    proceedings had in the within-entitled and numbered cause

13    on the date hereinbefore set forth; and I do further

14    certify that the foregoing transcript has been prepared by

15    me or under my direction.

16

17

18                  /s/
                    _____
19                   Kathleen S. Thomas, CSR-1300, RPR
                    U.S. District Court Reporter
20                   410 West Michigan
                    Kalamazoo, Michigan   49007
21

22

23

24

25