UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
- - - - - - - -

EMOND DUREA LOGAN,

       Movant,                        No.1:08-CR-274

vs.                                    Hon. Paul L. Maloney
                                      Chief United States District Judge

UNITED STATES OF AMERICA,

       Respondent.
_____/

## RESPONSE OF THE UNITED STATES IN OPPOSITION TO MOTION FOR RELIEF PURSUANT TO 28 U.S.C. § 2255

The government respectfully requests that the Court deny Movant Emond Durea Logan's motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence without a hearing because the record establishes that Mr. Logan is not entitled to collateral relief.

Mr. Logan argues he did not receive effective assistance of counsel during plea negotiations with the government based on the advice of Leo Terrell, an attorney who was not his counsel of record at the time of the alleged ineffective assistance. Mr. Logan's claim lacks merit because the record reflects that Logan received competent and effective assistance of counsel from his appointed counsel of record, Richard Zambon. Mr. Logan also has not carried his burden of demonstrating that Mr. Terrell was constitutionally ineffective. Finally, Mr. Logan has not shown prejudice because the plea agreement he rejected was subject to Judge Jonker's acceptance of a proposed agreement under Federal Rule of Criminal Procedure 11(c)(1)(C) and because his subsequent conduct would have breached that plea agreement. Thus, Mr. Logan cannot demonstrate that his Sixth Amendment right to effective assistance of counsel was violated, and the Court should deny his motion.

# FACTS AND PROCEDURAL HISTORY

## A. Initial Proceedings

On September 2, 2009, a grand jury in the Western District of Michigan returned an indictment charging Emond Durea Logan with conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A) (Count 1); and conspiracy to launder money in violation of 18 U.S.C. §§ 1956(h) and 1957 (Count 2). (R1.1: Indictment.)[1] The case was assigned to Judge Robert Jonker, under Docket No. 1:09-CR-245.

On October 2, 2009, the Court appointed attorney Richard Zambon to represent Mr. Logan. (R1.8: CJA Appointment.) After the government provided Mr. Zambon with voluminous discovery materials, including "6 CDs, lab reports, police reports, search warrants, photos, and copies of the defendant's tax returns," Mr. Zambon reviewed and discussed all of the materials with Mr. Logan. (R.918: Zambon Affidavit ¶ 7, ID#9653.) Mr. Zambon also advised Mr. Logan of his rights and his plea options. (*Id.* at ¶¶ 8, 12, 13, 17, 20, 21, ID#9653-56.)

On October 18, 2009, attorney Leo Terrell notified Mr. Zambon that Mr. Logan's family had contacted Mr. Terrell about representing Mr. Logan. (R.918: Zambon Affidavit ¶ 9, ID#9653.) Although Mr. Logan confirmed this to Mr. Zambon on October 20, 2009, Mr. Terrell did not file a motion to substitute as Logan's counsel until February 4, 2010—more than three months later. (*Id.* ¶ 10, 15, ID#9653-54.) Meanwhile, as counsel of record, Mr. Zambon continued to represent Mr. Logan and repeatedly met with him. (*Id.* at ¶ 13, ID#9654.) Mr. Zambon advised Mr. Logan about his chances at trial, the evidence against him, the government's plea offers, and the relevant sentencing guidelines. (*Id.* at ¶ 12-13, 17, ID#9654-

---

[1] References to the docket for case number 1:09-CR-245-RJJ are described as "R1." References to the docket for case number 1:08-CR-274-PLM are described as "R."

2

55.) Mr. Zambon also expressed his doubts to Mr. Logan as to whether Mr. Terrell would ever file his appearance as counsel and whether Judge Jonker would accept Mr. Terrell's appearance as counsel due to the potential conflict of interest resulting from Mr. Terrell's simultaneous representation of Mr. Logan's family members. (*Id.* at ¶ 16, ID#9654-55.)

**B. Judge Jonker Denies Mr. Terrell's Motion to Substitute as Counsel.**

On February 17, 2010, Judge Jonker held a hearing on Mr. Terrell's motion to substitute as counsel. The Court questioned the attorneys regarding the timeliness of the motion, conflict of interest issues that might arise from Mr. Terrell's representation of Mr. Logan, and Mr. Terrell's stated interest in filing motions challenging the sufficiency of the indictment, affidavits, and venue. (*See generally* R1.41: Tr. of Hearing on Mot. to Withdraw.) Mr. Logan expressed concern that Mr. Zambon had not filed any motions on his behalf. (R1.41: Tr. of Hearing on Mot. to Withdraw at 32-33.)

