UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| United States of America, | ) | |
| Plaintiff, | ) | |
| | ) | No. 1:08-cr-274 |
| -v- | ) | |
| | ) | HONORABLE PAUL L. MALONEY |
| Emond Durea Logan, | ) | |
| Defendant. | ) | |
| _____ | ) | |

## OPINION AND ORDER

This case presents acute questions in "plea-bargaining law," as Justice Scalia once put it, "a whole new field of constitutionalized criminal procedure[.]" *Lafler v. Cooper*, 566 U.S. 156, 175 (2012) (Scalia, J., dissenting).

In September 2009, Defendant Emond Durea Logan was charged with conspiracy to distribute and to possess with intent to distribute cocaine and money laundering in a case before Judge Robert Jonker. Attorney Richard Zambon was appointed to represent Logan under the Criminal Justice Act. However, in October 2009, Logan's father, Eugene Logan, hired Attorney Leo Terrell—at the cost of $100,000.00—to represent Defendant, as well. The retainer agreement stated that Terrell would provide a complete defense, "including pre-trial discovery, court trials, [and] post-trial proceedings." (ECF No. 933-3 at PageID.9799.)

In February 2010, Terrell finally filed a motion to substitute as counsel, and Zambon then filed a motion to withdraw. Judge Jonker denied the motions, noting the possibility of Terrell's conflicts, the tardy nature of his request, and the possibility of a superseding indictment and reassignment of the case to another judge.

At this point, despite Judge Jonker's order, Terrell continued to counsel Logan. But, since he was never granted leave to withdraw, so did Zambon.

As fate would have it, Zambon gave Logan good advice—advising him to sign a plea agreement with a ten-year sentencing cap—but Terrell gave Logan abysmal advice—advising him to reject that same plea agreement. Logan, at Zambon's urging, signed the agreement, but at the last minute, at Terrell's urging, Logan reneged on the deal. Logan and Terrell both understood that if Logan rejected the plea agreement, the United States would no longer offer a plea deal with a proposed sentencing cap.

The United States—done dealing with plea offers—filed a superseding indictment. After a flurry of activity, Terrell advised him to sign a new plea agreement without the cap, and Logan pled guilty to conspiracy to distribute narcotics. Logan was sentenced to 420 months in prison—well above the maximum sentence of 120 months called for in the rejected plea agreement.

Logan filed the instant motion to set aside his sentence under 28 U.S.C. § 2255. (ECF No. 911.)[1] Logan asserts—quite compellingly—that he received abysmal advice from Terrell. In exchange for $100,000.00, Terrell essentially advised Logan to proceed to trial and thereby miss the opportunity to accept a plea deal with a ten-year sentence cap, and then advised him to accept a much worse plea agreement that resulted in a sentence of 420 months. Nonetheless, for the reasons discussed below, the Court must deny Logan's motion because he received constitutionally effective assistance from Zambon.

---

[1] The United States filed a response (ECF No. 923) and Logan filed a reply brief (ECF No. 926). Logan also filed an affidavit by Eugene Logan in support of his § 2255 motion. (ECF No. 933.) The Court held an evidentiary hearing concerning this motion on April 10, 2017. (ECF No. 1055.)

2

## I. BACKGROUND

Defendant Emond Logan was charged with conspiracy to distribute and to possess with intent to distribute cocaine and money laundering in case number 1:09-cr-245, assigned to Judge Robert Jonker. Later, that case was dismissed and the same charges were brought in the Second Superseding Indictment in a multi-defendant case, 1:08-cr-274, assigned to Judge Paul Maloney.

In the 2009 case, Richard E. Zambon was appointed to represent Logan on October 1, 2009. Logan's family approached Leo James Terrell about representing Logan in October 2009, and Terrell told Zambon on October 20, 2009, but Terrell did not file a motion to substitute as Logan's counsel until February 4, 2010. Shortly thereafter, Zambon filed a motion to withdraw and substitute Leo James Terrell as Logan's counsel based on a purported breakdown in the relationship between Logan and Zambon. The motions were both denied. Judge Jonker expressed concern about the timeliness of the motion, Terrell "unofficially" representing Logan, and conflicts of interest because Terrell represented other defendants involved in the same alleged conspiracies.