At that hearing, the government indicated that it planned to file a superseding indictment in a separate multi-defendant case, *United States v. Jackson*, case number 1:08-CR-274, in order to add Mr. Logan. (*Id.* at 25-27.) If that occurred, it planned to dismiss the single-defendant case pending before Judge Jonker. (*Id.* at 27, 31.)

At the conclusion of the hearing, Judge Jonker denied Mr. Terrell's motion for substitution of counsel and Mr. Zambon's motion to withdraw as counsel. (R1.35: Order Denying Mot. to Withdraw.) Judge Jonker recognized that, "to the extent there's any difficulty in the relationship [between Mr. Logan and Mr. Zambon], it's somewhat self-imposed and self-inflicted by Mr. Logan." (R1.41: Tr. of Hearing on Mot. to Withdraw at 38.) The Court found Mr. Terrell's motion to substitute as counsel untimely, noting:

> The Court can't have counsel, capable or otherwise, out there unofficially handling cases on behalf of a defendant. When someone wants to represent a

defendant in the court, they need to come. They need to come timely. And that could have happened as early as October or November, or certainly shortly after the Court made it clear that the longer people waited, the less likely it was going to be granted.

(*Id.* at 42.) Additionally, the court recognized a conflict of interest stemming from Mr. Terrell's representation of Mr. Logan's family members. (*Id.* at 41-42.) It also expressed concern that Mr. Terrell wished to file motions challenging the sufficiency of the indictment, affidavits, and venue, and that those motions were no longer timely. (*Id.* at 10.) It recognized, though, that its decision was likely moot if the government filed a superseding indictment in the case pending before this Court and dismissed the indictment before Judge Jonker. (*Id.* at 36-37.)

### C. Mr. Zambon Negotiates a Plea Agreement that Mr. Logan Rejects after Consulting with Mr. Terrell.

Two days after Mr. Terrell's motion to substitute counsel was denied, Mr. Zambon reviewed a plea offer with Mr. Logan. (R.918: Zambon Affidavit ¶ 20, ID#9655.) Mr. Logan initially accepted the offer and signed a plea agreement that included a 10-year sentencing cap pursuant to Fed. R. Crim. P. 11(c)(1)(C), which was filed on February 19, 2010. (*Id.* ¶¶ 20-21, ID#9655-56; R1.37: Plea Agreement.) The plea agreement stated:

> The Defendant realizes that this charge [conspiracy to distribute five kilograms or more of cocaine] is punishable by a mandatory minimum of 10 years and a maximum sentence of life in prison, a maximum fine of $4,000,000, a period of supervised release following incarceration of not less than five (5) years, and a mandatory $100 special assessment. **The Parties, however, respectfully submit this binding plea agreement for the Court's consideration and agree herein that the Defendant should be sentenced to a term of imprisonment of not more than 120 months (10 years) based on his conduct, criminal history, and cooperation with law enforcement. This proposed 120-month sentence cap is intended to be binding on the Court as provided by Federal Rule of Criminal Procedure 11(c)(1)(C). Consequently, the Parties understand that if this Honorable Court were to manifest an intent to sentence the Defendant to a term of imprisonment for more than 120 months, the Defendant can withdraw his guilty plea.**

(R1.37: Plea Agreement at 2, ¶ 3 (emphasis in original); *see also id.* at 10-11, ¶¶ 8-9.) In other

4

words, the plea agreement would not have prevented Judge Jonker from sentencing Mr. Logan to more than 120 months' incarceration, but would have allowed Mr. Logan to withdraw his guilty plea if Judge Jonker indicated that he intended to do that. As part of the plea agreement, Mr. Logan agreed to cooperate with law enforcement, including by providing truthful information and not committing "any criminal offense during the course of his cooperation with the United States." (*Id.* at 4, ¶ 5(A).) The government also agreed to move to release the 10-year statutory minimum and not to bring charges against Mr. Logan's wife, brother, and sister-in-law. (*Id.* at 6, 8-9, ¶¶ 6(B), (G).) The plea agreement noted that if Mr. Logan breached any provision of the agreement, the government would have a right to terminate the agreement. (*Id.* at 9, ¶ 7.)