Logan then entered into a plea agreement (ECF No. 37) under Zambon's advice. The plea agreement contained a provision indicating that Logan should not be sentenced to more than 120 months and allowing Logan to withdraw his guilty plea if the Court did sentence him to more than 120 months. Logan agreed to cooperate with the United States, and the United States in turn agreed to release the ten-year mandatory minimum and not bring charges against Logan's wife, brother, and sister-in-law. However, Logan chose not to plead guilty at the hearing scheduled to take his plea. He asserts that he chose not to plead guilty

because Terrell advised him over the weekend that there was a good chance he could be acquitted if he proceeded to trial. A few days later, as previously promised by the government, the 2009 case was dismissed and the charges against Logan were consolidated with the 2008 case in a second superseding indictment.

The Second Superseding Indictment in 1:08-cr-274 likewise charged Logan with conspiracy to distribute and to possess with intent to distribute cocaine and money laundering conspiracy. Terrell entered an appearance on behalf of Logan, but he also entered appearances on behalf of co-defendants Caroline Logan, Martell Logan, and Sharon Logan.

The United States filed a notice of conflict of interest because Terrell was representing four defendants. After a hearing on that motion, Terrell was allowed to continue as Emond Logan's counsel but co-counsel (Scott Graham) was also appointed for him, and other attorneys were appointed to represent Caroline, Martell, and Sharon Logan. As the case progressed, Logan's counsel filed a motion for bail, a motion to dismiss the indictment for improper venue, a motion to sever his trial from family member co-defendants, and a motion to compel discovery. Logan was released on bond in March 2010, but bond was revoked on August 18, 2010 because the Central District of California ordered Logan detained on July 16, 2010 based on further criminal activity.

Logan, following Terrell's advice, eventually pled guilty to Count One pursuant to a new plea agreement. (ECF No. 334.) Under the plea agreement, the United States would not object to a two-level reduction in his sentencing guidelines offense level for acceptance of responsibility, and Count III (money laundering conspiracy) would be dismissed. Logan was not awarded a reduction for acceptance of responsibility and was given an obstruction of

justice enhancement at sentencing based on reports that he had threatened to kill a co-defendant (who was going to testify against him) and the prosecutor, and attempted to kill that co-defendant while he was on bond. The sentencing guidelines thus resulted in an offense level of 40 and criminal history category of III, creating a guidelines range of 360 months to life. Logan argued for a below-guidelines sentence based on the initial plea agreement's 120-month cap, but the Court declined to grant a variance. He was sentenced to 420 months in custody followed by five years of supervised release.

Logan appealed, arguing that the United States breached the plea agreement when it opposed the two-level acceptance of responsibility reduction based on the threats described above, asserting that the United States knew about the incidents before it signed the plea agreement. The Sixth Circuit Court of Appeals affirmed his conviction and sentence under the plain error standard, but nonetheless found that the United States had materially breached the plea agreement. (ECF No. 858.) Logan has now filed the instant motion under 28 U.S.C. § 2255, alleging that Terrell provided ineffective assistance of counsel when he advised Logan to reject the initial plea agreement and proceed to trial. He requests that the Court vacate his sentence and conviction, order the government to re-offer the earlier plea deal, and allow him to be resentenced consistent with the terms in that plea agreement.

II. TIMELINE

As an initial matter, establishing a timeline is helpful:

| Event | Date |
|---|---|
| First Indictment (1:09-cr-245, RJJ) | Sep. 9, 2009 |
| Leo Terrell Retained/Began Work (RJJ) | Oct./Nov. 2009 |

| | |
|---|---|
| Motion to Substitute Counsel (Terrell) (RJJ) | Feb. 4, 2010 |
| Motion to Withdraw (Zambon) (RJJ) | Feb. 9, 2010 |
| Hearing on Motions to Substitute/Withdraw (RJJ) (Terrell continues to work, and even consults with Logan in Marshal's lock-up. The motions are denied by Judge Jonker.) | Feb. 17, 2010 |
| Plea Agreement Filed (RJJ) (Logan, following Zambon's advice, signs the proposed binding agreement under Fed. R. Crim. P. 11(c)(1)(C) with a ten-year sentencing cap.) | Feb. 19, 2010 |
| Plea Agreement Rescinded (RJJ) (Logan, following Terrell's advice, blows up the plea agreement.) | Feb. 21, 2010 |
| Plea Hearing (RJJ) (Logan refuses to plead guilty.) | Feb. 22, 2010 |
| Second Superseding Indictment (PLM) (This indictment had been previously assigned to Judge Maloney.) | Feb. 24, 2010 |
| Motion to Dismiss First Indictment (RJJ) (The motion is granted by Judge Jonker.) | Feb. 25, 2010 |
| Criminal Case Closed (RJJ) | Feb. 25, 2010 |
| Motion for Hearing on Status of Counsel/ Notice of Conflict of Interest (PLM) | July 7, 2010 |
| Hearing on Motion for Status of Counsel/Conflicts (PLM) | Aug. 27, 2010 |
| Order Allowing Terrell to Continue /Appointing Scott Graham as Co-Counsel | Aug. 27, 2010 |
| Plea Agreement Filed (PLM) | Sep. 10, 2010 |
| Plea Hearing (PLM) | Sep. 13, 2010 |
| Sentencing (PLM) (Logan sentenced to 420 months (360 months—Life Guidelines) | Mar. 31, 2011 |