Three days later, at the change of plea hearing on February 22, 2010, Mr. Logan told the court that he had determined not to plead guilty. (R.918: Zambon Affidavit ¶ 25, ID#9656.) In the intervening weekend, Mr. Logan had spoken with Mr. Terrell and had determined not to plead guilty under those terms. (*Id.*, ¶ 24.)

**D. The Government Dismisses the Indictment before Judge Jonker, and Mr. Terrell Represents Mr. Logan in Proceedings before this Court.**

On February 24, 2010, the government obtained a Second Superseding Indictment in *United States v. Alan Jackson*, No. 1:08-CR-274, which proceeded in this Court and added Mr. Logan and a number of his family members to cocaine conspiracy and money laundering conspiracy counts. (R.201: Second Superseding Indictment.) Subsequently, the government dismissed the indictment against Mr. Logan in No. 1:08-CR-245. (R1.40: Order Dismissing Indictment.) Mr. Terrell appeared on behalf of Mr. Logan in Case No. 1:08-CR-274 and filed motions for bail, to dismiss the indictment for improper venue, to sever the trial of Mr. Logan and his family members from that of the co-defendants, and to compel discovery. (R.221: Mot. for Bail; R.222: Mot. to Dismiss Indictment; R.269: Mot. to Sever; R.282: Mot. to Compel

5

Discovery.) Mr. Terrell also filed an objection to the government's initial pretrial conference summary statement. (R.277: Objection.) Mr. Logan was granted bond and was released on an unsecured appearance bond on March 18, 2010. (R.271: Tr. of Det. Hearing, ID#1273-74.)

On July 14, 2010, the government filed a motion for revocation of bond, alleging that Mr. Logan violated the conditions of his bond by engaging in continued criminal conduct while on release in the Central District of California. (R.301: Motion to Revoke Bond, ID#1627.) The government alleged that Mr. Logan attempted to obstruct justice by contacting potential witnesses, planning the murder of a key government witness, and making threats against AUSA Brian Lennon. (*Id.*, ID#1627-29.) The government also alleged that Mr. Logan was assisting in financing a drug operation (different from the charged conspiracy) that ATF uncovered in June 2010. (*Id.*, ID#1628.) Mr. Logan was ordered detained. (R.308-6: Order of Detention, ID#1505; R.317: Order, ID#1620.)

Because Mr. Terrell also represented Mr. Logan's co-defendant family members, the government filed a motion to disqualify Mr. Terrell based on his conflict of interest. (R.311: Motion.) Mr. Terrell filed an opposition to that motion. (R.322: Opposition, ID#1635.) After a hearing, the Court disqualified Mr. Terrell from representing Mr. Logan's family members but allowed him to continue to represent Logan and appointed attorney Scott Graham as co-counsel. (R.328: Order, ID#1661-62.)

On September 13, 2010, Mr. Logan pled guilty to Count One of the Second Superseding Indictment (conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine). (R.336: Minutes of Plea Hearing, ID#1692.) In exchange for Mr. Logan's guilty plea, and pursuant to a plea agreement, the government agreed to move to dismiss the money laundering count, not to bring additional charges, and not to object to Mr. Logan's request for a

6

two-level reduction for acceptance of responsibility. (R.334: Plea Agreement, ¶ 6, ID#1677-79.)

At his sentencing on February 22, 2011, Mr. Logan objected to a two-level sentencing increase based on obstruction of justice and to a denial of a two-level sentencing decrease for acceptance of responsibility. However, based on Mr. Logan's conduct while on bond, the Court overruled those objections. (R.656: Sent. Tr., ID#3391-92.) The Court imposed a sentence of 420 months. (*Id.*, ID#3408.)