## II. LEGAL FRAMEWORK

To obtain relief under § 2255, a petitioner must show: (1) "the sentence was imposed in violation of the Constitution or laws of the United States," (2) "the court was without jurisdiction to impose such sentence," or (3) "the sentence was in excess of the maximum authorized by law or is otherwise subject to collateral attack." 28 U.S.C. § 2255.

The constitutional defect claimed here is a violation of the Sixth Amendment's guarantee of effective assistance of counsel. U.S. CONST. amend VI.

Ordinarily, the standard for ineffective assistance of counsel, as established in *Strickland v. Washington,* requires a petitioner to prove (1) that defense counsel's performance fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for the unprofessional errors, the outcome of the proceedings would have been different. 466 U.S. 668, 694 (1984).

When considering whether counsel's performance fell below an objective standard of reasonableness, courts must "apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Premo v. Moore*, 562 U.S. 115, 122 (2011) (citing *Strickland*, 466 U.S. at 688). The petitioner has the burden to show that counsel's errors were "so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* To establish ineffective assistance, the petitioner must show that his counsel's representation was incompetent under prevailing professional norms, not merely that it deviated from best practices or common custom, and that the conduct was not sound trial strategy. *Strickland*, 466 U.S. at 690.

The Supreme Court has extended the Sixth Amendment right to the plea context: "During plea negotiations defendants are 'entitled to the effective assistance of competent counsel.'" *Lafler v. Cooper*, 566 U.S. 156, 162 (2012); *Missouri v. Frye*, 566 U.S. 133, 138 (2012) (extending the right to effective assistance of counsel to consideration of plea offers that lapse or are rejected). "The face that respondent is guilty does not mean he was not entitled by the Sixth Amendment to effective assistance or that he suffered no prejudice from his attorney's deficient performance during plea bargaining." *Lafler*, 566 U.S. at 169.

"To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel." *Frye*, 566 U.S. at 147.

"Defendants must also demonstrate a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it, if they had the authority to exercise that discretion . . . ." *Id.*

In sum "[t]o establish prejudice in this instance, it is necessary to show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time." *Id.* (citing *Glover v. United States*, 531 U.S. 198, 203 (2001) ("[A]ny amount of [additional] jail time has Sixth Amendment significance.")). Put differently, "a defendant must show the outcome of the plea process would have been different with competent advice." *Lafler*, 566 U.S. at 163.

III.    Analysis

    A.    **Standing alone, Attorney Terrell's advice was, in many senses, "ineffective."**

"'To a large extent . . . horse trading [between prosecutor and defense counsel] determines who goes to jail and for how long. That is what plea bargaining is. It is not some adjunct to the criminal justice system; it *is* the criminal justice system.'" *Frye*, 566 U.S. at 144 (quoting Robert E. Scott & William J. Stuntz, *Plea Bargaining as Contract*, 101 Yale L. J. 1909, 1912 (1992)). "In today's criminal justice system, therefore, the negotiation of a plea bargain, rather than the unfolding of a trial, is almost always the critical point for a defendant." *Id.*

Even casting aside "the distorting effects of hindsight" in this case, *Strickland*, 466 U.S. at 689, it was objectively unreasonable for Terrell to advise Logan to reject the plea agreement negotiated by his counsel of record.

There was no question that if Logan rejected the plea agreement, the proposed ten-year sentencing cap was off the table from the Government's perspective. (*See, e.g.*, ECF No. 43 at PageID.170 *in* 1:09-cr-245 ("[T]here is no longer any kind of 10-year cap even going to be considered by my office.").) Terrell did not discuss this fact with Logan.