**E. Mr. Logan's Appeal**

On appeal, Logan argued that he was entitled to be resentenced because the government breached its plea agreement when it opposed Logan's request for acceptance of responsibility. *United States v. Logan*, 542 F. App'x 484, 488-89 (6th Cir. 2013). Reviewing under the plain error standard, the Sixth Circuit held that the government did breach the plea agreement in arguing that Mr. Logan's guidelines should not be reduced for acceptance of responsibility but that the breach did not affect Mr. Logan's substantial rights. *Id.* at 490-91. However, the Sixth Circuit held that the district court did not err in assessing the obstruction of justice enhancement or denying acceptance of responsibility. *Id.*

> First, the conduct underlying the obstruction enhancement was serious—it included Logan's threats while released on bond to kill the AUSA and Alvin Jackson, a witness against him. There was also evidence that, prior to being indicted, Logan was directly involved in the attempted murder of Alan Jackson. Second, at sentencing, Logan continued to deny that he was involved in Alvin Jackson's attempted murder, and when confronted with his statements threatening to kill the AUSA, Logan was not contrite but attempted to explain them away as "bluster." The district court explicitly found that Logan was "not telling the truth in regard to whether, if he could, he would accomplish a hit on either [Alvin] Jackson or [the AUSA]," and therefore "[t]his is not one of those unusual cases where acceptance should be given where obstruction is assessed because in the Court's judgment, the testimony…regarding obstruction is particularly strong."

*Id.* at 491 (brackets in original). Thus, the court concluded that resentencing was not required. *Id.*

**F. Mr. Logan's Motion Pursuant to 28 U.S.C. § 2255.**

Mr. Logan now claims that his right to effective assistance of counsel was denied at the time that he initially entered into a plea agreement in February 2010. His argument is not based on any advice his counsel of record, Mr. Zambon, provided. Instead, he claims that Mr. Terrell, whose motion to substitute as counsel had been denied, was constitutionally ineffective in advising Mr. Logan to reject the plea agreement Mr. Zambon negotiated. (Def.'s Mem. in Supp. Mot. § 2255, ID#9623.) Mr. Zambon has submitted an affidavit addressing Logan's allegations. (R.918: Zambon Affidavit ¶ 1, ID#9652.) He met with Mr. Logan on several occasions and discussed the evidence against Mr. Logan, explained Mr. Logan's rights and options, reviewed relevant sentencing guidelines with Mr. Logan, negotiated plea agreements, and advised Logan to accept the plea deal that Mr. Logan ultimately rejected. (*Id.* at ¶ 7-8, 12-13, 17, 20-22, ID#9653-56.) Mr. Terrell declined to submit an affidavit responding to Mr. Logan's claims.

## ARGUMENT

**A. Standard**

To obtain relief pursuant to 28 U.S.C. § 2255, the movant must show that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Relief under 28 U.S.C. § 2255 is reserved for a "'fundamental defect which inherently results in a complete miscarriage of justice,' or, an error so egregious that it amounts to a violation of due process." *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)). The movant must prove the existence of an error of constitutional magnitude that had "a substantial and injurious effect or influence on the guilty

plea….” *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993)); *Humphress v. United States*, 398 F.3d 855, 858 (6th Cir. 2005).

In an action to vacate or correct a sentence, the court need not hold a hearing if the motion and records of the case conclusively show that the prisoner is not entitled to relief. 28 U.S.C. § 2255(b). "The statute 'does not require a full blown evidentiary hearing in every instance . . . . Rather, the hearing conducted by the court, if any, must be tailored to the specific needs of the case, with due regard for the origin and complexity of the issues of fact and the thoroughness of the record on which (or perhaps, against which) the section 2255 motion is made.'" *Smith v. United States*, 348 F.3d 545, 550-51 (6th Cir. 2003) (quoting *United States v. Todaro*, 982 F.2d 1025, 1030 (6th Cir. 1993)). Moreover, no evidentiary hearing is required if the movant's allegations "cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (quotation omitted).