Logan told Terrell that he was guilty. The evidence against Logan was overwhelming. Yet Terrell made it realistically seem like he could wave a magic wand, leaving Logan to simply "walk away." But not even a magician could have caused Logan to walk under these circumstances. Logan's guideline range for the conspiracy count alone was 360 months to life, and Terrell made no jail time seem like a readily attainable objective. Zambon's

9

testimony also confirms the fantasy world in which Terrell advised Logan. He saw no merit whatsoever in any of the magical motions. (*See* ECF No. 1055.)

Moreover, as the troubling telephone transcripts reveal, Terrell seemed to pressure Logan in several unseemly respects: to reject the plea agreement; to falsely tell the Court that he changed his mind because he was under "duress"; to not tell Attorney Zambon or the Court of Attorney Terrell's advice. (ECF No. 920 at PageID.9661.)

The Court must also note that Terrell's payment arrangement with Logan's father and potential conflicts in representing other family members add an unpleasant gloss to the entire scope of his representation.

At a hearing on a motion filed by the United States regarding a conflict of interest in Terrell's representation of all four Logan defendants, "the Court granted the government's motion to disqualify defense counsel from representing all four Logan defendants." (ECF No. 442 at PageID.2053.) In light of all the questions raised by that motion, the Court only allowed Terrell to continue his representation with the assistance of appointed co-counsel, Scott Graham, and the Court appointed separate counsel for the other Logan defendants.

Terrell's failure to appear at a hearing on this motion is telling, as well. An officer of the Court who blatantly refuses to make himself available at this Court's hearing erodes the administration of the judicial system.

In short, Terrell's shadow representation was certainly "ineffective" in many senses—but that does not necessarily mean that Logan's constitutional right to effective assistance was violated.

B.  **Standing alone, Attorney Zambon's advice was constitutionally effective.**

Neither party disputes that Attorney Zambon—Logan's counsel of record who had his motion to withdraw denied by Judge Jonker—gave effective advice to Logan by advising him to accept the plea agreement with the ten-year cap. Indeed, Logan now argues that Terrell should have advised just what Zambon advised at the time.

C.  **Logan was entitled to constitutionally effective assistance, and he received such assistance from Attorney Zambon; thus, despite Terrell's abysmal advice, Logan is not entitled to habeas relief.**

The Court need not, as the United States urges, adopt a bright-line rule that an attorney must be counsel of record before a defendant can make a valid claim of ineffective assistance against him. There may be circumstances in which an attorney who merely "appears" can still provide constitutionally ineffective assistance. *See, e.g., United States v. Martini*, 31 F.3d 781, 782 (9th Cir. 1994) (citing *Stoia v. United States*, 22 F.3d 766, 768 (7th Cir. 1994)) ("For a lawyer's advice to constitute ineffective assistance of counsel, it must come from a lawyer who is representing the criminal defendant *or otherwise appearing on the defendant's behalf in the case.*" (emphasis added)).

In this case, for example, had Zambon or another attorney not been representing Logan at the time Logan rejected the first plea agreement, Terrell's assistance standing alone—whether or not he had been formal counsel of record at the time—very arguably would have necessitated granting relief to Logan today.

In *Stoia*, for example, the Court held that "a defendant's constitutional right to effective assistance of counsel does not extend to those cases where a nonappearing attorney . . . gives a defendant legal advice *even though he has not been retained by the defendant to*

11

*help prepare his defense . . . ."* 22 F.3d at 768 (emphasis added). Since the attorney was never retained, the Court held the right did not extend to that fact pattern. Likewise in *Martini*—the defendant there had been advised by "a lawyer who had no previous connection to the case and who was not representing Martini in his defense . . . ." 31 F.3d at 782.

In this case, by contrast, Terrell had been retained by Logan for many months prior to the ineffective assistance. And Zambon and the Court were both aware of Terrell's relationship to the case.[2]

At this point, however, it is important not to lose sight of the contours of the <u>right</u> at issue attendant to this case. "[T]he right to counsel is the right to the effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). The right to counsel is <u>not</u> the right to be free from any ineffective assistance of counsel. Rather, so long as a

---

[2] Following the Seventh Circuit's reasoning, it appears Logan could allege a valid claim for ineffective assistance by Terrell had Logan not also received assistance from Zambon:

> We agree with the government that a defendant's constitutional right to effective assistance of counsel does not extend to those cases where a non-appearing attorney: (1) gives a defendant legal advice even though he has not been retained by the defendant to help prepare his defense; or (2) is retained by the defendant but his conflict of interest or deficient performance is not reflected in the conduct of the defense at trial.