Generally, claims not raised on direct appeal are procedurally defaulted and may not be raised on collateral review unless the movant shows either (1) "cause" and "actual prejudice;" or (2) "actual innocence." *Massaro v. United States*, 538 U.S. 500, 504 (2003); *Bousley v. United States*, 523 U.S. 614, 622 (1998). However, an ineffective assistance of counsel claim is not subject to the procedural default rule. *Massaro*, 538 U.S. at 504. Regardless of whether or not the movant raised it on direct appeal, an ineffective assistance of counsel claim may be raised in a collateral proceeding under section 2255. *Id.*

**B.     Mr. Logan Received Effective Assistance of Counsel.**

**1.   Standard for Ineffective Assistance of Counsel at the Plea Stage**

A movant claiming ineffective assistance of counsel must establish two elements: (1) that defense counsel's performance fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for the unprofessional errors, the outcome of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 694 (1984); *Goff v. Bagley*, 601 F.3d 445, 462 (6th Cir. 2010). The court may dispose of a claim of ineffective assistance if a movant fails to carry his burden of proof on either element. *Strickland*, 466 U.S. at 697. Thus, a court need not address the adequacy of counsel's performance when the movant fails to make a sufficient showing of prejudice. *Id.*

The *Strickland* framework applies to claims of ineffective assistance of counsel arising from a guilty plea. *Hill v. Lockhart*, 474 U.S. 52, 57-58 (1985); *see also Humphress*, 398 F.3d at 858 ("[d]efendants have a constitutional right to effective assistance of counsel during plea negotiations"). The first prong of the test remains the same, and the movant "bears the burden of overcoming the presumption that the challenged conduct might be considered sound trial strategy." *Smith v. Woods*, 505 F. App'x 560, 565 (6th Cir. 2012) (citing *Hanna v. Ishee*, 694 F.3d 596, 612 (6th Cir. 2012)).

The prejudice requirement focuses on whether counsel's ineffective assistance affected the outcome of the plea process. *Hill*, 474 U.S. at 59. When a movant claims that counsel's ineffective assistance led to the rejection of a plea offer, the movant must show that

> but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that were in fact imposed.

*Lafler v. Cooper*, __U.S.__, 132 S. Ct. 1376, 1385 (2012); *Missouri v. Frye*, __ U.S. __, 132 S. Ct. 1399, 1409 (2012).

### 2. Mr. Logan Cannot Establish Ineffective Assistance of Counsel Based on Mr. Terrell's Advice Because Mr. Terrell Was Not Counsel of Record.

"[T]he Sixth Amendment right to effective assistance of counsel does not include the right to receive good advice from every lawyer a criminal defendant consults about his case." *Santosuosso v. United States*, 74 F.3d 1240, No. 95-3146, 1996 WL 15631, at *3 (6th Cir. Jan. 16, 1996) (unpub.) (citing *United States v. Martini*, 31 F.3d 781, 782 (9th Cir. 1994)). Rather, the right applies to the counsel who actually represents the defendant or appears on behalf of the defendant. *Martini*, 31 F.3d at 782. When a defendant receives effective assistance from this lawyer, the defendant "cannot later claim that he received the ineffective assistance of counsel from another lawyer he chose to consult." *Id.* at 782-83.

> The opposite conclusion, that whenever a criminal defendant acts upon what turns out to be bad advice he is entitled to relief for ineffective assistance, would leave a defendant free to reject a plea bargain, go to trial to test the waters, and then vacate the resulting sentence when the trial proves more costly than the plea agreement.

*Santosuosso*, 1996 WL 15631, at *3.

In *Santosuosso*, a case similar to this one, the Sixth Circuit held that the movant's ineffective assistance of counsel claim could not succeed because the attorneys he claimed were ineffective in discouraging him from taking a plea agreement were not his counsel of record at the time. 1996 WL 15631 at *3. Santosuosso's counsel of record negotiated a favorable plea agreement that he accepted. *Id.* at *1. Later, he sought advice from two other attorneys and withdrew from the agreement. *Id.* at *1-2. This proved detrimental when he was subsequently convicted at trial and lost the benefit of his plea agreement. *Id.* On appeal, Santosuosso claimed that his two attorneys were ineffective because they advised rejection of the plea agreement. *Id.*

11

The Sixth Circuit rejected this argument, reasoning that, by the defendant's own admission, he had received competent and effective assistance of counsel through his then-counsel of record. *Santosuosso*, 1996 WL 15631 at *3.