*Stoia*, 22 F.3d at 769. Terrell, even though he did not formally appear, was both retained and his deficient performance was reflected in the conduct of the defense. Indeed, Terrell's ineffective advice was the but-for cause for Logan rejecting the plea agreement: Logan *had signed the plea agreement at Zambon's advice*, but Terrell convinced him to blow up the agreement.

Moreover, assuming Zambon had not provided effective assistance, the Court disagrees with the United States' argument that Logan could not show his sentence would have been less than 420 months had Logan gone forward with the first plea agreement. The Supreme Court noted the relevant test was as follows: "[t]o establish prejudice in this instance, it is necessary to show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time." *Id.* (citing *Glover v. United States*, 531 U.S. 198, 203 (2001) ("[A]ny amount of [additional] jail time has Sixth Amendment significance.")). Put differently, "a defendant must show the outcome of the plea process would have been different with competent advice." *Lafler*, 566 U.S. at 163. Even if Judge Jonker rejected the ten-year cap itself and otherwise accepted the plea, there's a reasonable probability "the end result of the criminal process would have been more favorable by reason of . . . a sentence of less prison time." *Frye*, 566 U.S. at 147. The difference between 420 months and 120 months is vast.

defendant receives "adequate legal assistance," *see id.* at 686 (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980)), his constitutional rights have been secured.

In the plea-bargaining context, "a defendant has the right to effective assistance of counsel in considering whether to accept [the plea offer]." *Lafler*, 566 U.S. at 168. But the decision on whether to accept the offer ultimately rests with the defendant. *See id.*

The Court concludes that Logan was given "adequate legal assistance" by his counsel of record, Attorney Zambon, at the time Attorney Terrell gave Logan abysmal advice. Logan should not be allowed to argue under these circumstances that Terrell's advice was constitutionally infirm.

This case presents facts fairly similar to *Santosuosso v. United States*, 74 F.3d 1240 (6th Cir. 1996) (unpublished table opinion); *accord. United States v. Lawrence*, 2007 U.S. Dist. LEXIS 33888 (E.D. Ky., May 7, 2007) (citing *Santosuosso* and finding that defendants are not entitled to good advice from every attorney they consult but concluding that the decision to file a motion to suppress rather than plead guilty was a tactical decision).

In *Santosuosso*, the defendant conceded that he received sound advice during a period of time where his attorneys of record advised him to accept a plea agreement. *Id.* at *1. "However, at about the time the plea bargain was arranged and Santosuosso agreed to accept it, Santosuosso began to receive advice from other lawyers, not then his attorneys of record, which he now argues was 'ineffective.'" *Id.* at *2.

The Sixth Circuit noted that the advice of those other attorneys, William Novak and Frank Celebrezze, "was indeed 'ineffective,' in the general sense that it cost Santosuosso the benefit of the plea bargain arranged by [his attorneys of record]." *Id.* at *2. Novak and

Celebrezze convinced Santosuosso to withdraw his signature from a second plea agreement, and those attorneys *thereafter* were retained, substituted in, filed the motion to withdraw the plea, and went to trial. *Id.* at *2. "Santosuosso's final gamble did not pay off . . . ." *Id.* at *2.

Nonetheless, the Sixth Circuit rejected Santosuosso's claim for ineffective assistance of counsel in his § 2255 motion "for several reasons."

"First," and most relevant here, the Court noted, "Celebrezze and Novak were not counsel of record during the December 11, 1990 to January 14, 1991 period. Whether or not they made misrepresentations to him, he concedes that he had competent and effective advice from Longo during this period because Longo counseled him to accept the plea agreement. At most, Santosuosso was thus being advised by two sets of attorneys—his attorney of record provided competent counsel, while Celebrezze and Novak provided 'ineffective assistance.'" *Id.* at *3.

Because "[t]he Sixth Amendment right to effective assistance of counsel . . . does not include the right to receive good advice from every lawyer a criminal defendant consults about his case," the Court rejected Santosuosso's claims. *Id.* at *3.

The Court cautioned that to hold otherwise—"whenever a criminal defendant acts upon what turns out to be bad advice he is entitled to relief for ineffective assistance"—"would leave a defendant free to reject a plea bargain, go to trial to test the waters, and then vacate the resulting sentence when the trial proves more costly than the plea agreement." *Id.*

Admittedly, the Supreme Court subsequently has blunted the last portion of the reasoning in that opinion—in both *Lafler* and *Frye*, the Court made clear that the scenario

that the *Santosuosso* court cautioned against can indeed be the basis for a valid ineffective assistance claim.