The Eastern District of Kentucky has applied *Santosuosso* in a case analogous to this one. In *United States v. Lawrence*, 2007 WL 1385941, at *2-3 (E.D. Ky. May 7, 2007), that court rejected an ineffective assistance claim based on the advice of counsel who was not retained at the time the defendant rejected a plea agreement based on his advice. *Id.* at *2-3. As here, counsel of record presented a plea agreement that the movant rejected based on advice from another attorney that he could "beat the charge." *Id.* at *3. But the movant "was not entitled to good advice from every attorney he consulted," and his decision to file an ultimately unsuccessful motion to suppress "was a tactical decision" that he could not undo with a Section 2255 motion. *Id.*

In another case in which a defendant received conflicting advice regarding a plea offer, the Ninth Circuit held that the Sixth Amendment does not guarantee a defendant's right to effective assistance of counsel from all of the attorneys from whom a defendant seeks advice. *Martini*, 31 F.3d at 782. As here, the defendant rejected the advice of his counsel of record in favor of a second opinion he received from a lawyer who was not representing him in the case. *Id.* In rejecting his ineffective assistance claim, the Ninth Circuit held that "[f]or a lawyer's advice to constitute ineffective assistance of counsel, it must come from a lawyer who is representing the criminal defendant or otherwise appearing on the defendant's behalf in the case." *Id.*

Other courts have likewise held that the right to effective assistance of counsel does not extend beyond the defendant's counsel of record. *See United States v. Ubani*, 2013 WL

12

3357690, at *1 (S.D. Tex. July 3, 2013) (dismissing ineffective assistance claim where the defendant received effective assistance from his counsel of record and the "ineffective" counsel was never the counsel of record for the defendant); *Stevens v. Lee*, 2011 WL 8203860, at *10 (S.D.N.Y. Dec. 19, 2011) ("Because there is no constitutional right to consult with a second attorney, while represented in a criminal proceeding by another attorney who is unquestionably competent, the consulting attorney's conduct does not implicate the Sixth Amendment right to effective assistance of counsel").

The Seventh Circuit, in *Stoia v. United States*, 22 F.3d 766, 769-70 (7th Cir. 1994), held that a movant might bring an ineffective assistance of counsel claim where a defendant's retained but non-appearing attorney was operating under a conflict of interest and influenced how trial counsel conducted the defense. *Id.* at 769-70. The Seventh Circuit held that, where the movant alleged that a conflict of interest impaired one lawyer on the defense team, a hearing was necessary to determine whether there was a conflict of interest and, if so, whether it "adversely impact[ed] the defendant's trial because of that attorney's ability to influence how the defendant's trial attorney conduct[ed] the case." *Id.* at 769. On remand, the district court noted its concern that such a rule

> only inures to the benefit of affluent defendants, not the vast majority of defendants who pass through the courts. In both federal and state courts, most defendants make do with court-appointed attorneys. And they only get one, at least only one at a time. These defendants will not have occasion to obtain a postconviction hearing regarding a "behind-the-scenes" attorney who may have given bum advice. They will not get a chance to have a second kick at the cat.

*United States v. Stoia*, 887 F. Supp. 1229, 1233 (E.D. Wis. 1995), *aff'd*, *Stoia v. United States*, 109 F.3d 392, 398-99 (7th Cir. 1997); *cf. United States v. Wolfe*, 2012 WL 1957427, at *10 n.20 (E.D. Tenn. May 31, 2012) (recognizing "potential for a defendant to 'game' the system by going to trial and subsequently seeking to avoid the sentence to obtain the benefit of a more

13

favorable plea agreement"); *United States v. Slane*, 2015 WL 728481, *27 (W.D. Pa. Feb. 19, 2015) (requiring government to offer original plea deal to movant would constitute "unearned windfall").

For the reasons set forth by the district court on remand in *Stoia*, the Sixth Circuit's holding in *Santosuosso* that an ineffective assistance of counsel claim can only properly challenge the performance of counsel of record is the better rule. But *Stoia* is distinguishable, in any event. Here, Mr. Terrell's second opinion did not influence Mr. Zambon's performance. Rather, Mr. Logan received dueling opinions, and he chose Mr. Terrell's over Mr. Zambon's. *See United States v. Otsibah*, 2014 WL 1514992, at *2 (D. Md. Apr. 16, 2014) (rejecting the defendant's ineffective assistance of counsel claim based on advice to reject a plea agreement from retained counsel who never appeared on the defendant's behalf or influenced counsel who did appear on the defendant's behalf).