What *Lafler* and *Frye* have left undisturbed, however, is the notion advanced in *Santosuosso* that a defendant should not be allowed to receive effective advice from his counsel of record, seek outside advice from another lawyer—even after the Court's order denying that outside lawyer's motion to substitute—and then claim ineffective assistance when the defendant rejects the competent advice from his counsel of record.

To hold otherwise would encourage this very fact pattern—an attorney of record could give constitutionally effective assistance where another retained attorney in the shadows would advise just the opposite, and Defendant would be insulated and face no risk in taking the gamble by rejecting the plea agreement. For defendants with access to ample means, like Logan, they could hire several attorneys with several different takes, and then effectively preserve an ineffective assistance claim by pointing the finger at one of them if the chosen track does not pan out.

Moreover, once Logan was on notice from the Court that Terrell would not be allowed to substitute in as counsel of record, particularly because of possible conflicts of interest, Logan chose to follow Terrell's advice at his own peril. Zambon, Logan's counsel of record, indisputably gave Logan the advice that he now faults Terrell for not giving him.

Other authority supports this Court's resolution of this motion, as well. Courts have handled conflicting advice or partial ineffectiveness by a team of lawyers in different ways, but each method supports denying relief to a defendant in Logan's circumstances.

The Fifth Circuit put it simply in one case: "There is no constitutional guarantee of the assistance of two attorneys in a . . . case." *Gallamore v. Cockrell*, 275 F.3d 43 (5th Cir. 2001) (table).

The Sixth Circuit addressed another situation where a defendant received conflicting advice from his trial team. In *Harrison v. Motley*, 478 F.3d 750 (6th Cir. 2007), the Sixth Circuit rejected an argument that because a defendant "was faced with conflicting advice by his attorneys," he was effectively denied any assistance of counsel. *See id.* at 755. The Sixth Circuit could find no authority to support that argument. The fact that the defendant "was ultimately responsible for deciding whether to testify himself or to call certain defense witnesses did not render him without the aid of counsel." *Id.*

Likewise here. Even though Logan received conflicting advice, it was ultimately his decision to reject the first plea agreement, and he was not without any assistance of counsel.

The Indiana Supreme Court has viewed "ineffectiveness of counsel as an issue ultimately turning on the overall performance of counsel, where more than one attorney is involved, is the collective performance that counts." *Woods v. State*, 701 N.E.2d 1208. 1227 n.1 (Ind. 1998), *cert. denied*, 528 U.S. 861 (1999). For example, if a defendant was represented by two attorneys at trial, and one slept while the other remained awake and engaged, it could still be said that the defendant received sufficient effective assistance because one of his attorneys was awake and effective.

Here, it can be said that Logan received clearly effective assistance from his lawyer of record and ineffective assistance from other counsel. But, since Zambon's effective assistance

provided a strong counterbalance to Terrell's, the collective performance was not so lacking as to violate Logan's constitutional right to effective assistance.

In sum, Logan received abysmal advice from an attorney who had no business giving it at the critical juncture when the favorable plea offer was on the table. Nonetheless, no matter how the record is sliced, Logan received effective assistance of counsel from Zambon. That's all the Sixth Amendment of the Constitution required.

### CERTIFICATE OF APPEALABILITY

Under Rule 11 of the Rules Governing Section 2255 Proceedings, a court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003). To satisfy this standard, the petitioner must show that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Id.* (quoting *Slack v. McDaniel*, 529 U.S. 473, 483 (2000)). Courts should undertake an individualized determination of each claim presented by the petitioner when considering whether to issue a certificate of appealability. *Murphy v. Ohio*, 551 F.3d 485, 492 (6th Cir. 2009).

A certificate of appealability is appropriate in this case because reasonable jurists could disagree with this Court's decision; that is, reasonable jurists could conclude under the very unique facts and circumstances of this case that Attorney Terrell's performance should

form the basis for an ineffective assistance claim even though Attorney Zambon gave Defendant effective advice as his counsel of record.

## ORDER

For the reasons stated in the accompanying opinion, the Court **DENIES** Defendant Emond Logan's motion brought under 28 U.S.C. § 2255. (ECF No. 911.)

However, the Court **ISSUES** a certificate of appealability to allow the Sixth Circuit Court of Appeals to examine the unique facts and interesting legal issues this case presents.

**IT IS SO ORDERED.**

Date: June 30, 2017             /s/ Paul L. Maloney
                                Paul L. Maloney
                                United States District Judge