In this case, Mr. Logan cannot succeed on his ineffective assistance of counsel claim because Judge Jonker had rejected Mr. Terrell's motion to substitute as counsel at the time Mr. Logan claims he was ineffective, and because he concedes, as he must, that Mr. Zambon, his counsel of record, gave him good advice that he chose to ignore.[2] Because the right to effective assistance of counsel does not extend beyond a defendant's counsel of record, Mr. Logan's claim must fail.

---

[2] As detailed above and in Mr. Zambon's affidavit, Mr. Zambon met with Mr. Logan on several occasions and discussed the evidence against him, explained his rights and options, reviewed relevant sentencing guidelines with him, negotiated plea agreements for him with the government, and advised him to accept a favorable plea deal that included a 10-year sentencing cap. (R.918: Zambon Aff., ¶¶ 6-8, 12-13, 17, 20., ID#9653-56.) Indeed, Logan admits that "Zambon provided the right advice" because "the plea offer was a good deal." (R.913: Def.'s Mem. in Supp. Mot. § 2255, ID#9633-34.)

### 3. Mr. Terrell Was Not Constitutionally Ineffective.

Even if Mr. Terrell's advice is relevant to the analysis—and it is not—Mr. Logan has not demonstrated that he was constitutionally ineffective. There is no argument here that the plea offer was not communicated to Mr. Logan or that its terms were inaccurately summarized. Nor does Mr. Logan claim that he did not know the charges and penalties he faced if he rejected the plea deal. Rather, the argument is that Mr. Terrell gave Mr. Logan "incredibly bad advice" by suggesting that he could negotiate a better deal or even beat the case at trial. (R.913: Mot. at 10-11.) However, "an erroneous strategic prediction…is not necessarily deficient performance." *Lafler*, 132 S. Ct. at 1391. As the Supreme Court has noted, "[p]lea bargains are the result of complex negotiations suffused with uncertainty, and defense attorneys must make careful strategic choices in balancing opportunities and risks." *Premo v. Moore*, 562 U.S. 115, 124 (2011). "These considerations make strict adherence to the *Strickland* standard all the more essential when reviewing the choices an attorney made at the plea bargain stage." *Id.* at 125.

This Court presumes that counsel's "conduct fell within the wide range of reasonable professional assistance." *Burt v. Titlow*, 134 S. Ct. 10, 17 (2013) (internal quotations omitted). Absence of evidence regarding a lawyer's advice during plea negotiations cannot overcome that strong presumption. *Id.*; *see also Wilson v. Addison*, 577 F. App'x 782, 786 (10th Cir. 2014). Mr. Terrell did not provide an affidavit, but in a recorded conversation he had with Mr. Logan, apparently on February 19, 2010, the two men agreed that they did not like the plea agreement filed that day. (R.920-1: Tr. at 2.) Mr. Terrell noted that the case would start over once the indictment in the original case was dismissed in favor of the addition of Mr. Logan to *United States v. Jackson*, giving him the opportunity to file motions and ask for additional discovery. (*Id.* at 3, 6, 23-24; *see also* R1.41: Tr. of Hearing on Mot. to Withdraw at 15.) The two men also discussed evidence indicating that Alvin Jackson lied about Mr. Logan, which they believed was

exculpatory. (R.920-1: Tr. at 14-15, 18, 25.) And they discussed discovery they had not yet received from the government. (*Id.* at 19.) While it is apparent from the recorded phone calls that Mr. Terrell opposed the plea deal, that opposition appears to have been based on his belief that, with the dismissal of the initial indictment, he could be a more vigorous advocate for Mr. Logan and negotiate him a better resolution. (*Id.* at 20.) Indeed, his filing of multiple motions indicates that he did, in fact, forcefully litigate on behalf of Mr. Logan. Although Mr. Logan now claims that he told Mr. Terrell that he was guilty (R.913-1: Logan Aff. ¶ 2, ID#9639), Mr. Zambon's affidavit also supports the notion that Mr. Logan believed there was exculpatory evidence that would support his defense. (R.918: Zambon Aff., ¶ 14, ID#9654.) Mr. Logan has not demonstrated that Mr. Terrell's advice was anything worse than "an erroneous strategic prediction," one in which Mr. Logan apparently concurred. *Lafler*, 132 S. Ct. at 1391.

The defendant has "the ultimate responsibility to decide whether to accept [a plea] offer." *Ryal v. Lafler*, 508 F. App'x 516, 522 (6th Cir. 2012). Mr. Logan "made his choice, and he must accept the consequences of his decision." *Id.*; *see also United States v. Patterson*, 525 F. App'x 681, 685 (10th Cir. 2013) (no ineffective assistance where "no allegation that counsel precluded petitioner from accepting the plea offer or that petitioner did not make the decision to reject the plea offer himself"). Particularly where, as here, Mr. Logan had enough information from other sources, including Mr. Zambon, to understand the risk he was taking in rejecting the plea agreement, his claim of ineffective assistance is unsupported. *Santuosso*, 1996 WL 15631, at *4 (rejecting ineffective assistance claim where counsel of record explained risk of rejecting plea agreement); *Lawrence*, 2007 WL 1385941, at *3 (rejecting ineffective assistance claim where plea agreement was rejected in favor of tactical decision to file ultimately unsuccessful suppression motion). Mr. Logan chose to reject a plea deal and proceed to trial or try again to

negotiate a better deal. In hindsight, this was not a good choice, as he ultimately entered into a plea agreement with less favorable terms. But it was his choice to roll the dice.

C.   **Mr. Logan Cannot Demonstrate Prejudice.**

Even though the terms of Mr. Logan's eventual plea agreement were worse than the February 19, 2010 plea agreement, Mr. Logan has not demonstrated that he was prejudiced by the decision not to accept that plea deal. Mr. Logan cannot demonstrate prejudice because (1) he cannot show that Judge Jonker would have accepted the plea agreement dated February 19, 2010, and (2) his own subsequent conduct would have breached that plea agreement, allowing the government to withdraw it. *Lafler* 132 S. Ct. at 1385; *Frye*, 132 S. Ct. at 1409-10.

The plea agreement imposed a 10-year "cap" on Mr. Logan's sentence, but only if Judge Jonker accepted the plea agreement and agreed to the Rule 11(c)(1)(C) cap. Mr. Logan cannot prove that Judge Jonker would have done so, particularly in light of Mr. Logan's subsequent threats toward Mr. Jackson and AUSA Lennon and his involvement in an uncharged drug distribution conspiracy. There is no federal right to judicial acceptance of a plea agreement. *Lafler*, 132 S. Ct. at 1387.

Moreover, Mr. Logan's commission of additional crimes would have constituted a breach of the plea agreement, including its requirement that Mr. Logan not commit any criminal offense during his cooperation with the government, allowing the government to withdraw it. (R1.37: Plea Agreement at 4, ¶ 5(A).) Mr. Logan argues that his alleged involvement in the attempted murder of Alvin Jackson was known in advance of the February 2010 plea offer. (R.913: 2255 Motion, ID#9627.) However, it is undisputed that Mr. Logan made *additional* threats against Mr. Jackson and AUSA Lennon after he rejected the February 2010 plea agreement. (*Id.*) His involvement in an additional, uncharged drug conspiracy would likewise have allowed the government to withdraw the plea agreement.

17

In these circumstances, Mr. Logan simply cannot carry his burden of demonstrating that "the prosecution would not have withdrawn [the plea agreement] in light of intervening circumstances," or that "the court would have accepted its terms," such that the sentence would have been less severe under the plea agreement's terms than what was imposed. *Lafler*, 132 S. Ct. at 1385. Mr. Logan suggests that the government should be required to offer the original Rule 11(c)(1)(C) deal. However, it seems an unreasonable stretch to argue that the Court would accept such a plea agreement given the proceedings and facts of this case.

## **CONCLUSION**

For the foregoing reasons, the United States respectfully requests that Mr. Logan's motion to vacate, set aside, or correct his sentence be denied. An evidentiary hearing is not required because the record demonstrates that he received effective assistance of counsel and cannot prove that Mr. Terrell's advice prejudiced him.

Respectfully Submitted,

PATRICK A. MILES, JR.
United States Attorney

Dated: April 22, 2015

   /s/ Sally J. Berens
SALLY J. BERENS
Assistant United States Attorney
P.O. Box 208
Grand Rapids, MI 49501-0208
(616) 456-2404

On brief:
Rose P. Kleff, Legal Intern